UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
ALISON MCDANIEL,               )
                               )
          Plaintiff,           )
                               )
     v.                        )   C.A. No. 23-292 WES
                               )
PRESERVE PROPERTY MANAGEMENT   )
COMPANY, LLC; THE PRESERVE AT  )
BOULDER HILLS, LLC; and PAUL   )
MIHAILIDES,                    )
                               )
          Defendants.          )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Plaintiff Alison McDaniel moves for leave to amend the operative complaint. See Pl.'s Mot. Leave Amend Am. Verified Compl., ECF No. 34; Mem. Law Supp. Pl.'s Mot. Leave Amend Am. Verified Compl. ("Pl.'s Mot."), ECF No. 34-1; Proposed Second Am. Verified Compl. ("PAC"), ECF No. 35-1. In particular, she seeks to (1) add M.T.M. Development Corporation ("MTM") as a defendant; (2) add federal and state law retaliation claims against Defendants Preserve Property Management Company, LLC ("PPM"), The Preserve at Boulder Hills, LLC ("PBH"), Mr. Paul Mihailides, and MTM;[1] and (3)

---

[1] McDaniel alleges Defendants retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I. Gen. Laws § 28-50-1 et seq.; and the Rhode Island

include allegations clarifying that Mihailides is being sued individually under the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1, the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws § 28-14-1 et seq., and the state statute prohibiting the misclassification of employees, see R.I. Gen. Laws § 28-14-19.1 ("Misclassification Statute").  For the reasons below, McDaniel's Motion is GRANTED IN PART and DENIED IN PART.

## I. PROCEDURAL BACKGROUND

The Court initially set November 8, 2023, as the last day for McDaniel to file an amended complaint without leave.  Standard Pretrial Order, ECF No. 14.  Instead of filing an amended complaint on the scheduled day, McDaniel filed a motion to extend the scheduling order deadline to file an amended pleading to April 8, 2024.  See Pl.'s Mot. Extend Deadline Amending Pleadings ("Scheduling Mot."), ECF No. 21.  This extension was necessary, according to McDaniel, for her to file retaliation claims premised on Defendants' counterclaims.  Id. at 1; see Defs.' Answer Am. Verified Compl. & Countercls. ("Countercl.") 27-94, ECF No. 7.  To do so, however, McDaniel needed time to exhaust her administrative remedies before the Rhode Island Commission for Human Rights

---

Fair Employment Practices Act ("RIFEPA"), R.I. Gen. Laws § 28-5-7(5).

2

("RICHR") and the Equal Employment Opportunity Commission ("EEOC"), which would take several months. Scheduling Mot. 2-3. Defendants opposed, in part arguing that her contemplated retaliation claims would be futile. Defs.' Obj. Pl.'s Mot. Extend Deadline Amending Pleadings 3-9, ECF No. 23. They averred counterclaims can only be actionable as retaliation if they are baseless, and Defendants obviously contended that theirs are not. Id.

The Court ordered supplemental briefing on the question of whether counterclaims can be retaliatory if they are not baseless and whether the Court could address the question in the context of a motion to extend the pretrial schedule. Text Order (Dec. 1, 2023). The parties filed briefs outlining their competing arguments. Subsequently, to properly address the pertinent issue, the Court granted McDaniel's motion to extend the scheduling deadlines, in part, to give her an opportunity to file a motion for leave to amend the complaint.[2] Text Order (Dec. 19, 2023). McDaniel filed her Motion and Defendants oppose. See Defs.' Obj.

---

[2] Amid supplemental briefing, Defendants asserted, to expedite resolution of this issue, that they would not raise as an affirmative defense that McDaniel failed to exhaust her administrative remedies for her retaliation claims. Defs.' Suppl. Mem. Supp. Obj. Pl.'s Mot. Extend Deadline Amending Pleadings 6, ECF No. 26.

Pl.'s Mot. Leave Amend Am. Verified Compl. ("Defs.' Opp'n"), ECF No. 37.  The matter is fully briefed.

