UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
ALISON MCDANIEL,               )
                               )
         Plaintiff,            )
                               )
    v.                         )    C.A. No. 23-292 WES
                               )
PRESERVE PROPERTY MANAGEMENT   )
COMPANY, LLC, et al.,          )
                               )
         Defendants.           )
_____)
```

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, Senior District Judge.

Plaintiff Alison McDaniel sues Defendants for alleged employment discrimination, labor law violations, breach of contract, defamation, and battery. 2d Am. Verified Compl. ("Operative Complaint"), ECF No. 43. Pending before the Court is Defendants' Motion for Partial Summary Judgment ("Defendants' Motion"), ECF No. 47. For the reasons below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

## I. BACKGROUND

### A. The Parties

The Preserve at Boulder Hills, LLC ("PBH"). Defendant PBH owns and manages real estate in Richmond, Rhode Island. Defs.' Statement Undisputed Facts ("DSUF") ¶ 70, ECF No. 48. PBH, alongside the M.T.M. Development Corporation ("MTM"), developed

the property into a luxury resort (the "Resort").  Pl.'s Statement Undisputed Facts ("PSUF") ¶¶ 1-5, 7, ECF No. 59.  The Resort offers a range of services including upscale lodging, dining, spa treatment, and outdoor activities.  Id.  After developing the Resort, PBH hired a management company to operate it.  Id. ¶ 9.

Preserve Property Management Company, LLC ("PPMC"). Defendant PPMC now manages nearly everything at the Resort.  Id. ¶ 33.  PPMC was founded in February 2020.  DSUF ¶ 89.  At first, PPMC itself was managed by another company called the Ocean House Management Company ("Ocean House").  Id. ¶ 92.  At some point, though, Ocean House's management ended, and Ocean House's employees transitioned to PPMC.  Id. ¶ 95.  From June 2023 to June 2024, PPMC was placed under the management of another company called Pyramid Benchmark Global.  Id. ¶ 97.

Paul Mihailides.  Defendant Mihailides sits atop a complex web of business arrangements.  See PPMC & PBH's 2d Am. Corporate Disclosure Statement ("Disclosure Statement"), ECF No. 22.  He is the Trustee of the Paul P. Mihailides Revocable Trust (the "Trust").  Id. at 1.  The Trust owns an entity called PPM & Co., LLC, which owns Defendant PPMC.  Id.

Mihailides is also the president of MTM.  Exs. DSUF Supp. Defs.' Mot. Ex. 10, at 2, ECF No. 49-10.  MTM, together with PPM & Co., LLC, jointly owns another entity named Preserve Management, LLC.  Disclosure Statement 2.  This entity partially owns Defendant

PBH.  Id.

Alison McDaniel.  McDaniel works as a professional actress and model, with over fifteen years of experience in creative industries.  DSUF ¶¶ 1-5; PSUF ¶ 36.  She also owns and operates the Ali McDaniel Agency (the "Agency"), a business that contracts with nonprofits to help them fundraise at charity events.  DSUF ¶¶ 6-10.  The Agency helps, in part, by providing "raffle girls" to sell raffle tickets.  Id. ¶ 10.  This is McDaniel's main role at the charity events.  PSUF ¶ 39.

**B. The Parties' Relationship**

McDaniel met Mihailides at one such charity event in February 2019.  Id. ¶ 42.  Mihailides thought that she was a nonprofit spokesperson and model who "worked the crowd to make ticket sales." Id. ¶ 45.  After the event, Mihailides followed up with her by text message.  DSUF ¶ 12.  He said that he needed an outdoor spokesperson for a program at the Resort.  Id.  He also wanted to speak to her about other events.  Id.  And he asked her about creating an Instagram page.  Id.  She said that she could make time to speak and wanted to help.  Id. ¶ 13.

In mid-2019, PBH retained McDaniel to provide modeling services for the Resort and paid her $2,000 for those services. Id. ¶¶ 15-17.  Then in November, Mihailides emailed McDaniel with a list of other possible business opportunities, writing that "[o]nly you know what the best opportunity for us is and the time

you can commit." Id. ¶¶ 18-20. He outlined different compensation models based on how much work she could take on. Id. ¶ 21. That December, the two met to keep discussing possible business opportunities. PSUF ¶¶ 49-50. Mihailides says "nothing was solidified at this meeting." Id. ¶ 50. But McDaniel claims that at the meeting, Mihailides offered her a salary of $6,000 per month, although they did not establish her specific job duties. Aff. McDaniel ¶ 11, ECF No. 60.

