UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
ALISON MCDANIEL,                    )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )   C.A. No. 23-292 WES
                                    )
PRESERVE PROPERTY MANAGEMENT        )
COMPANY, LLC, et al.,               )
                                    )
         Defendants.                )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Senior District Judge.

Before the Court is Defendants' Motion for Partial Summary Judgment ("Defendants' Motion"), Dkt. No. 47. The Court has already resolved most of Defendants' Motion, see Mem. & Order (Apr. 17, 2025), Dkt. No. 67; the sole issue remaining is Defendants' challenge to Count VI of Plaintiff Alison McDaniel's Operative Complaint, Dkt. No. 43. For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART the remaining portion of Defendants' Motion.

**I. BACKGROUND**

The Court's initial ruling on Defendants' Motion detailed the background facts, procedural history, and legal standards relevant to this summary judgment decision, and they are incorporated by reference here. In that ruling, the Court deferred adjudication

of Defendants' Motion as to its challenge to Count VI of McDaniel's Operative Complaint, which charges Defendants with unlawful retaliation under Rhode Island's Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-7.  The Court elected to defer its decision because the parties did not brief a threshold issue of statutory interpretation: whether independent contractors, like McDaniel, are protected by FEPA's anti-retaliation provision.

The Court directed the parties to file supplemental briefing on this issue.  Mem. & Order 19.  The matter has been briefed by the parties, and by the Rhode Island Commission for Human Rights ("RICHR") – the agency responsible for administering FEPA – as amicus curiae.  See generally Defs.' Suppl. Mem. Supp. Mot. Partial Summ. J. ("Defs.' Suppl. Mem."), Dkt. No. 68; Pl.'s Mem. L. Opp'n Defs.' Suppl. Mem., Dkt. No. 73; Br. Amicus Curiae R.I. Comm'n Hum. Rts. ("Br. Amicus Curiae"), Dkt. No. 74; Defs.' Opp'n Br. Amicus Curiae, Dkt. No. 76.

**II. DISCUSSION**

The Court concludes that (1) FEPA's anti-retaliation provision protects independent contractors, (2) Defendant Preserve at Boulder Hills ("PBH") is not a covered employer under FEPA, and (3) Defendant Preserve Property Management Company ("PPMC") is not entitled to summary judgment on McDaniel's FEPA retaliation claim for any of its identified reasons.  Accordingly, PBH is entitled

2

to summary judgment on Count VI, but PPMC is not.

### A. FEPA's Anti-retaliation Provision Protects Independent Contractors

FEPA provides in relevant part:

It shall be an unlawful employment practice . . . [f]or any employer or employment agency, labor organization, placement service, training school or center, or any other employee referring source to discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter, or because he or she has made a charge, testified, or assisted in any manner in any investigation, proceeding, or hearing under this chapter.

R.I. Gen. Laws § 28-5-7(5).

Defendants argue that the Rhode Island Supreme Court would "unequivocally" interpret this language to mean "that with respect to employers, FEPA extends protection only to prospective employees, applicants for employment and employees and not to an independent contractor." Defs.' Suppl. Mem. 3 (emphasis in original). The Court disagrees.

Under Rhode Island law, "[i]t is a well-established principle of statutory interpretation that when the language of a statute is clear and unambiguous, th[e] Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Olamuyiwa v. Zebra Atlantek, Inc., 45 A.3d 527, 534 (R.I. 2012) (citation modified) (collecting cases). And when the Court "examine[s] an unambiguous statute, there is no room for statutory construction and [the Court] must apply the

3

statute as written." Id. (citation modified) (collecting cases).

Here, the text is clear and unambiguous. The identified covered entities are prohibited from discriminating against "any individual," so long as that individual has engaged in protected conduct. R.I. Gen. Laws § 28-5-7(5). By clearly establishing the same protection for every "individual," without regard to that individual's employment status, the Rhode Island General Assembly left no room for a narrower judicial interpretation. See Olamuyiwa, 45 A.3d at 536 (collecting cases supporting the proposition that the Court cannot "contort the language of an unambiguous statute").