## II. STANDARD OF REVIEW

Ordinarily, parties may move to amend a complaint "as a matter of course" within certain time limitations.  Fed. R. Civ. P. 15(a)(1).  When that time has passed, a party may amend a complaint "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Such leave should be freely given by the court "when justice so requires."  Id.  "Freely given" does not mean reflexively given, however.  A motion for leave will be denied if an amendment would be futile, meaning the amended complaint "would fail to state a claim upon which relief could be granted."  Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  Thus, Federal Rule of Civil Procedure 12(b)(6) governs.  See Andrade v. Ocwen Loan Serv., LLC, No. 18-00385-WES, 2019 WL 3470615, at *1-4 (D.R.I. July 31, 2019), report and recommendation adopted, 2019 WL 4647140 (D.R.I. Sept. 24, 2019) (applying Rule 12(b)(6) standard to a proposed amended complaint).

A proposed amended complaint must be "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555 (citations and footnote omitted).  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). When determining whether a proposed amended complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and "give the plaintiff the benefit of all reasonable inferences." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). The proposed amended complaint "must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559).

## III. Discussion

### A. Whether McDaniel Can Amend Her Complaint to Add MTM as a Defendant

McDaniel seeks to add MTM as a party under a "joint employer" theory. Pl.'s Mot. 19-20. Under the theory, a plaintiff must demonstrate that "an entity exercised sufficient control over [an] employee[] to constitute a joint employer." Rivas v. Fed. de Asociaciones Pecurias, 929 F.2d 814, 820 (1st Cir. 1991); see Burnett v. Ocean Props., Ltd., 987 F.3d 57, 68 (1st Cir. 2021) (describing the joint employer as an alternate theory of an employment relationship). In other words, "the 'joint employer' concept recognizes that the business entities involved are in fact

separate but that they share or co-determine those conditions of employment." Rivas, 929 F.2d at 820 n.17 (quoting NLRB v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982)). A plaintiff can demonstrate that a party is a joint employer through various factors: "the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, . . . issuance of operating instructions," id. at 820 (quoting G. Heileman Brewing Co. v. NLRB, 879 F.2d 1526, 1531 (7th Cir. 1989)), and the ability to "inspect and approve work, [and] pass on changes in pay and overtime allowed," id. at 821 (quoting Ref-Chem Co. v. NLRB, 418 F.2d 127, 129 (5th Cir. 1969)).

McDaniel wants to add MTM as a defendant because Mihailides served as president of MTM "and controlled the manner in which it conducted business." Pl.'s Mot. 19. Discovery has revealed that MTM issued two of McDaniel's checks. Id. According to her, this creates a factual issue concerning whether MTM was a joint employer and "had the right or power to exercise control over the terms and conditions of McDaniel's employment." Id. In her PAC, McDaniel alleges that MTM "had the right or power to exercise control over the methods and means of how McDaniel performed her work and was an 'employer' within the meaning[]" of federal and state law. PAC ¶ 4.

McDaniel does not allege sufficient facts to substantiate her assertion that MTM was a joint employer. She alleges, in a conclusory manner, that MTM had control over her employment. The PAC does not contain any allegations substantiating any of the factors outlined in Rivas. See 929 F.2d at 820-21; Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st Cir. 1995) (outlining similar factors). Therefore, the Court will not permit McDaniel to add MTM as a defendant because doing so would be futile. See Lahens v. AT&T Mobility P.R., Inc., No. 18-1776 (PG), 2019 WL 1149923, at *3 (D.P.R. Mar. 11, 2019) (granting motion to dismiss on joint employer claim where the plaintiff did not "include[] any other fact that could reasonably lead this court to infer the existence of a single factor justifying the application" of the joint employer doctrine).