From there, the parties' business relationship continued until February 17, 2022. On that day, McDaniel emailed Mihailides to end the business relationship because of alleged sexual harassment by Mihailides. PSUF ¶ 53-54.

McDaniel claims that during the entire time she worked for PBH, "Mihailides subjected [her] to repeated sexual advances including attempts to kiss [her] on the mouth, requests for sexual favors, inappropriate touching, ogling with suggestive overtones, and verbal and physical harassment of a sexual nature, which were unwelcome and offensive to [her]." Aff. McDaniel ¶ 12. This lawsuit arises mostly from these allegations. See generally Operative Compl.

## C. This Lawsuit

In September 2022, McDaniel filed a Charge of Discrimination with the federal Equal Employment Opportunity Commission ("EEOC") and the Rhode Island Commission for Human Rights ("RICHR").

Operative Compl. ¶¶ 168, 171.

On July 11, 2023, after obtaining a "Right to Sue" letter from the EEOC, McDaniel filed this lawsuit.  Id. ¶¶ 171, 175.  She then amended it on July 19.  Id. ¶ 175.  The next day, Defendants filed their Answer and made numerous counterclaims against McDaniel.  Defs.' Answer Am. Verified. Compl. & Countercls., ECF No. 7.

Then, in November, McDaniel filed another Charge of Discrimination with RICHR, alleging Defendants retaliated against her by filing their counterclaims.  DSUF ¶¶ 466-467.  McDaniel later amended that charge to also claim that Defendants further retaliated against her by filing a separate state criminal report against her.  Id. ¶¶ 470-471.

In January 2024, McDaniel moved to amend her Amended Verified Complaint to add more claims and parties.  McDaniel's Mot. Leave Amend Am. Verified Compl., ECF No. 34.  The Court granted in part and denied in part that motion.  Mem. & Order (Mar. 11, 2024), ECF No. 42.

McDaniel's Operative Complaint now brings the following thirteen Counts against Defendants:

- Counts I-III claim PBH and PPMC violated Title VII. Operative Compl. ¶¶ 187-226.

- Counts IV-VI allege that PBH and PPMC violated the Rhode Island Fair Employment Practices Act ("FEPA").  Id. ¶¶

5

227–266.

- Count VII accuses PBH and PPMC of breach of contract. Id. ¶¶ 267-273.

- Counts VIII & IX allege that all Defendants violated the Rhode Island Civil Rights Act of 1990 ("RICRA"). Id. ¶¶ 274-309.

- Counts X & XI claim that all Defendants violated the Rhode Island Payment of Wages Act ("RIPWA"). Id. ¶¶ 310-322.

- Count XII alleges Mihailides committed defamation. Id. ¶¶ 323-330.

- Count XIII accuses Mihailides of battery. Id. ¶¶ 331-334.

## II. DISCUSSION

Defendants now move for summary judgment on all Counts except Count XIII. Mem. L. Supp. Defs.' Mot. Partial Summ. J. ("Defs.' Mem."), ECF No. 47-1. Defendants' Motion largely relies on four propositions. First, that McDaniel was not their employee, but rather was an independent contractor. Defs.' Mem 9-48. Second, and relatedly, that Defendants were not her employers. Id. at 6-9. Third, that any alleged sexual harassment she experienced occurred in March 2019 or no later than April 2020. Id. at 51-53. And fourth, that any alleged defamatory statements Mihailides made occurred no later than December 2021. Id. at 53-54. Defendants wield these propositions to argue both that McDaniel cannot sue them under some of her chosen statutes, and that even

where she can sue them, her claims are time barred.

### A. Summary Judgment Standard

The Court must grant summary judgment if Defendants, as the movants, show "that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] dispute is genuine when the evidence is such 'that a reasonable jury could resolve the point in favor of'" McDaniel.  See Quintana-Dieppa v. Dep't of the Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting Doe v. Trustees of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)).  A fact is material when it has the "potential to affect the outcome of the suit under the applicable law."  Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)).  And if Defendants show that there is no genuine dispute as to any material fact, then they are entitled to summary judgment unless McDaniel can "present definite, competent evidence on any issue for which she bears the ultimate burden of proof" to show that "a trier of fact could reasonably resolve that issue in [her] favor."  See id. (collecting cases) (cleaned up).

At this stage, the Court views "the entire record in the light most hospitable" to McDaniel.  See id. (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).  The Court will draw all reasonable inferences in her favor, but will not rely on "conclusory allegations, improbable inferences, [or] unsupported speculation."  Id. (alteration in original) (quoting McCarthy, 56

7

F.3d at 315).