The statutory context also proves that the General Assembly meant what it said when it wrote the words "any individual." Throughout the entirety of Section 28-5-7, the General Assembly used specific terms to refer to discrete categories of individuals protected by a given provision. See, e.g., § 28-5-7(1)-(3) (identifying the relevant protected party as an "applicant for employment," an "employee," a "prospective employee," an "applicant," a "member," or a "prospective member"). In contrast, the legislature used the catch-all phrase "any individual" multiple times throughout the statute, clearly in an attempt not to distinguish among categories of individuals. See § 28-5-7(2)(i), (4), (5). The Court must account for this textual difference, because "when a document uses a term in one place and

4

a materially different term in another, 'the presumption is that the different term denotes a different idea.'" Stanley v. City of Sanford, 145 S. Ct. 2058, 2064 (2025) (quoting Sw. Airlines Co. v. Saxon, 596 U.S. 450, 458 (2022)); see also State v. Clark, 974 A.2d 558, 571 (R.I. 2009) ("The legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the court will give effect to every word, clause, or sentence, whenever possible.") (citation modified).

Finally, recent Title VII precedent also supports the Court's conclusion. In Ames v. Ohio Department of Youth Services, the U.S. Supreme Court confronted lower court interpretations of the phrase "any individual" which worked to apply different legal standards for some individuals but not others. 145 S. Ct. 1540, 1546 (2025). The Court unanimously reversed that interpretation, holding that "[b]y establishing the same protections for every 'individual' – without regard to that individual's membership in a . . . group – Congress left no room for courts to impose special requirements . . . ." Id. Although that case dealt with Title VII's anti-discrimination provision and a different legal question, the principle remains the same.

Defendants' counterargument fails to persuade the Court to reach a different conclusion. Defendants argue that the Court should interpret the term "individual" differently depending on the type of covered entity being sued. When the entity sued is an

5

employer, they contend that "any individual" means strictly "employee," and say that their position aligns with legislative intent because "[e]xtending anti-retaliation protections to independent contractors would create an anomalous framework wherein individuals who possess no direct claims or substantive rights under FEPA would nonetheless be entitled to derivative procedural protections designed specifically to safeguard those non-existent rights." Defs.' Suppl. Mem. 9. But "[t]he best evidence of [legislative] intent can be found in the plain language used in the statute." Martone v. Johnston Sch. Comm., 824 A.2d 426, 431 (R.I. 2003). And Defendants' argument fails on its own terms, because as noted by RICHR, good reasons support this policy choice. Specifically, some complainants or witnesses might be a broad range of non-employee individuals (e.g., customers, site visitors, postal delivery workers); broad protection from retaliation encourages all parties with information to report unlawful behavior and assist with RICHR investigations. See Br. Amicus Curiae 9-10.

### B. PBH is not a Covered Employer under FEPA

The Court next turns to another threshold issue raised by Defendants concerning Count VI. That is, Defendants argue that PBH is not a "covered employer" under FEPA and therefore cannot be held statutorily liable for retaliation.

FEPA defines an "employer" as an entity that "employs four

6

(4) or more individuals," or "any person acting in the interest of an employer directly or indirectly."  R.I. Gen. Laws § 28-5-6(9)(i).  And as Defendants point out, "it is undisputed that PBH has never had any employees."  Defs.' Suppl. Mem. 11.

Previously, Plaintiff asked the Court to treat PBH and PPMC as an "integrated employer," such that both would be subject to liability under FEPA.  Pl.'s Mem. L. Opp'n Defs.' Mot. 13-19, Dkt. No. 58-1.  Under this Title VII doctrine, "two nominally separate companies may be so interrelated that they constitute a single employer subject to liability."  Torres-Negron v. Merck & Co., 488 F.3d 34, 41 (1st Cir. 2007) (citing NLRB v. Browning-Ferris Indus., Inc., 691 F.2d 1117, 1122 (3d Cir. 1982)).  The doctrine "may apply in cases where 'liability is sought to be imposed on the legal employer by arguing that another entity is sufficiently related such that its actions . . . can be attributable to the legal employer.'"  Id. at 41 (quoting Engelhardt v. S.P. Richards Co., 472 F.3d 1, 4 n.2 (1st Cir. 2006)).