## B. Whether McDaniel Can Amend Her Complaint to Add Claims for Retaliation

McDaniel wants to add federal and state law claims for retaliation against Defendants. She contends that Defendants retaliated against her for filing a lawsuit by filing counterclaims and "criminal charges." Pl.'s Mot. 16-19. In support of her theory, McDaniel alleges that, after she filed a charge of discrimination with the EEOC and RICHR, Defendants' counsel wrote a letter accusing McDaniel of committing various crimes. See PAC ¶¶ 167-73. The crimes Defendants allege McDaniel to have committed

relate to the allegations contained in their counterclaims. <u>See</u> <u>id.</u> ¶¶ 174-76 & n.2. Then, Defendants filed what McDaniel refers to as a "criminal complaint"[3] with the Dallas, Texas police department, and not with any police department in Rhode Island, alleging McDaniel committed certain crimes. <u>Id.</u> ¶¶ 177-79. Defendants did not file "criminal charges" until twenty months after McDaniel's business relationship ended with Defendants. Pl.'s Mot. 2.

To bring an employment retaliation claim, the plaintiff must plead that she "[1] engaged in protected conduct, [2] that she suffered an adverse employment action, and [3] that a causal nexus exists between the protected activity and the adverse action." <u>Forsythe v. Wayfair Inc.</u>, 27 F.4th 67, 76 (1st Cir. 2022) (quoting <u>Ponte v. Steelcase Inc.</u>, 741 F.3d 310, 321 (1st Cir. 2014)). The parties do not dispute McDaniel engaged in protected conduct by filing the instant lawsuit.

McDaniel's retaliation claims are premised on two actions: Defendants filing counterclaims against her in the instant case

---

[3] Defendants dispute that they filed "criminal charges" against McDaniel. Rather, they filed a criminal incident report with the police. <u>See</u> DXE, Dallas Police Dep't Summary Incident Report (Dec. 4, 2022), ECF No. 37-5. McDaniel does not dispute that she was never criminal charged. Pl.'s Reply 6-7, ECF No. 40. The Court may consider this document because it is central to McDaniel's claim and sufficiently referred to in the complaint. <u>See</u> <u>Newman v. Lehman Bros. Holdings</u>, 901 F.3d 19, 25 (1st Cir. 2018).

and Defendants filing a criminal incident report with the Dallas Police Department.  The Court will address each in turn.

### 1. Counterclaims as Retaliation

Defendants argue that the filing of counterclaims[4] in this case is not an adverse action because the counterclaims are compulsory.[5]  Defs.' Opp'n 21-31.  According to McDaniel, Defendants' counterclaims are permissive, making them sufficiently retaliatory.  Pl.'s Mot. 10.  Alternatively, even if the Court concludes that Defendants' counterclaims are compulsory, their claims are baseless.  Id. at 14-16.

Under Burlington Northern & Santa Fe Railway Company v. White, a plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might have well dissuaded a reasonable worker from making or supporting a charge of discrimination."  548 U.S. 53, 68 (2006) (internal quotation marks omitted).  "[C]ourts are split over whether filing a

---

[4] Defendants' counterclaims include claims for conversion, extortion, wire fraud, computer crimes, alteration of a check, online impersonation, cyber stalking and cyber harassment, libel, and various privacy claims.  See Defs.' Answer to Am. Verified Compl. & Countercls. ("Countercl.") 27-94, ECF No. 7.

[5] Defendants point out that Defendants Mihailides and PBH brought the counterclaims, not PPM.  See Countercl. 27.  Therefore, McDaniel's retaliation claim against PPM with respect to Defendants' counterclaims is futile because it was not part of the alleged retaliatory conduct.

counterclaim is an adverse action." Berrada v. Cohen, 792 F. App'x 158, 164 (3d Cir. 2019). Permissive counterclaims often are the basis of retaliation claims. See, e.g., Viera v. Gen. Auto. Ins. Servs., No. 3:19-cv-00901, 2021 WL 396687, at *13-15 (M.D. Tenn. Feb. 4, 2021) (denying motion to dismiss retaliation claim where the plaintiff pleaded facts to plausibly allege that the defendants acted with retaliatory motive when they filed their permissive counterclaim).