Defendant's propositions present mixed questions of law and fact. McDaniel disputes them all. The Court may consider each at summary judgment. DeLia v. Verizon Commc'ns Inc., 656 F.3d 1 (1st Cir. 2011) (involving employee and employer questions); Franchina v. City of Providence, 881 F.3d 32, 47-48 (1st Cir. 2018) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)) (involving date of occurrence of alleged discrimination question).

## B. Counts I-III: Title VII Claims

The Court begins with McDaniel's Title VII claims. Title VII bans as an unlawful employment practice employer discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). Addressing retaliation, it also prohibits employer discrimination against any employee "because [s]he has opposed any practice made an unlawful employment practice by this [law], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [law]." Id. § 2000e-3(a).

McDaniel alleges that PBH and PPMC are vicariously liable for multiple unlawful employment practices based on sex. Operative Compl. ¶¶ 187-226. She says that they, via Mihailides, subjected her to (1) a hostile work environment and (2) quid pro quo sexual harassment. Id. ¶¶ 187-216. She also alleges retaliation, based

8

on their filing of a criminal complaint against her. Id. ¶¶ 217-226.

But Title VII protects only "employees" from discrimination by their "employers." 42 U.S.C. §§ 2000e, 2000e-2; DeLia, 656 F.3d at 4-6. Defendants therefore raise their first two propositions: that McDaniel was an independent contractor and not an employee, and that they were not her employers, as defined by Title VII. Defs.' Mem 5-45. They thus contend that they are entitled to summary judgment on Counts I-III. Id.

Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). It defines an employer as "a person who is engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Id. § 2000e(b).

Because the statutory definitions fail to clearly establish how to determine whether a worker is an "employee," courts apply "common law agency principles." DeLia, 656 F.3d at 4 (quoting Lopez v. Massachusetts, 588 F.3d 69, 83 (1st Cir. 2009)). Those principles counsel consideration of whether:

> the employer has the right to control when, where, and how the worker performs the job; the work does not require a high level of skill or expertise; the work is performed on the employer's premises; there is a continuing relationship between the worker and the employer; the employer has the right to assign additional projects to the worker; the employer sets the

9

> hours of work and the duration of the job; the worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job; the worker does not hire and pay assistants; the work performed by the worker is part of the regular business of the employer; the employer is in business; the worker is not engaged in his/her own distinct occupation or business; the employer provides the worker with benefits such as insurance, leave, or workers' compensation; the worker is considered an employee of the employer for tax purposes; the employer can discharge the worker; and the worker and the employer believe that they are creating an employer-employee relationship.

Lopez, 588 F.3d at 85 (brackets and internal quotation marks omitted) (quoting 2 Equal Emp. Opportunity Comm'n, EEOC Compliance Manual, § 2-III, at 5716-17 (2008)).  Although these principles look at the totality of the circumstances, the "element of control" by the alleged employer over the alleged employee is the "principal guidepost that should be followed."  DeLia, 656 F.3d at 4 (quoting Lopez, 588 F.3d at 84-85).

Applying these principles to the undisputed facts of the parties' business relationship leaves no doubt that McDaniel was not an employee of either PBH or PPMC.

McDaniel's work and Defendants' control.  McDaniel chose her own work assignments – assignments that would fit within her own schedule - from among a menu of options that Defendants presented to her.  DSUF ¶¶ 12-13, 18-21, 49-50.  She alleges that those assignments included:

> [a]cting as a Spokesperson; acting in commercials; creating and appearing in videos for social media;

10

> providing my image for print, social media, advertisements, and magazines; acting as the social media manager; appearing at special events; appearing in videos for the Sporting Shoppe located on [Resort] property; creating marketing campaigns and ideas; shooting photography and videography; editing social media videos, brochures, and ad campaigns; creating the 3rd Hobbit House Concept; collaborations with other brands and/or people; working as editor for OEL magazine and managing its Instagram page; working and staffing trade shows to represent [the Resort] in North Carolina, Texas, and Pennsylvania; creating Fall Hobbit House décor; and hiring other professionals such as actors and videographers.
>
> I was also required to work on the property in many other ways such as doing tasks like decorating the Hobbit House, waiting tables on Mother's Day 2021, and helping to clean and stock the rooms of their new Hilltop Lodge. I also spent a lot of time trying to create a women's clothing line for [the Resort].