The Court, in its initial decision, voiced skepticism about "whether the 'integrated employer' doctrine, relevant to Title VII actions, also applies to FEPA claims."  Mem. & Order 20 n.1.  For that reason, the Court also directed the parties to provide briefing on this issue.  Id.

Rather than provide additional briefing, McDaniel argued that liability is not limited to "covered employers" because "any

7

individual" may bring a retaliation claim. Pl.'s Mem. L. Opp'n Defs.' Suppl. Mem. 10. This reading has no textual support. Section 28-5-7(5) explicitly confines liability to "any employer or employment agency, labor organization, placement service, training school or center, or any other employee referring source."

Because McDaniel's new liability argument fails, and because her previous argument as to the applicability of the integrated employer doctrine has no support in Rhode Island case law, the Court finds that PBH is not an "employer" within the meaning of FEPA. Thus, PBH is entitled to summary judgment on Count VI.

### C. PPMC's Arguments Fail

Having resolved the above threshold matters, the Court proceeds to Defendant PPMC's merits-based arguments against Count VI. These arguments fail at this stage.

To succeed on this retaliation claim, McDaniel must show that "(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." Stratton v. Bentley Univ., 113 F.4th 25, 41-42 (1st Cir. 2024) (quoting Dixon v. Int'l Bhd. Of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007)). McDaniel's claim is premised on PPMC having filed a criminal report against her in December 2023, following her filing a charge of discrimination and this lawsuit. Operative Compl. ¶¶ 257-266.

PPMC attacks McDaniel's claim on two grounds. First, it says

the claim fails because McDaniel, as a matter of law, did not engage in a protected activity. Defs.' Suppl. Mem. 4-5. This is so, PPMC contends, because (1) FEPA's anti-discrimination provision only prohibits employers from discriminating against employees, (2) McDaniel was not an employee, and so (3) McDaniel's charge of discrimination and lawsuit "did not oppose any practice that was forbidden by FEPA." Id. at 5. This argument falls short. For one thing, McDaniel's retaliation claim is not tied to the success or failure of her claim for unlawful discrimination. See Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (noting that in a retaliation claim under Title VII, a plaintiff alleging participation in a protected activity "need not prove that the conditions against which [s]he protested actually amounted to a violation of Title VII" (alteration in original) (quoting Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999))). And regardless, there is no dispute that McDaniel "has made a charge" under FEPA and participated in related investigations and proceedings. See R.I. Gen. Laws § 28-5-7(5).

Second, PPMC argues that McDaniel's retaliation claim fails because she cannot show that she suffered a materially adverse action. Defs.' Suppl. Mem. 5-6. A materially adverse action is one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation

9

omitted). PPMC points to language in McDaniel's Operative Complaint to argue that her retaliation claim was explicitly tied to her having been Defendants' employee, and thus it is no longer viable because the Court has found that she was an independent contractor. Defs.' Suppl. Mem. 5-6 (citing Operative Compl. ¶ 43). But the Court has not previously read the Operative Complaint to be so limited and declines to do so now. See Mem. & Order 18 (Mar. 11, 2024), Dkt. No. 42 (finding that McDaniel stated a plausible claim for retaliation and making no reference to her employment status). And irrespective of how McDaniel styled her Operative Complaint, her claim for relief is judged against the Burlington "reasonable worker" standard.

**IV. CONCLUSION**

For the reasons explained above, the Court concludes that PBH is entitled to summary judgment on Count VI, but PPMC is not. The Court thus GRANTS IN PART and DENIES IN PART the remaining portion of Defendants' Motion for Partial Summary Judgment, Dkt. No. 47.

IT IS SO ORDERED.

/s/ Wesmith

William E. Smith
Senior District Judge
Date: July 22, 2025