It appears that only one court in the First Circuit has addressed this issue. In Orr v. James D. Julia, Inc., the defendant terminated the plaintiff after the plaintiff threatened to assert a claim of disability discrimination concerning a dispute over the defendant's bonus compensation. No. 07-51-B-W, 2008 WL 2605569, at *1 (D. Me. June 27, 2008), report and recommendation adopted 2008 WL 4057144 (D. Me. Aug. 26, 2008). The defendant counterclaimed for, among other things, unjust enrichment. Id. According to the court in Orr, "when a claim qualifies as a compulsory counterclaim[,] it is only actionable as retaliation if it is totally baseless." Id. at *16 (citations omitted). The court found the defendant's counterclaims were not baseless and entered summary judgment on plaintiff's retaliation claim. Id. at *16, *18. It reasoned that the temporal relationship between the plaintiff filing his complaint and the defendant filing its counterclaims did not demonstrate retaliatory motive. Id. at *16.

10

A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Such a relationship exists if the claims "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). The First Circuit's test to determine if a counterclaim is compulsory or permissive requires a court to ask:

> 1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
>
> 2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
>
> 3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
>
> 4) Is there any logical relation between the claim and the counterclaim?

Iglesias v. Mut. Life Ins. Co., 156 F.3d 237, 241 (1st Cir. 1998) (citing McCaffery v. Rex Motor Transp., Inc., 672 F.2d 246, 248 (1st Cir. 1982)), abrogated on other grounds by Glob. NAPs, Inc. v. Verizon N.E. Inc., 603 F.3d 71 (1st Cir. 2010).

The parties appear to disagree about whether the last test – the logical relation test – applies. For claims to have a "logical relation," they must

> arise[] out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional

legal rights in a party defendant that would otherwise remain dormant.

Id. (quoting McCaffery, 672 F.2d at 249).

McDaniel's allegations stem from her business relationship with Defendants. In her role, she assisted Defendants with marketing their business through various mediums including social media and print advertisements. PAC ¶¶ 21-22. She alleges, inter alia, that she was discriminated against based on her gender vis-à-vis sexual harassment. See, e.g., id. ¶¶ 188-217. Even more, she asserts that Defendants failed to pay certain wages for her work, see id. ¶¶ 322-67, and breached a contract by failing to pay her for work she performed, see id. ¶¶ 279-84. She argues that the operative facts supporting her claims are not relevant to Defendants' counterclaims. Pl.'s Mot. 12. It is of no moment, according to McDaniel, that Defendants' counterclaims are based on McDaniel's and Defendants' business relationship. Id. at 11-12.

On the other hand, Defendants argue that their claims stem from the very relationship on which McDaniel is suing. Defs.' Opp'n 23-24. For example, Defendants' counterclaims relate to an alleged unauthorized use of Mihailides's image as part of the content McDaniel created for Defendants. See Countercl. ¶¶ 349-62. Further, Defendants allege, as part of their extortion and fraudulent conversion counts, that McDaniel stole a hard drive containing work she was paid to create. Id. ¶¶ 206-30. Moreover,

Defendants allege McDaniel improperly used Defendants' social media accounts prior to the conclusion of the business relationship. Id. ¶¶ 302-07.

Viewing the allegations together, the Court finds that Defendants' counterclaims are compulsory. This case is different from Obester v. Lucas Associates, Inc., a case on which McDaniel relies, where the plaintiff alleged that the defendant unlawfully terminated her because of her gender and pregnancy. See No. 1:08-CV-3491-MHS/AJB, 2009 WL 10665749, at *1, *5 (N.D. Ga. June 5, 2009). The defendant brought counterclaims alleging violations of the non-disclosure agreement and for failure to pay for time the plaintiff spent on sabbatical. Id. at *5. The court there found that the defendant's claims did not arise out of the same operative facts because its allegations did not concern why the plaintiff was terminated. Id. Whereas here, many of the facts supporting McDaniel's claims for breach of contract and unpaid wages share the same operative facts as Defendants' counterclaims for extortion, fraudulent concealment, unauthorized use of image, and computer trespass. Unlike Obester, where the court held that the only link between the plaintiff's claims and the defendant's counterclaims was the employment relationship, the claims and counterclaims in this case are sufficiently intertwined and are part of the story concerning why the business relationship between

McDaniel and Defendants ended.  Thus, Defendants' claims are compulsory.