Ex. Supp. PSUF ("McDaniel's Ex.") 51–52, ECF No. 61.  While some of these tasks did not require a high level of skill or expertise, much of her main work doing acting, marketing, public relations, and photography, did require advanced skill.  See Alberty-Vélez v. Corporación De P.R. Para La Difusión Pública, 361 F.3d 1, 7 (1st Cir. 2004).  And her work on those higher skill tasks was the reason PBH hired McDaniel in the first place.  DSUF ¶¶ 18–20, 72.

McDaniel asserts that Mihailides "exercised significant control over the creative aspects of McDaniel's work."  Pl.'s Mem. L. Opp'n Defs.' Mot. ("Resp.") 23, ECF No. 58-1.  To support that assertion, she lists several examples, including that Mihailides had final approval of video content, required a dress code for events and photo shoots, and gave suggestions and feedback about

11

her work product.  Id. at 22-23 (first citing Aff. McDaniel; and then citing McDaniel Ex.).  She concludes that, "because this issue is hotly contested by the parties, it does not point so favorably in Defendants' direction."  Id. at 23.

But these examples do little to show the required level of control because they were largely creative in nature.  See Alberty-Vélez, 361 F.3d at 7 n.8, 9 (collecting cases to show that directorial control over creative workers does not necessarily indicate employee status).  Indeed, the Alberty-Vélez court noted, in finding that an actress was not an employee of a television station, that such creative "work by independent contractors is often performed to the exacting specifications of the hiring party."  Id. at 9 (quoting Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 490 (8th Cir. 2003)).  Accordingly, the Court finds that the factors considered here each support Defendants' proposition that McDaniel was not an employee.  See id. at 11; see also Jones v. Montachusetts Regional Transit Auth., No. 22-1234, 2023 WL 10479525, at *5 (1st Cir. Nov. 30, 2023) (relying on Alberty-Vélez, 361 F.3d at 9, to find that hiring party's tight control and management of subcontractor's day-to-day activities did not render that subcontractor an employee).

Location, personnel, supplies, and schedule.  McDaniel performed her work both at the Resort and remotely.  DSUF ¶ 193. Although McDaniel claims otherwise, the record shows that to

complete her work she occasionally hired assistants, paid them, and received reimbursement from PBH. See Resp. 31-32; DSUF ¶¶ 418-425. She also, at times, used her own supplies to perform her work, including her own camera, clothes, laptop, cell phone, and email. DSUF ¶¶ 426-436.

McDaniel did not have a set work schedule with Defendants and her availability to work fluctuated according to her schedule. Id. ¶¶ 197-209. Because the relationship was not exclusive, McDaniel's schedule included regular and consistent contract work through her Agency for multiple other entities throughout the business relationship. Id. ¶¶ 210-392. These other work commitments affected her availability to perform work for Defendants. Id. ¶¶ 398-403. And when she declined work assignments for Defendants, McDaniel sometimes provided substitutes through her Agency. Id. ¶¶ 393-97.

These factors bolster Defendants' argument that McDaniel was not their employee. See Alberty-Vélez, 361 F.3d at 7-8; Dykes v. DePuy, Inc., 140 F.3d 31, 38 (1st Cir. 1998).

Pay, benefits, and tax treatment. Neither PPMC nor PBH provided McDaniel any payroll checks, training, health insurance, workers' compensation insurance, paid time off, overtime pay, or retirement benefits. DSUF ¶¶ 73-74, 80-84, 101-02, 104-05, 112, 117, 119, 122-23. Despite McDaniel's claim that Mihailides agreed to pay her a salary of $6,000 per month, Aff. McDaniel ¶ 11, the

record shows that she received pay as illustrated below:

| Payment Number | Payment Date | Payor | Payee | Payment Amount | Payment Method | Description of Work |
|---|---|---|---|---|---|---|
| 1 | 7/9/2019 | PBH | McDaniel | $2,000 | Check | Promo Services Model |
| 2 | 12/8/2019 | PBH | Agency | $6,000 | Check | Consulting |
| 3 | 1/16/2020 | PBH | Agency | $7,457 | Check | January/Dallas Safari Club |
| 4 | 2/29/2020 | PBH | Agency | $6,430 | Check | Consulting |
| 5 | 4/7/2020 | PBH | McDaniel | $6,000 | Wire Transfer | None |
| 6 | 5/29/2020 | PBH | McDaniel | $3,000 | Wire Transfer | None |
| 7 | 7/13/2020 | PBH | Agency | $1,500 | Check | Consulting |
| 8 | 8/3/2020 | PBH | Agency | $4,350 | Check | None |
| 9 | 12/21/2020 | PBH | Agency | $1,350 | Check | None |
| 10 | 2/14/2021 | PBH | Agency | $1,500 | Check | None |
| 11 | 3/29/2021 | PBH | Agency | $2,000 | Check | None |
| 12 | 4/2/2021 | PBH | Agency | $1,200 | Check | None |
| 13 | 5/12/2021 | PBH | Agency | $5,500 | Check | None |
| 14 | 6/1/2021 | PBH | McDaniel | $2,150 | Check | None |
| 15 | 8/10/2021 | MTM | McDaniel | $4,247 | Check | Reimbursement and Pay |
| 16 | 8/24/2021 | MTM | McDaniel | $3,000 | Check | None |
| 17 | 9/27/2021 | PBH | McDaniel | $1,500 | Check | Consulting |
| 18 | 12/18/2021 | PBH | Agency | $12,350 | Check | Influencer, Modeling, Advertising Coordination Mgr. |

DSUF ¶¶ 16-17, 22-51, 53-55, 57-67.  Most of these payments were not made directly to her but to her Agency.  Id.  PPMC never paid her and did not list her on its payroll.  Id. ¶ 103  And this record of payments shows that PBH, when it paid her, did so in lump sums and not according to a regular hourly, weekly, or monthly rate.  Nor did PBH withhold any payroll taxes or other withholdings required by law from any payments made to McDaniel or the Agency.