With the above finding, McDaniel's retaliation claims have hit a roadblock.  A finding that a counterclaim is "baseless" is a "difficult standard for the plaintiff to meet," Orr, 2008 WL 2605569, at *16, because she "must allege that the lawsuit or counterclaim was filed with a retaliatory motive and was lacking a reasonable basis in fact or law," Smith v. Miami-Dade Cnty., 621 F. App'x 955, 960 (11th Cir. 2015).

In attempting to overcome this hurdle, McDaniel alleges that Defendants' counterclaims are baseless but does not allege any facts to support her assertion.  PAC ¶¶ 185, 230-31, 275-76. Consequently, because McDaniel only makes conclusory allegations about the baselessness of Defendants' counterclaims, McDaniel fails to meet her burden of showing that her retaliation claims would not be futile.  See Smart v. Phoenix Lithographing Corp., No. 21-486-KSM, 2022 WL 3229321, at *5 (E.D. Pa. Aug. 10, 2022) (articulating that for a retaliation claim premised on a counterclaim to survive a motion to dismiss, "a plaintiff must plead facts from which the court can reasonably infer that the counterclaim is objectively baseless"); Sharqawi v. Kirby Co., No. 1:20cv00271, 2022 WL 1227327, at *6 (N.D. Oh. Apr. 26, 2022) (holding that a plaintiff must plead "factual assertions

sufficient to allege that the counterclaim is baseless or was initiated in bad faith").

McDaniel also invites the Court to allow her retaliation claims to proceed because the counterclaims are brought in bad faith. Pl.'s Mot. 15-16. Though the First Circuit has not articulated a standard by which to evaluate retaliation claims premised on compulsory counterclaims, courts of appeals have been uniform that such retaliation claims can only survive if the plaintiff sufficiently alleges that the claims are baseless. See Kim v. Lee, No. 22-61, 2023 WL 2317248, at *3 (2d Cir. Mar. 2, 2023); Berrada, 792 F. App'x at 164; Smith, 621 F. App'x at 960; see also Orr, 2008 WL 2605569, at *16. Therefore, the Court will not evaluate Defendants' counterclaims under the bad-faith standard.

Accordingly, McDaniel's proposed federal and state law retaliation claims with respect to Defendants' counterclaims are futile.

### 2. Criminal Incident Reports as Retaliation

As touched upon above, a retaliation claim requires a showing of an adverse employment action. Title VII's anti-retaliation provisions have been interpreted broadly enough to include actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 57. The Court is

mindful of the fact that <u>Burlington Northern</u> positively cited to a Tenth Circuit case as an example of actionable retaliation where the employer filed a false criminal charge against a former employee who complained of discrimination. <u>Id.</u> at 64 (citing <u>Berry v. Stevinson Chevrolet</u>, 74 F.3d 980, 984, 986 (10th Cir. 1996)).

Here, Defendants filed a criminal incident report against McDaniel in Dallas, Texas where she resides and not in Rhode Island where the alleged crimes took place. PAC ¶¶ 177-79. There are no allegations that this report went public, but McDaniel alleges that it negatively affected her reputation and has limited her ability to obtain employment. <u>Id.</u> ¶ 223.

Defendants cite many cases for the proposition that the filing of non-public criminal reports is not an adverse employment action. Defs.' Opp'n 33-35. They principally rely on <u>Dick v. Phone Directories Co., Inc.</u>, 397 F.3d 1256 (10th Cir. 2005). But <u>Dick</u> involved the plaintiff's appeal of summary judgment, unlike here where the Court is considering a motion for leave to amend the complaint. <u>Id.</u> at 1260. The court affirmed the lower court's decision as to the retaliation claim because, unlike <u>Berry</u>, there was no evidence that the criminal case went beyond the filing of a criminal complaint or that the allegations were made public. <u>Id.</u> at 1269. Of the cases Defendants rely on outside of the Tenth Circuit, one involved a finding of summary judgment on a <u>pro se</u> litigant's retaliation claim where the plaintiff provided no