14

Id. ¶ 68.

As to tax treatment more generally, PPMC did not issue any tax documents to McDaniel, and she did not claim any wages or income earned from PPMC in any of her own tax filings. Id. ¶¶ 106-109. PBH issued her an IRS Form 1099 for tax years 2020 and 2021 reflecting nonemployee compensation. Id. ¶¶ 132-136. And for tax years 2019, 2020, and 2021, McDaniel classified herself as an "actress" and "independent contractor" on her tax returns, paid a self-employment tax, and claimed deductions for expenses such as contract labor, supplies, travel, meals, and office expenses. Id. ¶¶ 137-156.

These considerations reinforce Defendants' argument that McDaniel was not an employee. See DeLia, 656 F.3d at 5; Lopez, 588 F.3d at 85; Alberty-Vélez, 361 F.3d at 7.

Description of Relationship. Finally, the parties point to how Mihailides and McDaniel describe the relationship at various times. McDaniel points to two times that Mihailides referred to her as an employee. Resp. 33-34. Mihailides draws attention to the many times that McDaniel referred to Defendants as her "client" both throughout the relationship and after it ended. DSUF ¶¶ 178-192. At one point, she wrote a social media post asking "why hire me over and over? I'm a contract worker." Id. ¶ 180. In another social media post, she wrote that she "should have cut this client

off a long time ago." Id. ¶ 184.

On balance, these facts do not move the needle much in either direction because the parties' subjective beliefs are not dispositive. See DeLia, 656 F.3d at 4 (citing Wilson v. Moulison N. Corp., 639 F.3d 1, 10 (1st Cir. 2011)).

* * *

In the end, "while no one factor is dispositive, it is clear, based on the parties' entire relationship, that a reasonable fact finder could only conclude that" McDaniel was not an employee of either PBH or PPMC. Alberty-Vélez, 361 F.2d at 10-11. McDaniel thus cannot sue them under Title VII, and Defendants are entitled to summary judgment on Counts I-III.

**C. Counts IV-VI: FEPA Claims**

On to McDaniel's FEPA claims, which mirror her Title VII claims. This Court has described FEPA as "the Rhode Island Analog to Title VII." Wyss v. Gen. Dynamics Corp., 24 F. Supp. 2d 202, 210 (D.R.I. 1998). The statute bans employers in Rhode Island from discriminating against an employee, because of her sex, "with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment." R.I. Gen. Laws § 28-5-7(1). Like Title VII, FEPA also has an anti-retaliation provision. Id. § 28-5-7(5).

PBH and PPMC again say McDaniel was not their employee, and

that they were not her employers, as defined by FEPA. Defs.' Mem 9. Thus, they argue that she cannot sue under FEPA either. Id. at 10.

FEPA itself does not define "employee," other than to state that the term "does not include any individual employed by his or her parents, spouse, or child, or in the domestic service of any person." R.I. Gen. Laws § 28-5-6(8). And the State Supreme Court has not clarified the definition through caselaw. Defendants argue that FEPA should follow Title VII on this issue. Id. at 10. McDaniel says nothing. See Resp. 20-21.