16

evidence to support her retaliation claims.  See Davidson-Nadwodny v. Wal-Mart Assocs., Inc., No. CCB-07-2595, 2010 WL 1328572, at *1, *8 n.6 (D. Md. Mar. 26, 2010).  The other non-Tenth Circuit case dismissed a retaliation claim that involved a plaintiff who alleged that an administrative charge filed against her concerning a "minor accident with a department vehicle" was retaliatory. Wyckoff v. Maryland, 522 F. Supp. 2d 730, 733 (D. Md. 2007). Because the plaintiff there did not explain how the charge was resolved or how it affected her employment, the court dismissed the retaliation claim.  Id. at 736.

The Court finds that McDaniel's proposed amendment to her Complaint is not futile because she plausibly alleges that Defendants retaliated against her when they filed a criminal incident report against her.  McDaniel filed her EEOC charge in September 2022 and the instant lawsuit in July 2023.  PAC ¶ 220. Defendants responded with their counterclaims soon after McDaniel filed her lawsuit.  Id. ¶ 221.  Several months later, in a jurisdiction where the alleged crime did not take place, Defendants filed a criminal incident report.  See DXE at 2 (noting that McDaniel was "terminated" in late 2021).  The alleged crime took place about a year before the report was filed.  Id. at 1. Moreover, the report was only filed a few months ago.  Id.  It is hard to imagine McDaniel would know whether the investigation is complete, whether there is still a risk of being arrested, or

17

whether the allegations will go public.  Given this, she plausibly alleges that Defendants' criminal incident report has "sullied [her] reputation in the community and created obstacles in obtaining employment in her field, thereby negatively affecting her tangible future employment objectives and adversely impacting her employment prospects."  PAC ¶ 223.

It is important to note that Defendants' filing is not a "petty slight[] or [a] minor annoyance[]" that falls outside of the protection of anti-discrimination laws.  Burlington N., 548 U.S. at 68.  Defendants invoked the power of a local criminal justice system, several months after the alleged volatile conduct took place, to allegedly harass her for engaging in protected conduct.  That is not something to shake off.  If the criminal case were to proceed, there could be real-world effects on McDaniel's liberty, reputation, financial state, and overall well-being.  United States v. Marion, 404 U.S. 307, 320 (1971); see Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 814 (1987) ("Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life.").  Accordingly, McDaniel may amend her Complaint to litigate whether Defendants' actions in filing a criminal incident report constitute actionable retaliation.

C. **Whether McDaniel Can Amend Her Complaint to State a Claim Under RIWPA**

McDaniel alleges that Defendants' retaliation also violated the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I. Gen. Laws § 28-50-1 et seq. The statute prohibits employers from engaging in discriminatory conduct against an employee who reports or is about to report a violation of law to authorities. R.I. Gen. Laws § 28-50-3(1). Those who are on the receiving end of such discriminatory conduct can bring a civil action to vindicate themselves. Id. § 28-50-4(a). Defendants argue that the statute is inapplicable here because it does not apply to discriminatory actions taken against former employees. Defs.' Opp'n 9-12.

RIWPA protects "employee[s]" who "report[] or [are] about to report . . . a violation . . . of a law." R.I. Gen. Laws 28-50-3(1). In analyzing the statute, the Rhode Island Supreme Court held that this language "is indicative of a legislative intent to protect activity that occurs while the employee is in the employ of his or her present employer or his or her immediately preceding employer." Crenshaw v. State, 227 A.3d 67, 73 (R.I. 2020). The court concluded that the RIWPA only protects "activities that occurred while the employee was still employed by the defendant employer or one in close nexus with it." Id. at 74. Thus, the statute does not extend to conduct taken against the whistleblower activities of a former employee.

19

McDaniel does not respond to Defendants' arguments in her reply. Because the alleged retaliatory activity – Defendants' filing of their counterclaims and filing of a criminal incident report – took place after McDaniel's business relationship ended with Defendants, McDaniel cannot maintain a claim under the RIWPA and that claim is thus futile.