The Court sees no reason to depart from Title VII's standard. The Rhode Island Supreme Court looks to federal precedent interpreting Title VII to interpret FEPA. Decamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 21 (R.I. 2005) (citing Newport Shipyard, Inc. v. R.I. Comm'n for Hum. Rts., 484 A.2d 893, 898 (R.I. 1984)). And the Title VII standard closely tracks the standard long used by Rhode Island courts in determining employment status for the purpose of workers' compensation benefits. See Selby v. Baird, 240 A.3d 243, 247-248 (R.I. 2020) (first citing Deus v. S.S. Peter & Paul Church, 820 A.2d 974 (R.I. 2003); and then citing Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994)). The Court therefore adopts that standard to decide McDaniel's status under FEPA.

Accordingly, because McDaniel was not an employee under Title

VII, she was not an employee under FEPA.  As a result, she cannot bring her FEPA sex discrimination claims against PBH or PPMC, and they are entitled to summary judgment on Counts IV and V.

But this does not necessarily resolve Count VI, McDaniel's FEPA retaliation claim, because FEPA's anti-retaliation provision sweeps more broadly than Title VII's.  The provision states that "[i]t shall be an unlawful employment practice"

> [f]or any employer . . . to discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter, or because he or she has made a charge, testified, or assisted in any manner in any investigation, proceeding, or hearing under this chapter.

R.I. Gen. Laws § 28-5-7(5) (emphasis added).

This raises the question: Can an individual who is not a covered employee bring a retaliation charge against an employer?

Neither party presents argument on this question, so the Court lacks briefing to use as a guide.  And after reviewing the case law, it appears that neither the State Supreme Court nor any other federal court interpreting this statute, or a similar one, has addressed the question.  To paraphrase the Indigo Girls, it looks like there is more than one answer to this question, pointing in a crooked line.  See Indigo Girls, Closer to Fine, on Indigo Girls (Epic Records 1989); See also, e.g., R.I. Gen. Laws § 28-5-38 (directing that FEPA's text shall be construed liberally); but see, e.g., Mancini v. City of Providence, 155 A.3d 159, 161-67

18

(R.I. 2017) (finding FEPA's use of the phrase "any person" in § 28-5-7(6) to be ambiguous and then rejecting a literal interpretation).

The Court, while "not bound by the parties' collective failure to discuss applicable law, [is] generally reluctant to venture beyond the ambit of the parties' arguments to decide an issue without full briefing." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 34 (1st Cir. 2020) (citing Whyte v. Conn. Mut. Life Ins., 818 F.2d 1005, 1011 n.20 (1st Cir. 1987)). That reluctance increases "where, as here, the underlying legal issue is not clear cut." Id.

Because of this open question, the Court will defer on the motion for summary judgment as to Count VI for now. See id.; Fed. R. Civ. P. 56(a). If Defendants wish to pursue summary judgment on this Count, then they shall file supplemental briefing on this question within two weeks of the date of this Order. If Defendants file supplemental briefing, then McDaniel shall have two weeks from the date of Defendants' filing to respond.[1]

* * *

In sum, the Court grants summary judgment to PBH and PPMC on

---

[1] The Court recognizes that if it finds that McDaniel, despite having been an independent contractor, can sue Defendants under FEPA, then it must still consider Defendants' argument that they are not covered "employers." Defs.' Mem. 6-9. As to that consideration, McDaniel urges the Court should apply the "integrated employer" doctrine. Resp. 13-19; see Torres-Negrón v.

Counts IV and V and defers judgment on Count VI, pending further briefing from the parties.[2]

**D. Counts VII, X, and XI: Breach of Contract and RIPWA Claims**

The Court next considers Count VII, which it groups together with Counts X and XI.  Count VII alleges that Mihailides breached an agreement to pay McDaniel a "salary" of $6,000 per month to work at the Resort.  Operative Compl. ¶¶ 267-273.  Count X repeats the same allegation, except under RIPWA and against all Defendants. Id. ¶¶ 310-317.  And Count XI, also under RIPWA, charges all Defendants with misclassifying her as an independent contractor rather than as an employee.  Id. ¶¶ 318-320.

As an initial matter, although McDaniel styled Count VII as a breach of contract, it arises from Mihailides's alleged failure to pay her "salary."  Id. ¶ 268.  "Accordingly, [the] claim is one for failure to pay wages in violation of [RIPWA]."  Nissensohn v. CharterCARE Home Health Servs., 306 A.3d 1026, 1037 (R.I. 2024). As a result, the rules governing RIPWA apply to this nominal breach

---

Merck & Co., 488 F.3d 34, 40 (1st Cir. 2007).  This presents the additional question of whether the "integrated employer" doctrine, relevant to Title VII actions, also applies to FEPA claims.  The parties shall also provide briefing on this question.