**D. Whether Mihailides can be Individually Liable Under RICRA, RIPWA, and the Misclassification Statute**

McDaniel seeks leave to amend her Complaint, "in an abundance of caution," to unambiguously allege individual liability against Mihailides under RICRA, RIPWA, and the Misclassification Statute. Pl.'s Mot. 20-21. Defendants argue that McDaniel's amendment is futile because none of the statutes provide for individual or supervisor liability. See Defs.' Opp'n 15-21.

Starting with RICRA, the parties present two competing cases substantiating their positions concerning whether there can be individual liability under the statute. The Rhode Island Supreme Court has not addressed the question. Defendants point the Court to a Rhode Island Superior Court case that held that individuals are not subject to liability under RICRA. See Newkirk v. Pezzelli Nursing Home, Inc., No. PC-2022-04394, 2023 WL 2763827, at *3-7 (R.I. Super. Ct. Mar. 28, 2023). The court in Newkirk relied on the Rhode Island Supreme Court's decision in Mancini v. City of Providence, which held that the Rhode Island Fair Employment

Practices Act ("RIFEPA"), R.I. Gen. Laws § 28-5-7 et seq., does not impose individual liability like Title VII, the federal statute after which RIFEPA and RICRA are modeled. Id. (relying on 155 A.3d 159, 163-65 (R.I. 2017)). Newkirk went on to reason that RIFEPA and RICRA must be read together because RICRA is not "an end run around" RIFEPA. Id. at *7 (quoting Horn v. S. Union Co., 927 A.2d 292, 296 (R.I. 2007))). Because of the holding in Mancini and the state supreme court's directive to read the two statutes in tandem, Newkirk concluded that there can be no individual liability under RICRA. Id. Newkirk went on to conclude that the Rhode Island General Assembly's intent in passing RICRA was to expand the universe of individuals who could seek recourse for discrimination, not the universe of those that can be sued. Id. at *5.

McDaniel relies on the holding in Mayale-Eke v. Merrill Lynch which did conclude that an individual can be sued under RICRA. 754 F. Supp. 2d 372, 384-85 (D.R.I. 2010). That case was decided after the First Circuit's decision in Fantini v. Salem State College, which had an analogous holding to Mancini – individual employers cannot be found liable under Title VII. 557 F.3d 22, 29-30 (1st Cir. 2009). The litigants in Mayale-Eke similarly argued that, because of Fantini, individuals cannot be found liable under RICRA. 754 F. Supp. 2d at 385. At that time, this Court already concluded that one cannot be held individually liable under

21

RIFEPA.  See Johnston v. Urban League of R.I., Inc., No. C.A. 09-167 S, 2009 WL 3834129, at *1-3 (D.R.I. Nov. 13, 2009). Nevertheless, the court in Mayale-Eke still concluded that RICRA allows for individual liability given the purpose of the statute was to "provid[e] broad protection against all forms of discrimination in all phases of employment."  754 F. Supp. 2d at 385 (quoting Ward v. City of Pawtucket Police Dep't, 639 A.2d 1379, 1381 (R.I. 1994)).

Both the court in Mayale-Eke and the court in Newkirk were presented with similar arguments but came to different conclusions.  Considering that the Rhode Island Supreme Court has yet to rule on the question, the General Assembly's intention to broadly protect employees from discrimination, and this Court's precedent, the Court declines to deviate from its holding in Mayale-Eke and concludes that individual employers can be found liable under RICRA.  See Allen v. Att'y Gen. of Me., 80 F.3d 569, 575 n.6 (1st Cir. 1996) (noting "the general proposition that federal courts must defer to a state supreme court's interpretation of a statute of the state"); see also Evans v. R.I. Dep't of Bus. Reg., No. Civ. A. 01-1122, 2004 WL 2075132, at *2 (R.I. Super. Ct. Aug. 21, 2004) (finding that the defendant "may be individually liable for conduct constituting a violation under RICRA"). Therefore, the Court finds McDaniel's claim against Mihailides under RICRA is not futile and may proceed.