    [2] Regarding Count VI, Defendants also argue that McDaniel failed to exhaust her administrative remedies for her retaliation claim because her Amended Charge of Discrimination was improperly notarized.  Defs.' Mem. 48 n.9.  This argument fails for lack of supporting evidence and lack of argument as to why that allegedly improper notarization entitles Defendants to judgment as a matter of law.

of contract claim.  Id. (citing Bisbano v. Strine Printing Co., 135 A.3d 1202, 1209-10 (R.I. 2016)).

Under RIPWA, an employee or former employee may sue an employer that "fail[ed] to pay wages and/or benefits or misclassifi[ed]" her as an independent contractor rather than as an employee.  R.I. Gen. Laws § 28-14-19.2(a).  The statute defines an employee as "any person suffered or permitted to work by an employer, except that independent contractors or subcontractors shall not be considered employees."  Id. § 28-14-1(4).

Defendants once again argue that McDaniel was not an employee, and that they were not her employers.  Defs.' Mem. 5-6, 9, 49-50. Thus, they move the Court to grant them summary judgment on Counts VII, X, and XI.  Id.  McDaniel does not respond with any RIPWA-specific argument.  See generally Resp.

The Court has found that McDaniel was not a covered employee under Title VII and FEPA.  Like FEPA, RIPWA does not precisely define "employee."  But unlike FEPA, RIPWA explicitly excludes independent contractors.  The Court does not see, nor does McDaniel give, any reason to depart from its previous Title VII and FEPA finding that McDaniel was an independent contractor and not an employee.  Accordingly, the Court concludes that McDaniel was also not an employee as defined by RIPWA, and that Defendants are

entitled to summary judgment on Counts VII, X, and XI.

**E. Counts VIII and IX: RICRA Claims**

The Court now turns to Counts VIII and IX, McDaniel's RICRA claims against all Defendants.  In Count VIII, McDaniel asserts her hostile work environment claim.  Operative Compl. ¶¶ 274-294.  In Count IX, she brings her quid pro quo sexual harassment claim.  Operative Compl. ¶¶ 295-309.

RICRA is modeled after a provision of the Civil Rights Act of 1866, 42 U.S.C. § 1981.  Wyss, 24 F. Supp. 2d at 210.  It provides "broad protection against all forms of discrimination in all phases of employment" to "[a]ll persons within the state."  Horn v. S. Union Co., 927 A.2d 292, 293 (R.I. 2007) (quoting Ward v. City of Pawtucket Police Dept., 639 A.2d 1379, 1381 (R.I. 1994)); R.I. Gen. Laws § 42-112-1.  It complements FEPA, and plaintiffs often assert claims for the same alleged harm under both laws.  Horn, 927 A.2d at 293.  But despite their similarities, "the two statutes stand as distinct and independent avenues of redress, each with a related, yet differing, focus."  Id. at 297 (Suttell, J., dissenting).

Confronted by this broad statute, Defendants pivot and say that McDaniel's sexual harassment claims occurred in March 2019 (when she first noted the alleged harassment), or no later than April 2020 (when she began documenting the claimed harassment).  Defs.' Mem. 51-53.  Thus, they reason that her claims are barred

by RICRA's statute of limitations, which requires potential claimants to bring their claims within three years of "the occurrence of the alleged violation."  Id.; see R.I. Gen. Laws § 42-112-2.

Defendant's argument fails on both claims.  It disregards the basic framework for how to determine when an alleged workplace harassment claim "occurs."

The United States Supreme Court established that framework in Morgan, 536 U.S. 110-22.  Like McDaniel, the claimant in Morgan brought Title VII claims for acts of discrimination and retaliation, and a claim for hostile work environment.  Id. at 104.  The question presented for decision there was the very question at issue here.  Id. at 105, 110.

To answer, the Court first distinguished claims for discrete acts of discrimination and retaliation from claims for hostile work environments.  Id. at 105.  It then held that each discrete alleged act of discrimination or retaliation "occurs" on the day that it takes place, and "constitutes a separate actionable unlawful employment practice" subject to the applicable limitations period.  Id. at 114, 122 (quotation marks omitted).  The Court next held that an alleged hostile work environment – "different in kind from discrete acts," id. at 115 – "occurs" over a continuing period and thus "will not be time barred so long as all acts which constitute the claim are part of the same unlawful

23

employment practice and at least one act falls within the time period." Id. at 122.