As to McDaniel's RIPWA and Misclassification Statute claims against Mihailides, Defendants argue the statutes on which McDaniel relies do not provide for individual or supervisor liability. Def.'s Opp'n 17-21. There appears to be no local case law on the issue. So much so, Defendants rely on a Utah Supreme Court case to support their position. Id. at 17-20 (relying on Heaps v. Nuriche, LLC, 345 P.3d 655 (Utah 2015)). Under both statutes, the plaintiff's employer can be liable for violative conduct. See R.I. Gen. Laws §§ 28-14-19.1, 19.2. "Employer," under both statutes, is defined as "any individual, firm, partnership, association, joint stock company, trust, corporation, receiver, or other like officer appointed by a court of this state, and any agent or officer of any of the previously mentioned classes, employing any person in this state." Id. § 28-14-1(5).

Putting aside whether supervisors can be found liable under the RIPWA and the Misclassification Statute, it appears that Mihailides's role fits squarely in the definition of employer - assuming, as McDaniel alleges, she was an employee. Mihailides is alleged to be the sole or majority member of PPM and PBM and an agent of the two entities, PAC ¶¶ 5, 16, 198, not a mere employee of PPM and PBH who has a supervisory role. Based on McDaniel's allegations, Mihailides is the type of defendant who may be found liable under either RIPWA or the Misclassification Statute - an "individual" or the "agent or officer" of the entity that employed

23

the plaintiff.  R.I. Gen. Laws § 28-14-1(5).  Therefore, McDaniel's claims under the RIPWA and the Misclassification Statute are not futile.

At the very least, the question of whether Mihailides can be sued is tied up in the ultimate question of this case - whether McDaniel was an employee of Defendants.[6]  If Defendants are correct that McDaniel was never an employee, her RIPWA and Misclassification Statute claims would fall with her other employment discrimination claims.  Accordingly, the Court will allow these claims to proceed.

## IV. CONCLUSION

For the reasons above, McDaniel's Motion for Leave to Amend her Amended Verified Complaint, ECF No. 34, is GRANTED IN PART and DENIED IN PART.  McDaniel's Motion to add MTM as a Defendant is DENIED.  McDaniel's Motion to add retaliation claims under state and federal law with respect to Defendants' counterclaims is DENIED.  McDaniel's Motion to add retaliation claims under state and federal law with respect to her allegations that Defendants filed a false criminal incident report is GRANTED.  McDaniel's Motion to add a claim under the RIWPA is DENIED.  Finally,

---

[6] Defendants' dispositive motion on this question is in the works.  E.g., Defs.' Opp'n 2 ("Defendants are prepared to demonstrate through a dispositive motion that Plaintiff's claims are baseless and vexatious because . . . Plaintiff was never an employee of any one of them . . . .").

McDaniel's Motion to include allegations clarifying that she is suing Defendant Mihailides in his individual capacity under RICRA, RIPWA, and the Misclassification Statute is GRANTED.  McDaniel is ORDERED to file an amended complaint consistent with this opinion within ten days of the issuance of this opinion.[7]


IT IS SO ORDERED.

_WESmith_

William E. Smith
District Judge
Date: March 11, 2024

---

[7] McDaniel, in her proposed amended complaint, increases her damages claim by $18 million for "emotional pain and suffering," "damage to reputation," and punitive damages.  See Proposed Second Am. Verified Compl. 36, ECF No. 35-1.  Defendants ask the Court to strike McDaniel's proposed ad damnum, particularly her punitive damages request.   Def.'s Opp'n 35-40.   Unlike the other jurisdictions Defendants identified, there is no local prohibition preventing McDaniel from alleging an amount for punitive damages in her case.  See id.  Nor do the Rhode Island Professional Rules of Professional Conduct empower the Court to strike McDaniel's ad damnum as Defendants suggest.  Id. at 39-40.  Accordingly, McDaniel may proceed with her proposed damages request.