The Supreme Court's framework applied to claims brought under Title VII. Id. Although the Rhode Island Supreme Court has not explicitly applied this framework to analogous claims brought under RICRA, the Court believes that it would do so if presented with the question. It already uses Title VII's "methodological approach in evaluating the merits of employment discrimination claims" brought under RICRA. Horn, 927 A.2d at 294 n.7 (citing Decamp, 875 A.2d at 23). And it relies on Title VII precedent when questions of RICRA interpretation arise. Decamp, 875 A.2d at 21 (citing Newport Shipyard, 484 A.2d at 898). Accordingly, the Court will assess McDaniel's RICRA claims using Title VII's analytical framework, but with RICRA's three-year limitations period.

The Court first applies this framework to Count VIII, McDaniel's hostile work environment claim. Operative Compl. ¶ 274-94. The Court's "task is to determine whether the acts about which [McDaniel] complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Morgan, 536 U.S. at 120. Here, McDaniel alleges that the claim arises from discriminatory acts that were of the same nature and that continued throughout the business relationship. Operative Compl. ¶¶ 274-294. She alleges

that specific acts occurred in May, June, August, September, October, and December of 2021. Id. ¶¶ 45-80. And she filed this lawsuit in July 2023. Id. ¶ 175. Thus, the Court finds that the alleged hostile work environment claim occurred within RICRA's three-year limitations period. As such, Defendants are not entitled to summary judgment on Count VIII.

The Court now turns to Count IX, McDaniel's quid pro quo sexual harassment claim. Id. ¶¶ 295-309. McDaniel does not distinguish between discrete incidents. Id. Rather, she only generally refers to conduct that occurred on "several occasions." Id. ¶¶ 300-301. Yet in reviewing McDaniel's Operative Complaint, the Court discerns discrete incidents of alleged quid pro quo sexual harassment in September, October, and December of 2021. Id. ¶¶ 64-66, 71-72, 78-79. These alleged acts each occurred within RICRA's limitations period. So Defendants are also not entitled to summary judgment on Count IX.

\* \* \*

All in all, Defendants have not shown that McDaniel's RICRA claims in either Count VIII or IX occurred outside the relevant statute of limitations period. Accordingly, they are not entitled to summary judgment on Count VIII or IX. But the Court notes that McDaniel may not recover for any alleged discrete act of quid pro quo harassment that may have occurred outside the limitations

period.  See Morgan, 536 U.S. at 115.

**F. Count XII: R.I. Defamation Claim**

The Court closes with McDaniel's defamation claim against Mihailides.  Operative Compl. ¶¶ 323-330.  She alleges that he is liable for telling others that the two were in a sexual relationship, and that she was his mistress.  Id.  Defendants respond by saying McDaniel's defamation claim occurred no later than December 19, 2021, so the claims are barred by the statute of limitations.  Defs.' Mem. 53-54.

Because McDaniel says Mihailides defamed her when he "uttered" false statements, her claim is one for slander.  See Francis v. Gallo, 59 A.3d 69, 72 (R.I. 2013).  In Rhode Island, the statute of limitations for claims of slander is one year.  R.I. Gen. Laws § 9-1-14(a).

Defendants' asserted date follows from the fact that McDaniel has not seen Mihailides or heard him say anything since December 19, 2021, and that she does not know whether he has made any allegedly slanderous statements to others since then.  DSUF ¶¶ 461-465.  McDaniel makes no counterargument.  See generally Resp.; Reply Mem. Supp. Defs.' Mot. Partial Summ. J. 8, ECF No. 65 (noting that McDaniel does not "argue against the entry of summary judgment in favor of Defendants on her defamation claim").

From this, the Court finds that McDaniel's claim for slander occurred no later than December 19, 2021.  Because she did not

26

bring this lawsuit until July 2023, her claim falls outside the relevant statute of limitations. So Mihailides is entitled to summary judgment on Count XII.

## IV. CONCLUSION

For these reasons, the Court concludes that:

- PBH and PPMC are entitled to summary judgment on Counts I-V.

- PBH and PPMC are not entitled to summary judgment on Count VI at this time, but rather are directed to file the supplemental briefing as described above in Part II(C).

- All Defendants are entitled to summary judgment on Count VII.

- No Defendant is entitled to summary judgment on Counts VIII and IX.

- All Defendants are entitled to summary judgment on Counts X and XI.

- Mihailides is entitled to summary judgment on Count XII.

Count XIII was not subject to Defendants' Motion.

In accordance with these conclusions, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Partial Summary

Judgment, ECF No. 47.


IT IS SO ORDERED.

_____
William E. Smith
Senior District Judge
Date: April 17, 2025