UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALISON MCDANIEL,                           :
                                           :
            Plaintiff,                      :
                                           :
     v.                                     :   C.A. No.: 1:23-CV-00292-WES-
                                           :                LDA
PRESERVE PROPERTY MANAGEMENT               :
COMPANY, LLC, THE PRESERVE AT BOULDER      :
HILLS, LLC and PAUL MIHAILIDES,            :
                                           :
            Defendants.                     :

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local R. 56, Defendants The Preserve at Boulder Hills,

LLC, Preserve Property Management Company, LLC and Paul Mihailides (collectively,

"Defendants") hereby move for summary judgment on Counts VI – IX and XIII of Plaintiff Alison

McDaniel's Second Amended Verified Complaint, ECF No. 43.[1]

The grounds for Defendants' motion are set forth in the accompanying memorandum of

law.

---

[1] Count VI (Violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7(5), Retaliation); Count VII: Breach of Contract; Count VIII: Violation of the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws 42-112-1 et seq., Discrimination Based on Sex, Hostile Work Environment - Sexual Harassment; Count IX: Violation of the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws 42-112-1 et seq., Discrimination Based on Sex, Quid Pro Quo Sexual Harassment and Count XIII: Battery.

DEFENDANT/COUNTERCLAIM PLAINTIFFS
THE PRESERVE AT BOULDER HILLS, LLC
AND PAUL MIHAILIDES AND DEFENDANT
PRESERVE PROPERTY MANAGEMENT
COMPANY, LLC,
By their Attorneys:


/s/ Nicole J. Benjamin
John A. Tarantino (#2586)
jtarantino@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI  02903-1345
Tel:  401-274-7200
Fax:  401-351-4607
November 5 2025


## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, I electronically served and filed *via the Electronic Court Filing (CM/ECF) system* a true copy of the within pleading on all counsel of record and it is available for viewing and downloading from the ECF system.

/s/ Nicole Benjamin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALISON MCDANIEL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: 1:23-CV-00292-WES-LDA |
| | : | |
| PRESERVE PROPERTY MANAGEMENT COMPANY, LLC, THE PRESERVE AT BOULDER HILLS, LLC and PAUL MIHAILIDES, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMEN</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 5

I.    Standard of Review ...................................................................................... 5

II.   Summary judgment should enter in favor of PBH and PPMC on Count VII, Breach of Contract. ....................................................................................................... 6

   A.  At the summary judgment stage, Plaintiff's Second Amended Verified Complaint cannot be read as alleging a breach of any contract for independent contractor services. 8

   B.  Plaintiff is conclusively bound by her judicial admissions that she was an employee and not an independent contractor. ...................................................................... 10

   C.  Plaintiff's factual allegations in her verified pleadings are evidentiary admissions that she had no contract to provide independent contractor services. ................................... 15

   D.   Plaintiff cannot contradict her prior deposition testimony on summary judgment. ..... 16

   E.   Plaintiff cannot establish the essential elements of an express contract. ..................... 18

   F.   Plaintiff may not proceed on an implied-in-fact contract theory. ................................ 24

III.  Without a contractual relationship between Plaintiff and Defendants, summary judgment must enter in favor of Defendants on Plaintiff's RICRA claims. .................................... 26

IV.  Summary judgment should enter in favor of PPMC on Count VI of Plaintiff's Second Amended Verified Complaint. ........................................................................... 31

   A.  The undisputed material facts demonstrate that PPMC is immune from liability for retaliation under the Noerr-Pennington doctrine. ........................................................ 32

   B.  Plaintiff has neither plausibly pled, nor carried her evidentiary burden of demonstrating an exception to Noerr-Pennington immunity applies. ................................................... 35

   C.  Even if the incident report was objectively baseless, the undisputed material facts demonstrate Plaintiff suffered no materially adverse action. ........................................... 37

V.   Summary judgment should enter in favor of Mr. Mihailides on Count XIII, battery. ....... 41

A.    Plaintiff cannot make out a claim for battery based on attempted touching............ 45

B.    This Court cannot credit Plaintiff's deposition testimony where it is inconsistent with the documentary evidence and Plaintiff's statements under oath both before and after her deposition............................................................................................................... 46

C.    Dismissal of Plaintiff's battery claim is warranted to remedy a fraud on the court. .... 48

D.    Plaintiff cannot recover any economic damages on Count XIII................................. 49

E.    Plaintiff cannot recover punitive damages on Count XIII. ........................................... 50

CONCLUSION ...................................................................................................................... 52

# TABLE OF AUTHORITIES

**CASES**

*Acuna v. Covenant Transp., Inc.*,
No. SA-20-CV-01102-XR, 2022 U.S. Dist. LEXIS 97413 (W.D. Tex. May 4, 2022) .... 12

*Alifax Holding SPA v. Alcor Sci. Inc.*,
No. CV 14-440 WES, 2019 WL 13091790 (D.R.I. Mar. 26, 2019) ................................ 32

*Andreozzi v. Synrgy Health & Fitness, LLC*,
No. 17-cv-00129, 2020 WL 5634348 (D.R.I. Sept. 21, 2020) ...................................... 7, 9

*Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989) ................................................................................. 48, 49

*Bailey v. West*,
249 A.2d 414 (R.I. 1969) ............................................................................................... 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 36

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985) .......................................................................................... 10

*Berry v. Stevinson Chevrolet*,
74 F.3d 980 (10th Cir. 1996) ......................................................................................... 38

*Bill Johnson's Restaurants, Inc.  v. NLRB*,
461 U.S. 731 (1983) ....................................................................................................... 33

*Bird v. Regents of N.M. State Univ.*,
No. CIV 08-851 WJ/RHS, 2013 WL 11324809 (D.N.M. July 2, 2013) ........................ 38

*Bourque v. Stop & Shop Cos., Inc.*,
814 A.2d 320 (R.I. 2003) (per curiam) ......................................................................... 50

*Cabán Hernández v. Philip Morris USA, Inc.*,
486 F.3d 1 (1st Cir. 2007) ................................................................................................ 6

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) .................................................................................................. 32, 33

*Colantuoni v. Alfred Calcagni & Sons, Inc.*,
44 F.3d 1 (1st Cir. 1994) ................................................................................................ 16

iii

*Cote v. Aiello,*
    148 A.3d 537 (R.I. 2016) ..................................................................... 24, 25, 26

*Cove Rd. Dev. v. West Cranston Indus. Park Assocs.,*
    674 A.2d 1234 (R.I. 1996) ..................................................................... 33

*Daury v. Smith,*
    842 F.2d 9 (1st Cir. 1988) ..................................................................... 9

*Davidson-Nadwodny v. Wal-Mart Assocs.,*
    No. CCB-07-2595, 2010 U.S. Dist. LEXIS 29165 (D. Md. Mar. 26, 2010) ................... 39

*DeAngelis v. DeAngelis,*
    923 A.2d 1274 (R.I. 2007) ..................................................................... 19

*Del Sesto v. Prospect CharterCARE, LLC,*
    No. 18-328 WES, 2022 U.S. Dist. LEXIS 164724 (D.R.I. Sep. 13, 2022) ..................... 11

*Diamond v. Triller Grp., Inc.,*
    2025 U.S. Dist. LEXIS 146959 (S.D.N.Y. July 31, 2025) ................................. 30

*Dick v. Phone Directories Co.,*
    397 F.3d 1256 (10th Cir. 2005) ..................................................... 38, 39, 40

*Doe v. Brown Univ.,*
    253 A.3d 389 (R.I. 2021) ..................................................................... 26

*Doe v. Brown Univ.,*
    327 F. Supp. 3d 397 (D.R.I. 2018) ..................................................... 28

*Domino's Pizza, Inc. v. McDonald,*
    546 U.S. 470 (2006) ..................................................................... 28

*Dunbar v. Providence Coll.,*
    No. 24-251 WES, 2025 U.S. Dist. LEXIS 114086 (D.R.I. June 16, 2025) ..................... 37

*Fenwick v. Oberman,*
    847 A.2d 852 (R.I. 2004) ..................................................................... 50, 51

*Forro Precision, Inc. v. Int'l Bus. Machs. Corp.,*
    673 F.2d 1045 (9th Cir. 1982) ..................................................................... 34

*Francois v. Putnam Invs., LLC,*
    34 F. App'x 395 (1st Cir. 2002) ..................................................................... 6, 15

iv

*Fredrick v. Advanced Strategic Partners, Inc*.,
   No. 4:23-CV-01525, 2025 U.S. Dist. LEXIS 171802 (S.D. Tex. Mar. 26, 2025)........... 20

*Garrett v. Tandy Corp.*,
   295 F.3d 94 (1st Cir. 2002)......................................................................................... 27

*Gorman v. St. Raphael Academy*,
   853 A.2d 28 (R.I. 2004)............................................................................................... 18

*Green v. Brennan*,
   578 U.S. 547 (2016)..................................................................................................... 30

*Grossman v. Martin*,
   566 F. Supp. 3d 136 (D.R.I. 2021)................................................................................ 5

*Hammond v. Kmart Corp.*,
   733 F.3d 360 (1st Cir. 2013)................................................................................... 27, 28

*Hometown Properties, Inc. v. Fleming*,
   680 A.2d 56 (R.I. 1996)............................................................................................... 33

*Horn v. S. Union Co.*,
   927 A.2d 292 (R.I. 2007).............................................................................................. 28

*In re Asbestos Prods. Liab. Litig*.,
   578 F. App'x 160 (3d Cir. 2014) ................................................................................. 46

*Iowa Mut. Ins. Co. v. Hennings*,
   No. 05-3073, 2006 U.S. Dist. LEXIS 74640 (C.D. Ill. Oct. 12, 2006)............................ 12

*J. Koury Steel Erectors, Inc. of Mass. v. San-Vel Concrete Corp*.,
   387 A.2d 694 (R.I. 1978).............................................................................................. 19

*J.L. v. William M. Davies Career & Tech. High Sch*.,
   No. 24-cv-543-MRD-PAS, 2025 U.S. Dist. LEXIS 193017 (D.R.I. Sep. 30, 2025) . 28, 29

*Jeffreys v. City of N.Y.*,
   426 F.3d 549 (2d Cir. 2005)..................................................................................... 46, 47

*Johnson v. United Airlines, Inc*.,
   No. 12-cv-02730-VC, 2016 U.S. Dist. LEXIS 88349 (N.D. Cal. July 6, 2016)............... 33

*JT IP Holding, LLC v. Florence*,
    No. 1:20-cv-10433-IT, 2024 U.S. Dist. LEXIS 165158 (D. Mass. Sep. 12, 2024).......... 15

*Keller v. United States*,
    58 F.3d 1194 (7th Cir. 1995) ....................................................... 11

*Lamoureux v. Burrillville Racing Assn.*,
    161 A.2d 213 (R.I. 1960).............................................................. 18

*Lesane v. Hawaiian Airlines, Inc.*,
    No. 19-00179 JAO-KJM, 2020 U.S. Dist. LEXIS 38981 (D. Haw. Mar. 6, 2020).......... 33

*Lima v. Holder*,
    758 F.3d 72 (1st Cir. 2014)........................................................... 11

*Lincoln v. Maketa*,
    880 F.3d 533 (10th Cir. 2018) ....................................................... 38

*Liu v. Striuli*,
    36 F. Supp. 2d 452 (D.R.I. 1999) .................................................... 28

*Lyons v. Wall*,
    No. 08-498-M, 2012 U.S. Dist. LEXIS 121409 (D.R.I. Aug. 24, 2012)................... 15

*Mark v. Congregation Mishkon Tefiloh*,
    745 A.2d 777 (R.I. 2000)............................................................. 50

*Marshall Contractors, Inc. v. Brown Univ.*,
    692 A.2d 665 (R.I. 1997)............................................................. 24

*Martley v. Basehor*,
    537 F. Supp. 3d 1260 (D. Kan. 2021) ................................................ 39

*McCarthy v. Nw. Airlines, Inc.*,
    56 F.3d 313 (1st Cir. 1995)............................................................ 6

*McKay Consulting Inc. v. Rockingham Mem. Hosp.*,
    452 F. App'x 331 (4th Cir. 2011) ............................................ 20, 21, 23

*McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger*,
    280 F.3d 26 (1st Cir. 2002)........................................................... 15

*Melton v. Tippecanoe Cnty.*,
    838 F.3d 814 (7th Cir. 2016) ........................................................ 46

*Mesnick v. Gen. Elec. Co.*,
    950 F.2d 816 (1st Cir. 1991) ......................................................................... 6

*Mobile Pixels, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
    No. 23-cv-12587-ADB, 2024 U.S. Dist. LEXIS 126780 (D. Mass. July 18, 2024) ......... 35

*Moncion v. Lyons*,
    187 N.Y.S.3d 581 (N.Y. Civ. Ct. 2023) ........................................................ 50

*Morales v. A.C. Orssleff's EFTF*,
    246 F.3d 32 (1st Cir. 2001) ....................................................................... 16

*Multi-Juice, S.A. v. Snapple Bev. Corp.*,
    No. 2 Civ. 4635, 2003 U.S. Dist. LEXIS 7040 (S.D.N.Y. Apr. 25, 2003) ...................... 30

*Navarro-Ayala v. Hernandez-Colon*,
    951 F.2d 1325 (1st Cir. 1991) ................................................................... 19

*Nazir v. United Air Lines*,
    No. CV 09-01819 CRB, 2009 U.S. Dist. LEXIS 81901 (N.D. Cal. Sept. 9, 2009) .......... 33

*NM LLC v. Keller*,
    No. 3:24-cv-05181-TMC, 2024 U.S. Dist. LEXIS 176018
    (W.D. Wash. Sep. 27, 2024) ..................................................................... 34

*Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*,
    756 F.2d 986 (4th Cir. 1985) ..................................................................... 34

*Palmisano v. Toth*,
    624 A.2d 314 (R.I. 1993) .................................................................... 50, 51

*Patterson v. McLean Credit Union*,
    491 U.S. 164 (1989) ............................................................................. 27

*Pena v. Honeywell Int'l, Inc.*,
    923 F.3d 18 (1st Cir. 2019) ................................................................. 16, 17

*Picard v. Barry Pontiac-Buick, Inc.*,
    654 A.2d 690 (R.I. 1995) ......................................................................... 51

*Picone v. Shire PLC*,
    No. 16-cv-12396-ADB, 2017 U.S. Dist. LEXIS 178150 (D. Mass. Oct. 20, 2017) ......... 35

*Pina v. Children's Place*,
    740 F.3d 785 (1st Cir. 2014) ...................................................................... 6

*Pound Hill Corp. v. Perl*,
   668 A.2d 1260 (R.I. 1996) ........................................................................ 32

*Pro. Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) ................................................................................... 35

*Proffitt v. Ricci*,
   463 A.2d 514 (R.I. 1983) .......................................................................... 45

*Pruco Life Ins. Co. v. Wilmington Tr. Co.*,
   721 F.3d 1 (1st Cir. 2013) ......................................................................... 11

*Reed-Bey v. Bingyan Guo*,
   No. 2:25-cv-01880-DAD-CKD(PS), 2025 U.S. Dist. LEXIS 184618,
   (E.D. Cal. Sep. 18, 2025) ......................................................................... 35

*Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*,
   268 F. App'x 555 (9th Cir. 2008) ................................................................ 9

*Rhode Island Five v. Medical Associates of Bristol Cnty., Inc.*,
   668 A.2d 1250 (R.I. 1996) ........................................................................ 19

*Ricci v. Rhode Island,* No. 1:20-cv-00543-MSM-PAS,
   2023 U.S. Dist. LEXIS 125865 (D.R.I. July 21, 2023) ................................. 28

*Rios-Campbell v. U.S. Dep't of Com.*,
   927 F.3d 21 (1st Cir. 2019) ......................................................................... 9

*Savage Ent., LLC v. Ortiz*,
   No. 22-247, 2023 U.S. Dist. LEXIS 213054 (D.R.I. Nov. 30, 2023) ................ 5

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*,
   976 F.2d 58, 61 (1st Cir. 1992) ............................................... 10, 11, 12, 15

*Sheinkopf v. Stone*,
   927 F.2d 1259 (1st Cir. 1991) .............................................................. 6, 15

*Smith v. Boyd*,
   553 A.2d 131 (R.I. 1989) .......................................................................... 18

*Soar v. Nat'l Football League Players' Ass'n*,
   550 F.2d 1287 (1st Cir. 1977) ............................................................ 19, 23

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) .................................................................... 32

*Stratton v. Bentley Univ.*,
113 F.4th at 25 (1st Cir. 2024) ........................................................................ 37

*Sure-Tan, Inc. v. N.L.R.B.*,
467 U.S. 883 (1984) ........................................................................................ 34

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) .......................................................................... 32

*Thomas v. Housing Auth. of Cnty of L.A.*,
2005 U.S. Dist. LEXIS 46426 (C.D. Cal. 2005) ............................................. 33

*Toledo v. Brend Restoration, LLC*,
No. 21 Civ. 882, 2023 U.S. Dist. LEXIS 83292 (S.D.N.Y. May 11, 2023) .... 30

*Tomaiolo v. Mallinoff*,
281 F.3d 1 (1st Cir. 2002) ............................................................................... 33

*Town of Westport v. Monsanto Co.*,
877 F.3d 58 (1st Cir. 2017) .......................................................................... 5, 6

*Ungureanu v. A. Teichert & Son*,
No. 11 Civ. 316(LKK), 2012 U.S. Dist. LEXIS 46440 (E.D. Cal. Apr. 2, 2012) ........... 33

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
389 U.S. 217 (1967) ........................................................................................ 32

*United States v. Davis*,
809 F.2d 1509 (11th Cir. 1987) ...................................................................... 47

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009) ...................................................................... 35

*United States v. Taylor*,
848 F.3d 476 (1st Cir. 2017) ........................................................................... 46

*Velez v. UPS*,
728 F. Supp. 3d 228 (D. Mass. 2024) ............................................................. 17

*Venetian Casino Resort, L.L.C. v. NLRB*,
793 F.3d 85 (D.C. Cir. 2015) .......................................................................... 34

*Ward v. City of Pawtucket Police Dep't*,
639 A.2d 1379 (R.I. 1994) ......................................................................... 27, 28

*Williams v. Jones & Jones Mgmt. Grp., Inc.*,
  No. CV 14-2179-MMM (JEM), 2014 U.S. Dist. LEXIS 181128
  (C.D. Cal. Jan. 23, 2015) ................................................................................................ 33

*Wyckoff v. Maryland*,
  522 F. Supp. 2d 730 (D. Md. 2007) ................................................................................ 39

**STATUTES**

42 U.S.C. § 1981 ...................................................................................................... 26, 27

42 U.S.C. § 1983 ............................................................................................................ 9

R.I. Gen. Laws § 28-5-7(5) ...................................................................................... 1, 31

R.I. Gen. Laws § 42-112-1 .......................................................................................... 27

R.I. Gen. Laws 42-112-1 ............................................................................................... 1

**RULES**

Fed. R. Civ. P. 56 .......................................................................................................... 5

**Treatises**

Corbin on Contracts § 95 (3d Ed. 1963) .................................................................... 19

Restatement (Second) of Contracts § 33(1) ............................................................... 19

5 Wright & Miller, *Federal Practice and Procedure*, § 1286 (2d ed. 1990) .......... 12, 15

Defendants The Preserve at Boulder Hills, LLC ("PBH"), Preserve Property Management Company, LLC ("PPMC") and Paul Mihailides (together with PBH and PPMC, "Defendants") submit this memorandum of law in support of their Motion for Summary Judgment on Counts VI – IX and XIII of Plaintiff Alison McDaniel's Second Amended Verified Complaint, ECF No. 43.[1]

## **INTRODUCTION**

A consistent theme runs through every aspect of this case: Plaintiff's version of events changes whenever it suits her litigation needs. Each time her prior testimony or sworn statement becomes inconvenient, she offers a new "clarification" or a contradictory account, always aiming to avoid the consequences of her earlier admissions under oath. When faced with unfavorable facts, plaintiff does not stand by her story, she invents a new one. This shifting narrative exposes the absence of any genuine dispute of material fact. The Court should not permit plaintiff to escape summary judgment by endlessly rewriting her own history.[2]

---

[1] Count VI (Violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7(5), Retaliation); Count VII: Breach of Contract; Count VIII: Violation of the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws 42-112-1 et seq., Discrimination Based on Sex, Hostile Work Environment - Sexual Harassment; Count IX: Violation of the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws 42-112-1 et seq., Discrimination Based on Sex, Quid Pro Quo Sexual Harassment and Count XIII: Battery.

[2] Plaintiff's calculated disregard for the obligations of the oath and the truth permeates far beyond the matters at issue in this motion. Defendants have, again and again, exposed Plaintiff's serial fabrications and shifting stories.

To attract extensive pretrial publicity and boost her perceived stature, Plaintiff claimed to have been an actress in *The Hunger Games: Catching Fire*—a boast squarely contradicted by her own testimony admitting she "didn't make the cut," and that the part for which she was hired was edited out of the final film. *Compare* **Ex. 1**, McDaniel's Resps. to First Set of Interrogatories at 9, *with* **Ex. 2**, Pl.'s Dep. (Feb. 21, 2024) at 80:7-23. Plaintiff further admitted in response to Defendants' Requests for Admissions that any news reports about this case stating that she is best known for her role in *The Hunger Games: Catching Fire* are inaccurate. **Ex. 3**, Pl.'s Responses to Requests for Admission No. 96.

Plaintiff similarly promoted herself as an actress in *Gossip Girl*; here too, she conceded under oath that she was "not [in] the cut," and her credits exist nowhere but in her own self-promotion. **Ex. 4**, Alison McDaniel Portfolio; **Ex. 2**, Pl.'s Dep. (Feb. 21, 2024) at 111:20-23. Plaintiff also touted on her website her role as a "Movie Star" in *J. Edgar Hoover*, but she confirmed at deposition that she never watched the movie, did not know its official title, could not identify who played J. Edgar Hoover, and probably would

not be included in any list of the full cast and crew because she was only "a background."  **Ex. 5**, Alison McDaniel Resume/Contact; **Ex. 2**, Pl.'s Dep. (Feb. 21, 2024) at 102:6-105:22.

That pretrial publicity included:

A GoLocal Prov story that reported:  "She had roles in movies such as Hunger Games: Catching Fire, and J. Edgar (Hoover).  She also appeared in television shows ranging from the soap opera Guiding Light to Gossip Girl."  *Woman Behind Sex Harassment Lawsuit Against Mihailides and Preserve Is Actress and Hosts Gun Events* (July 14, 2023), GoLocalProv.com, located at https://www.golocalprov.com/news/woman-behind-sex-harassment-lawsuit-against-mihailides-and-preserve-is-actr;

A Providence Journal article that reported:  "McDaniel, who appeared in 'The Hunger Games: Catching Fire,' and on the television soap the 'Guiding Light,' is suing Mihailides and The Preserve for $3.1 million in damages and lost income."  Tom Mooney, Actress and The Preserve owner Mihailides trade blows in court, The Providence J. Pg. A2 (March 18, 2024);

An Associated Press article reprinted in the Canadian Press article and on Boston.com that reported:  "An actor and model who had roles in the soap opera 'Guiding Light' and movies including 'The Hunger Games: Catching Fire' says in a lawsuit that she was sexually harassed by the owner of a Rhode Island resort where she had been hired to work as a consultant."  *Actor with roles in 'Guiding Light,' 'Hunger Games' film accuses R.I. resort owner of sexual harassment*, Boston.com (July 14, 2023), available at https://www.boston.com/news/local-news/2023/07/14/actor-with-roles-in-guiding-light-hunger-games-film-accuses-r-i-resort-owner-of-sexual-harassment/; Actor with roles in 'Guiding Light,' 'Hunger Games' film accuses resort owner of sexual harassment, Canadian Press (July 14, 2023); and

A New York Post article that reported: "Actress Alison McDaniel, best known for her small role in 'The Hunger Games,' has filed a $3.3 million lawsuit against the owner of one of the top private clubs in the US, alleging he told her he would even have sex with her corpse, according to a report."  Nika Shakhnazarova, *'Hunger Games' actress Alison McDaniel files $3.3M harassment suit against country club boss: report*, New York Post (July 14, 2023), *available at* https://nypost.com/2023/07/14/hunger-games-actress-alison-mcdaniel-files-3-3m-harassment-suit-against-country-club-boss/

At no time since the truth came to light during Plaintiff's depositions, has Plaintiff or her counsel has taken any steps to correct the false news reports.  Recent news reports continue to identify Plaintiff as an actress in the *Hunger Games: Catching Fire*, *J. Edgar (Hoover)* and *Gossip Girl.  See Federal Sexual Harassment Lawsuit Against The Preserve and Paul Mihailides Moves Forward*, GoLocalProv.com (April 18, 2025), available at https://www.golocalprov.com/news/federal-sexual-harassment-lawsuit-against-the-preserve-and-paul-mihailides.  Her online resume also continues to boast these roles even after she testified under oath never made the cut.  https://www.alisonmcdaniel.com/contact-booking (last accessed Nov. 2, 2025).

Plaintiff's willingness to invent facts extends to the most basic information about herself.  In her own handwriting, Plaintiff signed an accident waiver and release of liability for the Preserve and provided a 1986 birth year, creating the impression she was six years younger than her true age.  Under oath, she admitted she was actually born in 1980.  **Ex. 2**, Pl.'s Dep. (Feb. 21, 2024) at 231:12-233:19.

Plaintiff's mendacity extends to her employment status and is not a mere matter of mistaken recollection, it is a strategic and deliberate attempt to distort the facts.  Plaintiff unequivocally asserted in

2

Five counts remain in this case.  This Court has already rejected eight of Plaintiff's claims as unsupported by the record, along with another count against PBH.  Plaintiff's remaining five counts fare no better.  Judgment should now enter in favor of Defendants on all remaining counts, bringing this litigation to an end.

Plaintiff's claims for breach of contract and for violation of the Rhode Island Civil Rights Act (Counts VII, VIII and IX) all fail in the absence of a contractual relationship between Plaintiff and PBH and PPMC.  These counts remain only because Plaintiff continually revises the nature of her claim to survive judicial scrutiny.  Throughout this litigation, Plaintiff has consistently and

---

three successive verified complaints that she was an employee of PBH and PPMC.  Verified Compl. ¶ 1, ECF No. 1; Am. Verified Compl. ¶ 1, ECF No. 3; Second Am. Verified Compl. ¶ 1, ECF No. 43.  The Court, reviewing the actual evidence, found her claim so lacking in factual support that it held no reasonable factfinder could possibly conclude she was an employee.  Mem. & Order at 16, ECF No. 67.  Plaintiff insisted she never hired, paid, or received reimbursement for assistants from PBH, asserting this repeatedly during discovery.  *Id.* at 12-13.  Yet the Court found exactly the opposite—that Plaintiff, in fact, hired assistants, paid them from her own funds, and received funds from PBH to cover those expenses.  *Id.*  Each time Plaintiff's assertions are measured against the evidentiary record, her version collapses under the weight of undisputed facts.

Plaintiff's deposition also exposed an email with the subject line "Ending Relationship with Preserve," which Plaintiff sent to Mr. Mihailides and Nicole Rodin stated: "That alone is more than anyone should have to endure *from a client* but you have advantage of my kindness and patience at every turn." **Ex. 6**, Pl.'s Dep. (Feb. 21, 2024) at Ex. CC (emphasis added).  Meanwhile, a version of the same email produced by Plaintiff *after Plaintiff's status as a contractor became relevant in this litigation*, contained the following text:  That alone is more than anyone should have to endure *from someone they work for* but you have advantage of my kindness and patience at every turn."  **Ex. 7**, Pl.'s Dep. (Feb. 21, 2024) at Ex. BB (emphasis added).  Plaintiff had no explanation for the discrepancy between the email she sent to Mr. Mihailides and Ms. Rodin and the email she produced in this litigation.  **Ex. 2**, Pl's Dep. (Feb. 21, 2024) at 263:1-12.

Plaintiff's contempt for her oath is especially stark in her representations to the IRS—an arena where candor is not optional.  Under penalty of perjury, Plaintiff swore she filed IRS Form SS-8, a document directly bearing on her worker classification.  *Id.* at 192:23-193:20.  Yet in deposition, Plaintiff admitted she "actually didn't send it in" at all.  *Id.* at 194:19-21; 195:19-197:14. Plaintiff swore that she "did find out, from the IRS, that . . . [she] did not do anything wrong by not sending the form."  **Ex. 8**, Pl.'s Dep. (May 13, 2024) at 300:19-23.  The truth, however, is that she did not speak with anyone from the IRS but, rather, that she spoke with someone she knew.  *Id.* at 300:24-301:21.  Such calculated fabrications are not innocent errors, but further evidence of Plaintiff's willingness to disregard truth whenever expedient.

repeatedly maintained under oath that she was an employee of PBH and PPMC with a contract of employment, and expressly disclaimed, under oath, any independent contractor relationship. When her employee theory failed on the facts, Plaintiff attempted to rebrand herself as an independent contractor with a contract to perform independent contractor services. But Plaintiff's judicial admissions, made deliberately and repeatedly in verified pleadings, bind Plaintiff and foreclose her effort to advance newly invented theories of contract to save her breach of contract and Rhode Island Civil Rights Act claims. Even if her admissions somehow left room for yet another version of events, the evidentiary record does not support the existence of any contract for independent contractor services, whether written, oral, express or implied.

Plaintiff's remaining retaliation claim against PPMC under Rhode Island's Fair Employment Practices Act (Count VI) also fails at this stage. This Court has already ruled that Plaintiff cannot pursue that claim against PBH, leaving only her claim against PPMC. PPMC, as a matter of law, is entitled to *Noerr-Pennington* immunity for petitioning the government regarding Plaintiff's misconduct.

Even if immunity did not apply, Plaintiff cannot show any materially adverse consequence from PPMC's report: there is no evidence it was made public, resulted in criminal charges, or caused any reputational harm. The only dissemination came from Plaintiff herself, who chose to inform her own audience. That Plaintiff chose to communicate the existence of the report to others does not transform it into a materially adverse action attributable to PPMC. The undisputed evidence forecloses any causal link between the report and Plaintiff's employment prospects, reputation, or other protected right.

Plaintiff's battery claim against Mr. Mihailides (Count XIII) epitomizes her strategy of rewriting history to manufacture triable issues. After consistently stating under oath that Mr.

4

Mihailides *tried* to kiss her, *attempted* to touch her buttocks, and *tried* to touch her thigh, Plaintiff appears to have awoken to the fact that a battery cannot be premised on attempts but must be based on actual contact.

In her Second Amended Verified Complaint she transformed those attempted contacts into actual physical contacts, and testified to the same at deposition. But remarkably, months after her deposition, she came forward with an affidavit, returning once again to the language of mere attempts. This self-contradictory storytelling cannot be credited, nor can it create a genuine dispute of material fact; her battery claim fails as a matter of law. If any portion of her battery claim remains, summary judgment should enter against any request for economic or punitive damages, as the record contains no support for either.

Plaintiff's attempt to escape summary judgment through perpetual revisions and strategic contradictions must be rejected, and judgment on all remaining counts should enter for Defendants as a matter of law.

## ARGUMENT

### I.    Standard of Review

"Summary judgment is proper when the pleadings, discovery, and affidavits, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Savage Ent., LLC v. Ortiz*, No. 22-247, 2023 U.S. Dist. LEXIS 213054, at *4-5 (D.R.I. Nov. 30, 2023) (internal quotation marks omitted) (quoting *Grossman v. Martin*, 566 F. Supp. 3d 136, 142 (D.R.I. 2021)); *see also* Fed. R. Civ. P. 56.

To survive summary judgment, "[a] 'nonmovant [who] bears the ultimate burden of proof' must provide 'definite, competent evidence.'" *Town of Westport v. Monsanto Co.*, 877 F.3d 58, 66 (1st Cir. 2017) (second alteration in original) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991)). Thus, a nonmovant may not "rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation' to defeat a motion for summary judgment." *Id*. at 68 (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

"While '[i]t is well-settled that a judge must not engage in making credibility determinations or weighing the evidence at the summary judgment stage,' 'it is equally clear that judges cannot allow conjecture to substitute for the evidence necessary to survive summary judgment.'" *Id.* at 66 (quoting *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014)). Thus, a district judge may not "'draw *unreasonable* inferences or credit bald assertions.'" *Id.* at 67 (emphasis in original) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)).

On summary judgment, allegations in a verified complaint are treated as the "functional equivalent of an affidavit." *Francois v. Putnam Invs., LLC*, 34 F. App'x 395, 398 (1st Cir. 2002) (quoting *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir. 1991)).

## II.    Summary judgment should enter in favor of PBH and PPMC on Count VII, Breach of Contract.

Count VII of Plaintiff's Second Amended Verified Complaint alleges breach of contract against PBH and PPMC.[3]  Plaintiff alleges, under oath, that she "had an agreement whereupon Defendants agreed to pay McDaniel a salary of $6,000 per month in December 2019 for work performed at The Preserve." Second Am. Verified Compl. ¶ 268, ECF No. 43.  Plaintiff further alleges, under oath, that PBH and PPMC breached that agreement by never compensating her fully for her work. *Id.* ¶ 269.

---

[3]    Plaintiff did not allege her breach of contract claim against Mr. Mihailides. *See generally* Second Am. Verified Compl.

This Court initially granted PBH and PPMC summary judgment on Count VII, finding that "although [Plaintiff] styled Count VII as a breach of contract, it arises from Mihailides's alleged failure to pay her a 'salary.'" Mem. & Order at 20, ECF No. 67. As such, the Court determined it was a claim for failure to pay wages in violation of the Rhode Island Payment of Wages Act ("RIPWA"). *Id*. Because the RIPWA applies only to employees, and because the Court had already found that Plaintiff was not an employee, it concluded that her claim for breach of contract failed. *Id*. at 20-22.

Thereafter, however, in ruling on Defendants' Motion for Judgment on the Pleadings, the Court *sua sponte* reversed its grant of summary judgment in favor of PBH and PPMC on Plaintiff's breach of contract claim, concluding that Plaintiff's Second Amended Verified Complaint could be read as stating a breach of a contract not for employment but for independent contractor services. Order at 6, ECF No. 96. The Court explained: "Despite [Plaintiff's] use of traditional employment language when drafting this Count, 'the court must look beyond the language of the complaint to the specific allegations and the injury alleged.'" *Id*. (quoting *Andreozzi v. Synrgy Health & Fitness, LLC*, No. 17-cv-00129, 2020 WL 5634348, at *5 (D.R.I. Sept. 21, 2020)). In doing so, the Court concluded that Plaintiff "plainly intended to allege a failure by Defendants to make payment specified by a contractual agreement, which could plausibly have been either a contract to work as an employee or a contract to work as an independent contractor." *Id*. The Court thereafter granted Defendants permission to move for summary judgment on that construction of Plaintiff's claim. Text Order (Oct. 23, 2025).

7

Even if the Court could plausibly construe the allegations in Plaintiff's Second Amended Verified Complaint as alleging a contract to work as an independent contractor,[4] at the summary judgment stage, the *evidence* forecloses such a claim.  No reasonable juror could find, *based on the evidence*, that such a contract existed given Plaintiff's express disavowal of any independent contractor relationship and her failure to establish the essential elements of a contract.

      **A.**     **At the summary judgment stage, Plaintiff's Second Amended Verified Complaint cannot be read as alleging a breach of any contract for independent contractor services.**

On summary judgment, this Court must determine whether the undisputed evidence supports the actual claims pled in the Plaintiff's Complaint.  Even if at the pleadings stage Plaintiff's Second Amended Verified Complaint could have been read as plausibly claiming either a contract to work as an employee *or* as an independent contractor, the undisputed material facts demonstrate that Plaintiff's claim is and has always been a claim that she had a contract to work as an employee not an independent contractor.  This Court's determination that she could not prove that claim based on the undisputed evidence does not then authorize it to rewrite her complaint or give Plaintiff license to amend her allegations on summary judgment.

Count VII of Plaintiff's Complaint alleges that she "had an agreement whereupon Defendants agreed to pay [her] a ***salary*** of $6,000 per month beginning in December 2019 for work performed at The Preserve."  Second Am. Verified Compl. ¶ 268 (emphasis added).  Although this Court has recognized that Plaintiff's allegation used "traditional employment language," it determined that, at the pleadings stage, it must "look beyond the language of the

---

[4]     Defendants respectfully submit that it was an error for the Court to construe Plaintiff's Second Amended Verified Complaint as alleging a contract to work as an independent contractor, even at the pleadings stage, for the reasons set forth in Defendants' Motion for Reconsideration, ECF No. 97, and Defendants' Reply Memorandum in Support of their Motion for Reconsideration, ECF No. 99.

complaint to the specific allegations and the injury alleged.'"  Order at 6 (quoting *Andreozzi*, 2020 WL 5634348, at *5).  In doing so, the Court concluded that Plaintiff "plainly intended to allege a failure by Defendants to make payment specified by a contractual agreement, which could plausibly have been either a contract to work as an employee or a contract to work as an independent contractor." *Id*.

While, at the pleading stage, the Court will generously read the parties' pleadings and determine whether the plaintiff has stated a plausible claim, "[w]hen the window for filing either a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings has shut and substantial discovery has taken place, the plausibility standard normally becomes a relic of a bygone time." *Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019).  "From that point forward, a party seeking to end a civil action short of trial ordinarily must meet a different standard: the standard applicable to a motion for summary judgment under Rule 56." *Id*.

On summary judgment, the Court must decide summary judgment on the *actual* counts pled in the Plaintiff's Complaint and the *actual* undisputed evidence.  *Daury v. Smith*, 842 F.2d 9, 15-16 (1st Cir. 1988) (holding that plaintiff was not entitled to summary judgment on the issue of retaliation when his complaint only set forth claims for deprivation of constitutional rights under 42 U.S.C. § 1983); *see also Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc*., 268 F. App'x 555, 558 (9th Cir. 2008) (holding that a plaintiff could not pursue on summary judgment a promissory estoppel claim when it only pled a claim for fraudulent misrepresentation).

The First Circuit has long cautioned that courts should not "***rewrite [a] plaintiff's complaint to contain a count that was not included in it***." *Daury*, 842 F.2d at 15 (emphasis added).  The rules do not "give[] a plaintiff the license to amend the complaint by memorandum in the district court" on summary judgment.  *Id*.

9

Here, the only count for breach that Plaintiff has pled in her complaint is one claiming a failure to pay her a salary.  *See* Second Am. Verified Compl. ¶ 268.  The record in this case is similarly devoid of any assertion, let alone any evidence, that Plaintiff received an offer for anything other than a salary, that she accepted an offer for anything other than a salary, or that she performed under a contract for anything other than a salary.  Plaintiff testified under oath at deposition that her relationship with PBH and PPMC was an employment relationship.  Defs.' Statement Undisputed Material Facts ("SUF") ¶¶ 18-19.  She testified that not only had she *alleged* that she was an employee of the Preserve, she, *in fact, was an employee of the Preserve*.  *Id*. ¶ 20.

Accordingly, on summary judgment, Plaintiff's Second Amended Verified Complaint can only be read as claiming breach of a contract of employment.  Because this Court has already determined that the undisputed facts do not support a finding that Plaintiff was an employee of any one of the Defendants, summary judgment should also enter in favor of Defendants on Plaintiff's breach of contract claim.

### B.    Plaintiff is conclusively bound by her judicial admissions that she was an employee and not an independent contractor.

Plaintiff cannot make out a claim for breach of a contract for independent contractor services when she has consistently pled and affirmed, under oath and as a matter of fact, that she was an employee and where she expressly disavowed in her pleadings and under oath, that she performed any services as an independent contractor.

Under First Circuit law, "[a] party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding."  *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co*., 976 F.2d 58, 61 (1st Cir. 1992) (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co*., 757 F.2d 523, 528 (2d Cir. 1985)); *accord Lima v. Holder*, 758 F.3d 72,

10

79 (1st Cir. 2014); *Pruco Life Ins. Co. v. Wilmington Tr. Co.*, 721 F.3d 1, 11 (1st Cir. 2013); *Del Sesto v. Prospect CharterCARE, LLC*, No. 18-328 WES, 2022 U.S. Dist. LEXIS 164724, at *19-20 (D.R.I. Sep. 13, 2022).  A judicial admission is treated as formal concession that may not be controverted at trial or on appeal.  *Del Sesto*, 2022 U.S. Dist. LEXIS 164724, at *19-20.  As such, they have the effect of withdrawing a fact from contention.  *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).

For example, in *Schott*, the plaintiff alleged in its complaint that effective February 1, 1985, plaintiff and defendant entered into a sales and service agreement.  976 F.2d at 61.  The plaintiff further alleged that, at all times during the effective dates of the agreement, it had complied with its terms and conditions.  *Id.*  These allegations were reasserted in each count of the complaint and remained consistent through two amended complaints.  *Id.*  When the plaintiff argued on summary judgment that the 1985 agreement was, in effect, revoked in 1985, the district court held that, by virtue of its pleadings, plaintiff had admitted that it was bound by the terms of the 1985 agreement. *Id.*

On appeal to the First Circuit, the plaintiff argued that its complaint should have been construed as pleading a termination and a novation.  *Id.*  The First Circuit disagreed.  *Id.*  The First Circuit held that "[t]he judicial admission found by the lower court rested on plaintiff's clear and express statement in its original and amended complaints that 'a contract did, in fact, exist between the parties,' fortified by an attached copy of the 1985 Agreement."  *Id.*  Importantly, the complaint did not mention any other agreement or suggest that the agreement was nullified or altered.  *Id.*

In construing the plaintiff's complaint, the First Circuit noted Rule 8's admonition that pleadings must be construed so as to do justice, but observed that "[t]he liberal construction

accorded to a pleading under Rule 8(f)[5] ***does not require the courts to fabricate a claim that a plaintiff has not spelled out in his pleadings***." *Id.* at 62 (emphasis added) (quoting 5 Wright & Miller, *Federal Practice and Procedure*, § 1286, at 558 (2d ed. 1990)).

After scouring the complaint, the First Circuit found no indication that the plaintiff was pleading a termination and novation of the agreement. *Id.* In these circumstances, the court found that the district court had correctly concluded that the doctrine of judicial admissions foreclosed a contract claim based on purported oral promises. *Id.*

Other courts, applying the doctrine of judicial admissions, have ruled that a plaintiff's allegation of employee status is a judicial admission binding on it. *See, e.g., Acuna v. Covenant Transp., Inc.*, No. SA-20-CV-01102-XR, 2022 U.S. Dist. LEXIS 97413, at *6-8 (W.D. Tex. May 4, 2022) (ruling that after years of making representations to the court about the defendant's employer status, defendants' judicial admissions foreclosed them from entitlement to summary judgment on the grounds that they were not plaintiff's employer); *Iowa Mut. Ins. Co. v. Hennings*, No. 05-3073, 2006 U.S. Dist. LEXIS 74640, at *20 (C.D. Ill. Oct. 12, 2006) ("John and Joy Wells alleged that at all relevant times John Wells was an employee of Crop Care. . . . This is a judicial admission that is binding on them.").

Here, Plaintiff's sworn factual allegations are binding judicial admissions that are conclusive for purposes of summary judgment. Plaintiff's Verified Complaint, Amended Verified Complaint, and Second Amended Verified Complaint each allege that at all relevant times, Plaintiff was an employee of PBH and PPMC. SUF ¶¶ 9-10. In a section of her Verified Complaint, Amended Complaint, and Second Amended Verified Complaint titled "**Factual**

---

[5]    Rule 8(f) is the predecessor to the current Rule 8(e).

**Allegations**" Plaintiff compared herself to other employees, alleging under oath: "Mihailides is the owner of The Preserve and controls all aspects of its operations, including the hiring, managing, and firing of ***employees such as McDaniel***." *Id.* ¶¶ 11-12 (emphasis added). In that same section, she further alleged under oath in three separate paragraphs that she "worked at the Preserve from in or about December 2019 to February 17, 2022, at which time she was ***constructively discharged*** from ***her valuable employment*** . . . ." *Id.* ¶¶ 13-14 (emphasis added). Plaintiff also alleged under oath in that section that "[d]uring the time period McDaniel performed work at The Preserve, McDaniel and Defendants believed that they created an ***employer-employee relationship***." *Id.* ¶¶ 15-16 (emphasis added). Each of these factual allegations are incorporated by reference in each of the counts of her Second Amended Verified Complaint as though fully set forth therein, including in Count VII which purports to state a claim for breach of contract. *Id.* ¶ 17.

Additionally, in her Answer to Defendants' Counterclaim, Plaintiff pled that she was, at all relevant times, an employee of PBH and PPMC. *Id.* ¶ 30.

Plaintiff's statements—in the section of her Verified Complaint, Amended Verified Complaint, and Second Amended Verified Complaint titled "**Factual Allegations,**" as well as in her Answer to Defendants' Counterclaim—are factual assertions that operate as judicial admissions, not mere legal conclusions. It is undisputed, based on Plaintiff's deposition testimony, that her allegation of employee status is a statement of fact. *Id.* ¶ 18. Plaintiff confirmed under oath during deposition regarding her Second Amended Verified Complaint, "***It's my understanding that I stated a fact that I was an employee***." *Id.* (emphasis added). Furthermore, Plaintiff affirmed under oath that she not only alleged she was an employee of the Preserve, but was in fact employed by the Preserve, and when questioned further, clarified that her pleadings reflected factual reality, not simply a legal claim. *Id.* ¶¶ 19-20.

13

Plaintiff not only stated under oath, as a matter of fact, that she was an employee, she also disavowed any independent contractor relationship with Defendants.  In her Verified Complaint, her Amended Complaint, and her Second Amended Verified Complaint, she pled, under oath: "***McDaniel did not serve Defendants as an independent contractor***, but rather, she served as an employee."  *Id.* ¶¶ 21-22 (emphasis added).  She further pled, under oath:  "Because ***McDaniel did not serve Defendants as an independent contractor***, they were required to remit to the IRS and the Rhode Island Division of Taxation the employer's matching contribution of the taxes it was required by law to pay."  *Id.* ¶¶ 23-24 (emphasis added).

Further, and consistent with her allegations that she was an employee and not an independent contractor, Plaintiff's Verified Complaint, Amended Verified Complaint and Second Amended Verified Complaint all alleged that she had a contract that entitled her to a "***salary***," rather than the "***cost of performing a particular job***."  *Id.* ¶¶ 28-29 (emphasis added).

Plaintiff's repeated and unequivocal allegation that she was, as a matter of fact, an employee of PBH and PPMC with a contract for a salary—whether or not supported by the evidence[6]—constitutes a clear judicial admission, which forecloses any claim that she had a contract to perform independent contractor services.  There are no allegations in her Second Amended Verified Complaint that can reasonably be construed as asserting the existence or breach of a contract for independent contractor services.  As the First Circuit cautioned in *Schott*, even under the liberal construction accorded to a pleading under Rule 8(e), a court may not "***fabricate a claim that a plaintiff has not spelled out in his pleadings***."  976 F.2d at 62 (emphasis added)

---

[6]    This Court has already concluded that the undisputed material facts do not support a conclusion that Plaintiff was an employee of PBH or PPMC.  Mem. & Order at 10.

14

(quoting Wright & Miller, *Federal Practice and Procedure*, § 1286, at 558 (2d ed. 1990)); *accord McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger*, 280 F.3d 26, 38 (1st Cir. 2002).

The factual allegations in Plaintiff's Second Amended Verified Complaint are binding on her and foreclose any claim of breach of a contract for independent contractor services. To hold otherwise would ignore the doctrine of judicial admissions and would impermissibly fabricate a claim that Plaintiff has not spelled out in her pleadings.

> **C.    Plaintiff's factual allegations in her verified pleadings are evidentiary admissions that she had no contract to provide independent contractor services.**

Not only are Plaintiff's factual allegations in her Verified Complaint, her Amended Verified Complaint, and her Second Amended Verified Complaint judicial admissions that are binding on her, because Plaintiff chose to verify those allegations, her allegations under oath constitute evidentiary admissions. As such, they demonstrate, for purposes of summary judgment, that Plaintiff had no contract to provide independent contractor services to PBH or PPMC.

Under First Circuit law, verified allegations in a complaint are treated as the "functional equivalent of an affidavit" for purposes of summary judgment. *Francois*, 34 F. App'x at 398 (quoting *Sheinkopf,* 927 F.2d at 1262). Thus, courts in this Circuit, including this Court, recognize that factual assertions made in a verified complaint, even if self-serving, may be considered as evidence when assessing the record at summary judgment. *Lyons v. Wall*, No. 08-498-M, 2012 U.S. Dist. LEXIS 121409, at *5 (D.R.I. Aug. 24, 2012); *see also JT IP Holding, LLC v. Florence*, Civil Action No. 1:20-cv-10433-IT, 2024 U.S. Dist. LEXIS 165158, at *11 n.3 (D. Mass. Sep. 12, 2024).

Accordingly, all of Plaintiff's verified factual allegations may be considered when evaluating the summary judgment record. Here, Plaintiff's verified allegations establish that there

is no genuine dispute that she had no contractual relationship to provide independent contractor services to PBH or PPMC.  SUF ¶¶ 9–24, 28-29.  In fact, the only agreement Plaintiff asserts is an employment arrangement providing for a salary.  *Id.*  This Court has already found that the evidence does not support the conclusion that Plaintiff was an employee.  Mem. & Order at 16.

Thus, summary judgment should enter in favor of PBH and PPMC on Plaintiff's breach of contract claim to the extent it is read as alleging breach of a contract to provide independent contractor services.

### D.    Plaintiff cannot contradict her prior deposition testimony on summary judgment.

In addition to her binding judicial admissions and her evidentiary admissions, Plaintiff's deposition testimony is clear: she had no independent contractor relationship with PBH or PPMC. She cannot now contradict that testimony on summary judgment.

Courts may disregard an interested party's purely self-contradictory and/or self-serving testimony at the summary judgment stage when it directly contradicts prior sworn testimony.  The First Circuit "'refuse[s] to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit.'" *Pena v. Honeywell Int'l, Inc*., 923 F.3d 18, 30 (1st Cir. 2019) (quoting *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001)).  "When an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) (affirming a district court's granting of summary judgment in a case including a negligence claim where, only after Defendants filed their summary judgment motions, Plaintiff filed an affidavit that "direct[ly] contradict[ed] [] his prior deposition

16

testimony"). "The reason for this is simple: if a plaintiff facing summary judgment could simply file a pleading inexplicably altering the factual landscape to which they had previously contributed in order to manufacture a genuine dispute as to a material fact, absurd results would follow." *Velez v. UPS*, 728 F. Supp. 3d 228, 233 (D. Mass. 2024).

Here, Plaintiff gave clear answers to unambiguous deposition questions. Consistent with her allegations under oath in her Verified Complaint, Amended Verified Complaint, and Second Amended Verified Complaint, Plaintiff testified under oath that her relationship with PBH and PPMC was an employment relationship. SUF ¶¶ 18-19. She testified that not only had she alleged that she was an employee of the Preserve, she, in fact, was an employee of the Preserve. *Id*. ¶ 20. Nothing under Supreme Court or First Circuit law "permits a plaintiff to do a volte-face from her deposition admissions." *Pena*, 923 F.3d at 30.

Nor can Plaintiff offer any explanation that would allow her to change course and now allege the existence of a contract for independent contractor services. This is particularly so when Plaintiff's deposition testimony was not only consistent with her allegations under oath in her Verified Complaint, Amended Verified Complaint, and Second Amended Verified Complaint, but also her Initial Disclosures, Answers to Interrogatories, and her affidavit submitted in support of her opposition to Defendants' Motion for Partial Summary Judgment.

In her Initial Disclosures, Plaintiff stated that she "has knowledge of her ***employment relationship*** with defendants." SUF ¶ 25 (emphasis added). Notably, Plaintiff did not disclose in her Initial Disclosures that she has any knowledge of any contractual relationship with Defendants other than one of employment. *Id.* ¶ 26. In response to an Interrogatory that asked her to identify the factual basis for her statement that "[a]t all times relevant to this matter, McDaniel was ***an employee*** of Preserve Property Management Company, LLC and The Preserve at Boulder Hills,

17

LLC," Plaintiff stated under oath, *inter alia,* "In December of 2019, after much persuasion, Paul Mihailides convinced me to work for The Preserve Sporting Club ("The Preserve") at an agreed upon **salary** of $6,000 per month." *Id.* ¶ 31 (emphasis added). Plaintiff similarly attested in her Affidavit that at a meeting in December 2019, Mr. Miahilides offered her "a $6,000 monthly **salary**, but [her] specific job duties were not established at the time." *Id.* ¶ 27 (emphasis added).

In a recent Motion for Leave to Amend, Plaintiff claimed that her allegation that she was entitled to a salary was a "drafting oversight," but that does not explain her clear and unequivocal testimony under oath that she was an employee. Mem. Law Supp. Pl.'s Mot. Am. at 4-5, ECF No. 82-1. Nor is it a plausible explanation in light of Plaintiff's repeated and consistent allegations under oath in her Verified Complaint, Amended Verified Complaint, Second Amended Verified Complaint, Initial Disclosures, Answers to Interrogatories and affidavit.

Plaintiff is bound by her deposition admissions and cannot resist summary judgment by coming forth with an affidavit that contradicts her prior testimony.

### E.    Plaintiff cannot establish the essential elements of an express contract.

Even if Plaintiff somehow could avoid her prior judicial and evidentiary admissions and could contradict her prior deposition testimony, she still cannot make out a claim for breach of a contract for independent contractor services because, based on the undisputed facts, she cannot establish the essential elements of an express contract.

Under Rhode Island law, the elements of a contract are offer, acceptance, consideration, mutuality of agreement and mutuality of obligation. *Smith v. Boyd,* 553 A.2d 131, 133 (R.I. 1989); *Lamoureux v. Burrillville Racing Assn.*, 161 A.2d 213, 215 (R.I. 1960). A court must make "predicate findings of offer, acceptance, consideration and breach requisite to determining a breach of contract claim." *Gorman v. St. Raphael Academy*, 853 A.2d 28, 33 (R.I. 2004).

A contract may arise from a writing or any other manifestation of mutual assent, including oral assent. *J. Koury Steel Erectors, Inc. of Mass. v. San-Vel Concrete Corp*., 387 A.2d 694, 697 (R.I. 1978) ("In an expressed contract the terms and conditions of the contract are assented to orally or in writing by the parties.").

Oral agreements are enforceable when all other contractual prerequisites are met—namely, "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1279 (R.I. 2007) (quoting *Rhode Island Five v. Medical Associates of Bristol Cnty., Inc.*, 668 A.2d 1250, 1253 (R.I. 1996)). Nevertheless, the terms of an oral contract must be sufficiently definite to permit judicial enforcement. *Id.* (citing *Soar v. Nat'l Football League Players' Ass'n*, 550 F.2d 1287, 1289-90 (1st Cir. 1977) (holding that terms of purported oral contract were too indefinite to enforce)).

A contract is not enforceable unless the parties agree on its essential terms. *See* Restatement (Second) of Contracts § 33(1) (stating that an offer "cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain"). Moreover, "[i]t is fundamental that for a contract to be enforceable it must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *Soar*, 550 F.2d at 1289-90 (footnote omitted). "The reasoning behind this principle is that a contract is an agreement between two parties, and a court should not require one of them to do something unless it can be reasonably certain that the party agreed to do it." *Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1341 n.20 (1st Cir. 1991) (citing Corbin on Contracts § 95 (3d Ed. 1963)).

In the case of a consulting agreement, an oral agreement must have sufficient terms, such as a payment structure, scope of services, and duration to be unenforceable. *Fredrick v. Advanced Strategic Partners, Inc*., No. 4:23-CV-01525, 2025 U.S. Dist. LEXIS 171802, at *5 (S.D. Tex.

19

Mar. 26, 2025) ("If an oral agreement lacks sufficient terms, such as a payment structure, scope of services, or duration, it is unenforceable."). Thus, courts have refused to find contracts with consultants where the essential terms of the purported contract are ill defined. *See, e.g., id.* at *6; *McKay Consulting Inc. v. Rockingham Mem. Hosp.*, 452 F. App'x 331, 336-38 (4th Cir. 2011).

In *Fredrick*, the plaintiff alleged that he and the defendant's president entered into an oral agreement pursuant to which he would introduce clients to the defendant in exchange for a share of commissions from completed M&A transactions. 2025 U.S. Dist. LEXIS 171802, at *1-2. In granting summary judgment in favor of the defendant on that claim, the court concluded that the purported agreement lacked sufficiently definite terms. *Id.* at *5-6. At most, the plaintiff there alleged that the parties had engaged in numerous conversations about what the arrangement would look like but offered no evidence that the parties "agreed upon key terms, including the commission rate, the duration of the alleged oral contract, or the payment schedule." *Id.* at *6. Given these deficiencies, the court concluded that the plaintiff had failed to establish an enforceable oral contract. *Id.*

In *McKay Consulting Inc.*, a national healthcare reimbursement consultant claimed he had an oral contract with a hospital to whom he provided consulting services in exchange for a contingency fee. 452 F. App'x at 333. In rejecting that claim, the district court granted summary judgment, finding that the terms of the alleged oral contract were not established with reasonable certainty. *Id.* at 335. On appeal, the Fourth Circuit affirmed. *Id.* at 339. The court there determined that no reasonable jury could find that the parties mutually assented to the compensation and agency terms alleged in the complaint. *Id.* In so concluding, the court observed that "[t]he most vivid proof supporting the district court's holding that there was no meeting of the minds" was the plaintiff's own inconsistency about the agreement. *Id.* at 336. Throughout the

20

litigation, the plaintiff offered at least four different iterations of what constituted the compensation term to which the parties were alleged to have agreed. *Id.* The court observed that "[i]f a plaintiff can't plead the essential terms of its own proffered contract, no court will make a contract for it." *Id*.

Here, it is undisputed that the parties do not have any written contract. SUF ¶¶ 1-3. Plaintiff claims, however, that the parties had an oral contract. To that end, Plaintiff maintains that during a meeting in December 2019, Mr. Mihailides offered her "a $6,000 monthly salary." *Id.* ¶¶ 27-28.[7] Not only did Plaintiff make this claim in her Second Amended Verified Complaint, she confirmed in discovery that, ***as a matter of fact***, under the parties' agreement she would be paid a "***salary*** of $6,000 per month." *Id.* ¶ 31 (emphasis added).

This Court has already found that Plaintiff was not an employee of either PBH or PPMC. Mem. & Order at 10. Thus, no reasonable juror could find that Plaintiff had a contract for a salary given the Court's finding that she was not an employee of either PBH or PPMC. Setting that aside, even if Plaintiff's Second Amended Verified Complaint somehow could be construed as alleging a contract for independent contractor services,[8] the requisite terms of any such agreement were lacking.

Plaintiff claims that Mr. Mihailides offered Plaintiff a $6,000 monthly salary, but even then, Plaintiff concedes that when he did so, her "specific job duties were not established." *Id.* ¶ 27. It is undisputed that the services Plaintiff was to perform were never specifically defined. *Id.*

---

[7]    While it is difficult for Defendants to accept anything Plaintiff says as true, Defendants accept, as they must, Plaintiff's assertion for purposes of summary judgment only.

[8]    Plaintiff's failure to plead a contract for independent contractor services should alone doom her claim. *See McKay Consulting Inc.*, 452 F. App'x at 336 ("If a plaintiff can't plead the essential terms of its own proffered contract, no court will make a contract for it.").

¶ 38.  Rather, Plaintiff testified that her "verbal agreement" included "all types of stuff," but she has never identified any specific services that she was required to provide under that purported agreement.  *Id.*  Because Plaintiff's purported verbal agreement did not specifically define her duties, Mr. Mihailides would give her "handwritten notes detailing tasks for her to complete."  *Id.* ¶ 39.  It is also undisputed that Plaintiff cannot identify the legal entity purportedly obligated to pay her a $6,000 monthly salary.  *Id.* ¶ 36.  Nor can she identify the legal entity for whom she worked.  *Id.*

It is further undisputed that the parties had no agreement concerning the term during which Plaintiff would perform services for any Defendant or the duration of any relationship.  *Id.* ¶ 37. When pressed concerning the duration of her purported agreement, Plaintiff testified:  "[w]e didn't have, like, a set contract."  *Id.*  And, when pressed further, Plaintiff testified:  "I mean, I don't know how long I would have worked there if the problems hadn't arisen.  I mean, probably not long because I don't think the property's doing well now, but I had planned to work there.  That's why I gave so much of my time."  *Id.*

On the undisputed record, there was no mutual assent regarding any essential term of the alleged agreement—specifically, (1) the services Plaintiff was required to perform in exchange for the purported $6,000 monthly payment; (2) the party responsible for making that payment; or (3) the duration of the arrangement.  The terms of the purported contract leave the following questions unanswered and unanswerable:

1. Was the $6,000 monthly payment strictly compensation for services rendered or did it include reimbursement amounts?

2. What services Plaintiff was required to perform in exchange for the purported $6,000 monthly payment?

3. With whom did Plaintiff contract?

4.  Who was responsible for making the $6,000 monthly payment?

5.  How was payment to be made?

6.  What was the duration of the contract?

7.  How may the contract be terminated?

The purported oral contract provides no answer to these questions. *See Soar*, 550 F.2d at 1290-91. As the First Circuit concluded in *Soar*, any agreement which leaves unanswered critical questions "cannot by any reasonable stretch of the imagination be said to represent a real meeting of the minds." *Id.* at 1290 (footnote omitted). Without these essential contract terms, there can be no meeting of the minds between the parties and no enforceable oral contract as a matter of law. *See McKay Consulting Inc.*, 452 F. App'x at 336.

The parties' subsequent dealings also cannot overcome the absence of such terms. Notably, although Plaintiff maintains that under her purported contract, she was entitled to $6,000 a month as compensation for her services and was, in fact, paid $6,000 a month beginning in December 2019, the undisputed evidence does not support that allegation. SUF ¶¶ 27-29. On December 8, 2019, PBH issued a check to the Ali McDaniel Agency in the amount of $6,000 for "consulting" services. *Id.* ¶ 32. Although the check was for $6,000, Plaintiff is uncertain whether the $6,000 was comprised exclusively of compensation for her services or whether it represented a lesser amount of compensation plus reimbursement for certain expenses. *Id.* ¶ 33. The only other time during the two years Plaintiff performed work at the Preserve that Plaintiff was paid $6,000 was on April 7, 2020. *Id.* ¶ 51. The parties' course of dealings falls far short of what would be necessary to overcome the absence of key contractual terms.

23

Plaintiff's claim for breach of contract, even if construed as a claim for breach of an oral contract for independent contractor services, fails as a matter of law because, based on the undisputed facts, the alleged terms are so indefinite that judicial enforcement is impossible.

### F.    Plaintiff may not proceed on an implied-in-fact contract theory.

Plaintiff's Second Amended Verified Complaint does not allege an implied-in-fact contract theory, nor is there any allegation in Plaintiff's Second Amended Verified Complaint from which the Court could infer such a theory.  However, in opposing Defendants' recent Motion for Reconsideration, Plaintiff claimed she could proceed on an implied-in-fact contract theory.  Mem. Law. Opp. Mot. Reconsideration at 14-15, ECF No. 98-1.  The undisputed material facts demonstrate that even if she had pled such a theory, which she has not, a contract cannot be implied here.

An implied-in-fact contract is one where "the elements of the contract are found in and determined from the relations of, and the communications between the parties, rather than from a single clearly expressed written document." *Marshall Contractors, Inc. v. Brown Univ.*, 692 A.2d 665, 669 (R.I. 1997).  "The difference between an express contract and an implied-in-fact contract is simply the manner by which the parties express their mutual assent." *Id*.  Importantly, "to be enforceable, an implied-in-fact contract 'must contain all [of] the elements of an express contract.'" *Cote v. Aiello*, 148 A.3d 537, 545 (R.I. 2016) (quoting *Bailey v. West*, 249 A.2d 414, 416 (R.I. 1969)).

The "essential elements of contracts 'implied in fact' are mutual agreement, and intent to promise, but the agreement and the promise have not been made in words and are implied from the facts." *Bailey*, 249 A.2d at 416.  "Although the doctrine of an implied-in-fact contract allows

24

for a wider evidentiary net to prove the formation of a contract, proof of the essential elements of a contract is nonetheless required." *Cote*, 148 A.3d at 545.

In *Cote*, for example, the Rhode Island Supreme Court determined that the record demonstrated an understanding between the parties that the plaintiff would eventually own the defendant's business, Richmond Ready-Mixx. *Id.* That understanding alone, however, was not sufficient to create an implied contract. *Id.* The evidence was that the parties did not discuss any essential terms of the agreement and the subsequent conduct of the parties did not cure that fatal defect. *Id.* at 543.

Here, as noted above, the conduct of the parties does not establish the key contract terms. For example, while Plaintiff claims to have an agreement pursuant to which she would be paid $6,000 monthly for some unspecified services, the undisputed material facts show that she was only paid $6,000 on two occasions during the two-year period she performed work at the Preserve. SUF ¶¶ 32, 51. And Plaintiff cannot confirm whether the $6,000 she received in one of those months was exclusively compensation for her services or whether it included reimbursement for certain expenses. *Id.* ¶ 33.

Moreover, it is undisputed that on August 3, 2020, Plaintiff sent a text message to Mr. Mihailides informing him that the amount due for her services was $4,350. *Id.* ¶ 56. That same day, PBH issued a check in the amount of $4,350 to Plaintiff. *Id.* ¶ 57. Plaintiff's communication to Mr. Mihailides, which reflects a total amount due of $4,350, cannot support her claim of an implied-in-fact contract for payment of $6,000 monthly for her services.

It is further undisputed that on the only occasion when Plaintiff issued an invoice for her services, she included an $8,000 charge for two months of service—September and October 2021—as well as further charges for reimbursement of her out-of-pocket expenses, totaling

25

$11,700.  *Id.* ¶ 81.[9]  Plaintiff's invoice, which reflected a charge of $4,000 per month for her services, also cannot support her claim of an implied-in-fact contract for payment of $6,000 monthly for her services.

Here, as *Cote* recognizes, even if the evidence demonstrates an understanding that Plaintiff would perform consulting services in exchange for payment, that understanding alone is not sufficient to create an implied contract.  The fact that PBH paid Plaintiff varying amounts on a monthly basis is incompatible with the existence of an implied contract for payment of $6,000 per month for some unspecified services.  Accordingly, summary judgment should enter in favor of PBH and PPMC on Plaintiff's breach of contract claim for this additional reason.

### III.    Without a contractual relationship between Plaintiff and Defendants, summary judgment must enter in favor of Defendants on Plaintiff's RICRA claims.

Because Plaintiff cannot demonstrate the existence of any contractual relationship—either for employment or independent contractor services—she cannot proceed with her RICRA claims, Counts VIII and IX, as a matter of law.

RICRA was modeled after 42 U.S.C. § 1981.  *See Doe v. Brown Univ.,* 253 A.3d 389, 396 (R.I. 2021).  It provides, in relevant part:

> **Discrimination prohibited.**
> (a) All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

---

[9]    Plaintiff later informed Mr. Mihailides that she was owed an additional $650, which PBH paid along with the amounts included on the October 19, 2021 invoice.  SUF ¶¶ 82-83.

> (b) For the purposes of this section, the right to "make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property" includes the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships.

R.I. Gen. Laws § 42-112-1(a)-(b).

The Rhode Island General Assembly enacted RICRA in response to the United States Supreme Court decision in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), just as Congress revised 42 U.S.C. § 1981 to overrule that same decision. *Ward v. City of Pawtucket Police Dep't*, 639 A.2d 1379, 1381 (R.I. 1994); *see Hammond v. Kmart Corp.,* 733 F.3d 360, 363 (1st Cir. 2013).

Following *Patterson*, Congress sought to "more broadly defin[e] the phrase 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts,' as well as 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Hammond,* 733 F.3d at 363 (quoting 42 U.S.C. § 1981(b)). However, the First Circuit stressed that "[e]ven with this broader definition, . . . Congress's focus on bar[ring] all racial discrimination *in contracts* did not change." *Id.* (emphasis in original). "[N]othing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for all racial injustice. If so, it would not have been limited to situations involving contracts." *Id.* (emphasis omitted). "As a result, courts interpreting the 1991 amendment," including the First Circuit, "have continued to require a 'sufficient nexus between the asserted discrimination *and some contractual right or relationship.*'" *Id.* (emphasis added) (quoting *Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir. 2002)). Thus, to state a claim, "a plaintiff must 'initially identify an impaired contractual

27

relationship . . . under which the plaintiff has rights.'" *Id.* at 364 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)).

The same is true with respect to RICRA, which has a similar origin.  RICRA imposes no liability absent a contractual relationship.  *J.L. v. William M. Davies Career & Tech. High Sch*., No. 24-cv-543-MRD-PAS, 2025 U.S. Dist. LEXIS 193017, at *18-19 (D.R.I. Sep. 30, 2025); *Ricci v. Rhode Island,* No. 1:20-cv-00543-MSM-PAS, 2023 U.S. Dist. LEXIS 125865, at *36 (D.R.I. July 21, 2023).

In *Ricci*, this Court observed that "[RICRA was] enacted to provide protection against discrimination in employment . . . RICRA expressly deal[s] with the subject of employment discrimination ...."  2023 U.S. Dist. LEXIS 125865 at *36 (quoting *Horn v. S. Union Co.,* 927 A.2d 292, 294-95 (R.I. 2007)).  RICRA "provides broad protection against all forms of discrimination in all phases of employment." *Id.* (citing *Ward,* 639 A.2d at 1381).  "[T]he two cases in which RICRA has been invoked in this Court outside of an employment context have both been situations of contractual relationships." *Id.*  Those cases are *Liu v. Striuli*, 36 F. Supp. 2d 452, 469 (D.R.I. 1999), which concerned the alleged sexual harassment of a student by a college professor where the student's relationship with the institution of higher education was contractual in nature, and *Doe v. Brown University*, 327 F. Supp. 3d 397, 414 (D.R.I. 2018) where a student sued a private university for disability discrimination.

But when there "[t]here is no contractual relationship between the parties here . . . the Court declines to assume a scope of RICRA which has not been endorsed by the Rhode Island Supreme Court." *Ricci*, 2023 U.S. Dist. LEXIS 125865 at *36-37.  In *J.L.*, this Court followed *Ricci* in rejecting a plaintiff's argument that she need not have a contractual relationship to proceed on her

RICRA claims and dismissing plaintiff's claims on that basis.  2025 U.S. Dist. LEXIS 193017, at *20-21.

Here, under RICRA and consistent with this Court's decisions in *Ricci* and *J.L.*, absent an impaired contractual relationship, Plaintiff cannot proceed on her RICRA claim as a matter of law.

Plaintiff's RICRA claims are premised entirely on her claim that she has an employment contract.  The allegations in Counts VIII and IX make this crystal clear:

> 280.    The harassment was sufficiently severe or pervasive so as to alter the conditions of McDaniel's ***employment*** and create an abusive working environment.

> 282.    Mihailides' discriminatory acts towards McDaniel occurred with such frequency and repetition that they were not discrete and isolated, but rather, the discriminatory acts were continuous such that they collectively constitute one unlawful ***employment*** practice.

> 283.    Miahilides' harassment of McDaniel occurred up until the time of her ***constructive discharge***.

> 284.    Because Mihailides is the owner of The Preserve, and upon information and belief, the sole member or majority member of Defendants Preserve Property Management Company and The Preserve at Boulder Hills – entities that served as McDaniel's ***employer*** – thereby having the power and authority to control both entities, Mihailides is an individual sufficiently senior in each entity such that he is the proxy of each defendant.

> 288.    Mihailides' conduct as described above interfered with the benefits, terms, and conditions of the ***employment relationship*** between McDaniel and Defendants.

> 289.    At all times relevant to this matter, Mihailides also served as McDaniel's ***supervisor***.

> 290.    Mihailides['] sexual harassment of McDaniel was so severe and pervasive that it resulted in her ***constructive discharge***.

292.    Because McDaniel was ***constructively discharged*** as a result of Mihailides' conduct, she suffered a tangible ***employment*** action for which Defendants are strictly liable.

298.    Mihailides exerted significant control over the terms and conditions of McDaniel's ***employment***.

305.    Because Mihailides was McDaniel's direct ***supervisor***, and he took actions against her adversely affecting her ***employment*** because she refused his sexual advances, Defendants are strictly liable for Mihailides' actions.

307.    Mihailides' conduct as described above interfered with the benefits, terms, and conditions of the ***employment relationship*** between McDaniel and Defendants.

Second Am. Verified Compl. ¶¶ 280, 282-84, 288-90, 292, 298, 305, 307 (emphases added).  In addition to her specific reference to an employment relationship, Plaintiff claims that Mr. Mihailides served as her "supervisor" and that she was "constructively discharged," further confirm her intent to proceed based on an alleged contract for employment.

The doctrine of constructive discharge, rooted in employment law, presupposes an employer-employee relationship.  *Green v. Brennan*, 578 U.S. 547, 555 (2016) ("The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee[.]"); *see also Diamond v. Triller Grp., Inc.*, 2025 U.S. Dist. LEXIS 146959, at *22-23 (S.D.N.Y. July 31, 2025) ("'[C]onstructive discharge requires deliberate action by *an employer*' and cannot prevail '[w]ithout an employer-employee relationship.'" (quoting *Toledo v. Brend Restoration, LLC*, No. 21 Civ. 882, 2023 U.S. Dist. LEXIS 83292, at *9 (S.D.N.Y. May 11, 2023))); *Multi-Juice, S.A. v. Snapple Bev. Corp.*, No. 2 Civ. 4635, 2003 U.S. Dist. LEXIS 7040, at *10 (S.D.N.Y. Apr. 25, 2003) ("Because no employment relationship between Snapple and Multi-Juice exists in this case, Plaintiff's constructive termination claim is invalid and consequently dismissed.").  Likewise, because in an employment relationship, the employer has

30

the right of control, the role of a supervisor is more consistent with that of an employment relationship than that of an independent contractor.

Because this Court has already determined that the evidence does not support Plaintiff's assertion that she was an employee with a contract for employment, Plaintiff's RICRA claims—which require the existence of a contract—are foreclosed as a matter of law. The claims cannot stand when premised on a contractual relationship the Court has explicitly found lacking.

Moreover, as addressed in Subsection C. *supra*, Plaintiff's own verified pleadings unambiguously preclude any finding that she had a contractual relationship for independent contractor services. The undisputed material facts reinforce this: there is no evidence of any such contract, written, oral, or implied. Accordingly, summary judgment should be entered for Defendants on Counts VIII and IX—Plaintiff's RICRA claims—because they are unsupported by either the law or the factual record.

### IV.    Summary judgment should enter in favor of PPMC on Count VI of Plaintiff's Second Amended Verified Complaint.

Count VI of Plaintiff's Second Amended Verified Complaint alleged that Defendants PBH and PPMC violated of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7(5) ("FEPA") by engaging in prohibited retaliation. This Court has already granted summary judgment on this count in favor of PBH because it is not a "covered employer." *See* Mem. & Order at 2-3, 6-8, ECF No. 88. The Court, however, denied PPMC's motion for summary judgment on this count, finding that (1) FEPA's anti-retaliation provision extends protection to independent contractors, and (2) Plaintiff's allegation that PPMC filed a criminal complaint against her in December 2023, after she filed a charge of discrimination and this lawsuit, was actionable under FEPA. *Id*. at 2, 8-10. Even so, Plaintiff's retaliation claim is barred by the *Noerr-*

*Pennington* doctrine. And, even if it were not, it could not constitute an adverse employment action.

### A.    The undisputed material facts demonstrate that PPMC is immune from liability for retaliation under the Noerr-Pennington doctrine.

Plaintiff's retaliation claim against PPMC is premised on her allegation that PPMC made a criminal complaint against her in December 2023. However, PPMC's report to the Dallas Police Department constitutes a legitimate exercise of its right to petition the government for redress for violation of its property rights and is therefore protected by the *Noerr-Pennington* doctrine.

The "rights to assemble peaceably and to petition for a redress for grievances are among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). The *Noerr-Pennington* doctrine "protect[s] a litigant's constitutional right to petition the government for redress." *Alifax Holding SPA v. Alcor Sci. Inc.*, No. CV 14-440, 2019 WL 13091790, at *11 (D.R.I. Mar. 26, 2019). "[T]he essence of the *Noerr–Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." *Id.* (quoting *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006 (9th Cir. 2008)).

Although first developed in the antitrust context, "*Noerr-Pennington* immunity has a broad 'constitutional foundation.'" *Id.* (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)); *see also Pound Hill Corp. v. Perl*, 668 A.2d 1260, 1263 (R.I. 1996) (recognizing that *Noerr-Pennington* "is based upon the First Amendment right to petition the government for redress of grievances"). Because of its federal constitutional roots, the rule "take[s] precedence over common-law tort doctrines" and statutory causes of action. *Hometown Props., Inc. v. Fleming*, 680 A.2d 56, 60 (R.I. 1996) (quoting *Cove Rd. Dev. v. West Cranston Indus. Park Assocs.*, 674

32

A.2d 1234, 1239 (R.I. 1996)); *see also Tomaiolo v. Mallinoff*, 281 F.3d 1, 11 n.9 (1st Cir. 2002) (recognizing that *Noerr-Pennington* originated in the law of antitrust but that "courts have extended it to other federal statutes that provide causes of action so broad as potentially to chill the constitutionally protected right to petition the government").

*Noerr-Pennington* immunity has therefore been applied in a range of legal contexts, including employment law. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743-44 (1983) (applying the doctrine in the labor relations context); *see also Lesane v. Hawaiian Airlines, Inc.*, No. 19-00179 JAO-KJM, 2020 U.S. Dist. LEXIS 38981, at *14-16 (D. Haw. Mar. 6, 2020) (Title VII and section 1981 retaliation claims); *Johnson v. United Airlines, Inc.*, Case No. 12-cv-02730-VC, 2016 U.S. Dist. LEXIS 88349, at *14 (N.D. Cal. July 6, 2016) (retaliation claims under section 1981, Title VII, and FEHA); *Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179-MMM (JEM), 2014 U.S. Dist. LEXIS 181128, at *28-29 (C.D. Cal. Jan. 23, 2015) (retaliation claim under section 1983); *Ungureanu v. A. Teichert & Son*, No. 11 Civ. 316(LKK), 2012 U.S. Dist. LEXIS 46440, at *18 (E.D. Cal. Apr. 2, 2012) (Title VII retaliation claim); *Nazir v. United Air Lines*, No. CV 09-01819 CRB, 2009 U.S. Dist. LEXIS 81901, *6, *8-9 (N.D. Cal. Sept. 9, 2009) (Title VII and section 1983 retaliation claims); *Thomas v. Housing Auth. of Cnty of L.A.*, 2005 U.S. Dist. LEXIS 46426, at *31-32 (C.D. Cal. 2005) (Federal Housing Act and California Fair Employment and Housing Act context). In light of this authority, *Noerr-Pennington* immunity likewise applies to Plaintiff's FEPA retaliation claim.

Plaintiff's FEPA retaliation claim against PBH and PPMC is premised on petitioning activity that *Noerr-Pennington* immunity protects.

The *Noerr-Pennington* doctrine protects petitions directed at "all departments of the Government." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

This includes citizen communications with police. *Venetian Casino Resort, L.L.C. v. NLRB*, 793 F.3d 85, 90 (D.C. Cir. 2015); *Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*, 756 F.2d 986, 993-94 (4th Cir. 1985); *Forro Precision, Inc. v. Int'l Bus. Machs. Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982); *see also NM LLC v. Keller*, No. 3:24-cv-05181-TMC, 2024 U.S. Dist. LEXIS 176018, at *15-16 (W.D. Wash. Sep. 27, 2024) (allegations that defendants tried to persuade the Washington Department of Fish and Wildlife to initiate administrative or criminal proceedings against plaintiffs were protected petitioning activity).   "[I]t would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information." *Forro Precision, Inc.*, 673 F.2d at 1060.

In *Venetian Casino Resort, L.L.C.*, the D.C. Circuit distinguished between reporting unlawful conduct regarding a property right (trespass) to law enforcement and reporting individuals to immigration enforcement; the former being amenable to *Noerr-Penington* immunity because the employer is seeking redress of any wrongs committed against it.  793 F.3d at 90.  The court held that "[w]here employers assert a private property right and ask the police to enforce that right against demonstrators, employers are seeking 'redress of . . . wrongs committed against them[.]'"  *Id.* at 92 (quoting *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 897 (1984)).

The undisputed facts here fit squarely within this rule.  Plaintiff claims that she was retaliated against when "Defendants filed a criminal complaint against her on December 4, 2023 alleging crimes of extortion, computer trespass, computer theft, cyberstalking, and forgery."  SUF ¶ 102.  PBH and PPMC's assertion of these private property rights seeks redress of wrongs committed against them.  As *Venetian Casino Resort, L.L.C.* recognizes, these are petitioning activities entitled to *Noerr-Pennington* immunity.

**B.    Plaintiff has neither plausibly pled, nor carried her evidentiary burden of demonstrating an exception to *Noerr-Pennington* immunity applies.**

*Noerr-Pennington* immunity gives way only if a plaintiff can demonstrate that the petitioning activity is both objectively and subjectively baseless. Plaintiff cannot carry that burden based on either her pleadings or the undisputed material facts here.

The *Noerr-Pennington* doctrine protects genuine petitioning activity and is pierced only where conduct is not truly intended to influence government action. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009). To invoke the sham exception to *Noerr-Pennington* immunity, the petitioning activity "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro. Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). Only if the challenged activity is objectively meritless may a court then examine the petitioner's subjective motivation. *Id.* To "qualify for the sham litigation exception to *Noerr-Pennington*, a complaint must contain well-pleaded allegations that plausibly allege" the elements of the sham exception. *Reed-Bey v. Bingyan Guo*, No. 2:25-cv-01880-DAD-CKD(PS), 2025 U.S. Dist. LEXIS 184618, at *10-11 (E.D. Cal. Sep. 18, 2025); *accord Mobile Pixels, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Civil Action No. 23-cv-12587-ADB, 2024 U.S. Dist. LEXIS 126780, at *22 (D. Mass. July 18, 2024); *Picone v. Shire PLC*, Civil Action No. 16-cv-12396-ADB, 2017 U.S. Dist. LEXIS 178150, at *17 (D. Mass. Oct. 20, 2017).

Here, Plaintiff cannot make it past the threshold inquiry of objective baselessness. Her Second Amended Verified Complaint offers nothing but the conclusory label "baseless," without supporting facts. SUF ¶ 103. But a complaint must do more than allege mere "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Beyond Plaintiff's pleading failures, the record evidence forecloses any finding of objective baselessness. The December 2023 incident report was prepared and submitted by Jennifer L. Falk, Esq., a partner with McCathern, PLLC and backed by a letter from Attorney Folk detailing the nature of the underlying incidents, the evidence in support thereof, including a witness statement, and the specific statutory violations.

Attorney Folk's letter dated October 3, 2023 detailed how, on or about December 29, 2021, the Preserve learned that a laptop and three-terabyte external hard drive containing data, digital photos, digital videos, and other files belonging to the Preserve were missing. SUF ¶¶ 107-09. Attorney Folk's letter describes the sustained efforts by the Preserve to obtain those devices back from Plaintiff, Plaintiff's lack of response to the initial inquiries made of her, and her escalating demands for payment—first $50,000 and then $100,000—to return the property. *Id.* Attorney Folk's letter attached the demand letter sent to Plaintiff in January 2022, which closed by informing her that unless she responded, legal action would follow. *Id.*

Attorney Folk's letter also detailed the facts substantiating their claim that Plaintiff canceled the Preserve's Instagram account, buttressed by a witness statement from Lindsey Evans regarding her successful restoration of access through assistance provided by Meta. *Id.* Attorney Folk's letter also provided an image of a check issued by PBH to Plaintiff with a Pay to the Order line that read: "Alison McDaniel Agency," as well as an image of the canceled version of that check showing a strikeout of the word "Agency," purportedly initialed by Mr. Mihailides, thereby creating the appearance of a check made to her personally. *Id.*

36

Attorney Folk's letter maps these facts to relevant provisions of the Texas Penal Code, articulating concrete grounds for criminal violations tied to Plaintiff's conduct. Because the Preserve reported one or more incidents that can give rise to a criminal violation, its incident report cannot be characterized as objectively baseless. Plaintiff's allegations, devoid of factual support and refuted by the record, are insufficient for her to overcome *Noerr-Pennington* immunity.

     **C.**    **Even if the incident report was objectively baseless, the undisputed material facts demonstrate Plaintiff suffered no materially adverse action.**

Even assuming, arguendo, that Plaintiff could establish the incident report to be objectively baseless, the undisputed material facts preclude any finding that she suffered the type of materially adverse action necessary to sustain her FEPA retaliation claim.

To make out a prima facie case for retaliation, a plaintiff "must show that '(1) []he engaged in protected activity; (2) []he suffered some materially adverse action; and (3) the adverse action was causally linked to [his] protected activity.'" *Dunbar v. Providence Coll.*, No. 24-251 WES, 2025 U.S. Dist. LEXIS 114086, at *16 (D.R.I. June 16, 2025) (quoting *Stratton v. Bentley Univ.*, 113 F.4th at 25, 41-42 (1st Cir. 2024)).

Plaintiff's claim for retaliation based on the filing of the incident report with the Dallas Police Department was not pled in her original Verified Complaint. *See generally* Verified Compl., ECF No. 1. When Plaintiff sought leave to amend, Defendants opposed that motion, arguing that Plaintiff had not plausibly alleged a materially adverse action. Defs.' Obj. Mot. for Leave to Am. at 31-35, ECF No. 37. Plaintiff failed to allege, and cannot now show, that the non-public incident report resulted in any investigation, criminal charges, trial, or that the report was made public. Defendants argued this absence made it implausible that the mere filing of an

incident report could conceivably damage Plaintiff's reputation, erect obstacles to her future employment, or otherwise tangibly affect her career. *Id.*

To support their arguments, Defendants relied on the Tenth Circuit's decision in *Dick v. Phone Directories Co.*, 397 F.3d 1256 (10th Cir. 2005) and its progeny. In *Dick*, the Tenth Circuit recognized that while "[f]iling false criminal charges against, or the malicious prosecution of, an employee can constitute an adverse employment action," making a complaint to the police, which results in a police report is insufficient to make out a prima facie claim for retaliation. *Id.* at 1269 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)). There, the plaintiff's coworkers made a complaint against her to the police, allegedly at a supervisor's direction, which resulted in a police report. *Id.* at 1269. There was no evidence that the matter persisted beyond the filing of the report. *Id.* Thus, "the police report describing alleged incidents involving [the plaintiff did] not 'carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.'" *Id.* (quoting *Berry*, 74 F.3d at 986).

Accordingly, the court concluded that the police report could not be considered an adverse employment action. *Id.*; *see also Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018) (recognizing that "the fact that the investigation had a 'criminal' aspect does not necessarily create an adverse employment action"); *Bird v. Regents of N.M. State Univ.*, No. CIV 08-851 WJ/RHS, 2013 WL 11324809, at *10 (D.N.M. July 2, 2013) (recognizing that "[t]here is no adverse employment action . . . where [an allegedly false] complaint results in a police report but no formal charges, and there is no evidence that the matter persisted beyond the filing of the report" and concluding that plaintiff had not made out a prima facie case for retaliation where there was no evidence that the plaintiff was arrested by the police or that the matter persisted to the point that it "'carr[ied] a significant risk of humiliation, damage to reputation, and a concomitant harm to future

employment prospects'" (quoting *Dick*, 397 F.3d at 1269)), *aff'd*, 619 F. App'x 733 (10th Cir. 2015); *Davidson-Nadwodny v. Wal-Mart Assocs.*, Civil Action No. CCB-07-2595, 2010 U.S. Dist. LEXIS 29165, at *23-25 n.6 (D. Md. Mar. 26, 2010) (concluding that Wal-Mart's allegation that an employee accepted a counterfeit check did not rise to the level of a materially adverse action because the charge was never pursued internally or with any law enforcement agencies).

Relying on *Dick*, other courts have recognized that "the initiation of a criminal investigation may, under certain circumstances, constitute an adverse action sufficient to state a plausible claim of retaliation, but it must include some degree of concrete—not speculative—harm to reputation or future employment prospects." *Martley v. Basehor*, 537 F. Supp. 3d 1260, 1266 (D. Kan. 2021). Accordingly, a complaint is subject to dismissal when it fails to allege that the filing of an incident report has given rise to some concrete—not speculative—harm to reputation of future employment prospects. *Id*. at 1266-67 (granting motion to dismiss claim of retaliation where the plaintiff's complaint alleged that law enforcement contacted him and informed him that he was under criminal investigation but did not allege whether charges were ever filed, whether plaintiff ever faced trial or whether the investigation or allegations were made public and rejecting plaintiff's conclusory statement that the retaliatory acts caused plaintiff "to suffer damages" because there were no facts explaining how); *see also Wyckoff v. Maryland*, 522 F. Supp. 2d 730, 736 (D. Md. 2007) (granting motion to dismiss where plaintiff's allegations failed to show that her employer's filing of an administrative charge against her for damaging a vehicle amounted to a materially adverse action because she never explained how the charge was resolved or whether it affected her employment).

In ruling on Plaintiff's motion for leave to amend, this Court recognized the holding in *Dick*, but focused on the fact that it involved the plaintiff's appeal of summary judgment. Mem.

39

& Order at 16, ECF No. 42.  The court found, at the pleadings stage, that Plaintiff's proposed

amendment was not futile and granted Plaintiff leave to amend.  *Id.* at 17.  When it did so, it

recognized that, at the pleading stage:

> It is hard to imagine McDaniel would know whether the investigation is complete, whether there is still a risk of being arrested, or whether the allegations will go public.  Given this, she plausibly alleges that Defendants' criminal incident report has "sullied [her] reputation in the community and created obstacles in obtaining employment in her field, thereby negatively affecting her tangible future employment obstacles and adversely impacting her employment prospects."

*Id*. at 17-18 (quoting Proposed Second Am. Verified Compl.  ¶ 223, ECF No. 35-1).

Now, on summary judgment, the record is devoid of any evidence that the incident report

was made public, used as the basis for criminal charges, communicated by anyone other than

Plaintiff, or otherwise triggered any event giving rise to concrete reputational or employment-

related injury.  Plaintiff admits that she has "no idea" whether the incident report was ever made

public.  SUF ¶ 110.  Plaintiff cannot identify a single person outside her own chosen audience who

learned of the report, and acknowledges that her only discussions about the incident were with

individuals she herself told.  *Id.* ¶¶ 111-13.  That Plaintiff chose to communicate the existence of

the report to others does not transform it into a materially adverse action attributable to PPMC.

Accordingly, as in *Dick* and its progeny, where the facts confirm no concrete harm

stemming from the purportedly retaliatory act, Plaintiff fails as a matter of law to establish a

materially adverse action under FEPA.  The undisputed evidence forecloses any causal link

between the report and Plaintiff's employment prospects, reputation, or other protected right.[10]  For

---

[10]    If Plaintiff's reputation as an actress has been damaged, it is only because this case has revealed that she has virtually no acting career to speak of, not because of any alleged retaliation.

these additional reasons, summary judgment should enter in favor of PPMC on Count VI of Plaintiff's Second Amended Complaint.

**V.      Summary judgment should enter in favor of Mr. Mihailides on Count XIII, battery.**

Count XIII of Plaintiff's Second Amended Verified Complaint purports to state a claim for battery but Plaintiff's statements under oath are internally inconsistent and contradictory and cannot be credited on summary judgment.

On December 9, 2022, Plaintiff signed a Charge of Discrimination under the pains and penalties of perjury and submitted it to the EEOC. SUF ¶ 114. She claimed, under oath, that:

> 05/31/2021 – Mr. Mihailides told guests I was his mistress. Also, he ***tried to kiss me*** multiple times in the mouth, and he talked about my body.

> 09/14/2021 – Mr. Mihailides told me that he loved me and ***tried to kiss me*** in the mouth.

SUF ¶ 115 (emphasis added). Notably, Plaintiff's Charge of Discrimination did not allege that Mr. Mihailides had succeeded in kissing her or that he had attempted to or actually touched her buttocks, her leg or upper thigh, or face. *Id*. ¶ 116.

Then, on July 11, 2023, Plaintiff filed her Verified Complaint in this case, alleging:

> 42.     Also, Mihailides would not stop hanging on McDaniel's body and ***tried to kiss her*** on the mouth multiple times.

> 53.     On or about August 20, 2021, during the filming of a photo shoot, Mihailides ***attempted to touch*** McDaniel's buttocks.

> 58.     On September 14, 2021, Mihailides told McDaniel that he loved her and ***tried to kiss*** her on the mouth.

> 66.     On October 9, 2021, Mihailides ***tried to kiss*** McDaniel on the mouth three times.

> 76.    On December 19, 2021, when McDaniel left The Preserve, Mihailides *tried to kiss* her on the mouth.

> 109.    During [a] ride from the train station to The Preserve, Mihailides *tried to hold McDaniel's hand and touch her thigh* which made her very uncomfortable.

> 113.    Every time McDaniel was on The Preserve property, Mihailides would *attempt to kiss* her on the mouth, hug her, and hold her hand.

*Id.* ¶ 118 (emphases added).  Notably, however, Plaintiff's Verified Complaint did not allege that Mr. Mihailides had succeeded in kissing her or that he had attempted to or actually touched her buttocks, leg, upper thigh or face.  *Id.* ¶ 119.  Plaintiff's Verified Complaint also did not allege a claim for battery.  *Id.* ¶ 120.

On July 19, 2023, Plaintiff filed her Amended Verified Complaint, adding a claim for civil battery.  Plaintiff incorporated by reference each of the foregoing factual allegations into that count and further alleged that "[o]n many occasions, Mihailides touched McDaniel's body, including her buttocks, without her consent."  *Id.* ¶ 123.

On August 31, 2023, Plaintiff filed her Rule 16 statement.  *Id.* ¶ 124.  In it she explained that Mr. Mihailides had "*attempt[ed] to kiss* her on the mouth."  *Id.* ¶ 125 (emphasis added).  She further explained:

> •    On or about August 20, 2021, during the filming of a photo shoot, Mihailides *attempted to touch* McDaniel's buttocks.

> •    On September 14, 2021, Mihailides told McDaniel that he loved her and *tried to kiss* her on the mouth.

> •    On October 9, 2021, Mihailides *tried to kiss* McDaniel on the mouth three times.

> •    On December 19, 2021, when McDaniel left The Preserve, Mihailides *tried to kiss* her on the mouth.

42

- Every time McDaniel was on The Preserve property, Mihailides would ***attempt to kiss*** her on the mouth, hug her, and hold her hand.

*Id.* ¶ 126 (emphasis added). She made no reference, however, to any actual touching of her buttocks, leg, upper thigh or face. *Id.* ¶ 127.

On November 8, 2023, Plaintiff submitted a second Charge of Discrimination to the EEOC.

*Id.* ¶ 128. In it, Plaintiff claimed, again under oath:

- On or about August 20, 2021, during the filming of a photo shoot, Mihailides ***attempted to touch*** McDaniel's buttocks.

- On September 14, 2021, Mihailides told McDaniel that he loved her and ***tried to kiss her*** on the mouth.

- On October 9, 2021, Mihailides ***tried to kiss*** McDaniel on the mouth three times.

- On December 19, 2021, when McDaniel left The Preserve, Mihailides ***tried to kiss*** her on the mouth.

- Every time McDaniel was on The Preserve property, Mihailides would ***attempt to kiss*** her on the mouth, hug her, and hold her hand.

*Id.* ¶ 129 (emphases added). She made no reference, however, to any actual touching of her buttocks, leg, upper thigh or face. *Id.* ¶ 130.

On March 21, 2024, Plaintiff filed her Second Amended Verified Complaint. *Id.* ¶ 131. As with her Amended Verified Complaint, Plaintiff's Second Amended Verified Complaint incorporated by reference each of the factual allegations contained in her Verified Complaint into her count for battery and further alleged that "[o]n many occasions, Mihailides touched McDaniel's body, including her buttocks, without her consent." Second Am. Verified Compl. ¶¶ 331-32.

On May 13, 2024, Plaintiff testified at the second day of her deposition. This time she stated under oath that Mr. Mihailides "touched [her] buttocks." SUF ¶ 133. She further testified: "He touched my leg multiple times. When we were riding together, he would put his hand – ***try to put his hand*** high up on my thigh. He ***tried to kiss*** me multiple times." *Id.* (emphasis added). When pressed about the difference between an attempt and an actual touching, Plaintiff stated for the first time under oath that when Mr. Mihailides ***attempted to kiss*** her on the mouth, he touched her face. *Id.*

After Plaintiff's deposition and in connection with her opposition to Defendants' Motion for Partial Summary Judgment, Plaintiff came forth with an affidavit which, reverting to her prior statements under oath, swore under the penalty of perjury that:

> 14. Also, Mihailides would not stop hanging on my body and ***tried to kiss me*** on the mouth multiple times.

> 24. On or about August 20, 2021, during the filming of a photo shoot, Mihailides ***attempted to touch*** my buttocks.

> 38. On October 9, 2021, Mihailides ***tried to kiss me*** on the mouth three times.

> 48. On December 19, 2021, when I left The Preserve, Mihailides ***tried to kiss me*** on the mouth.

> 81. During the ride from the train station to The Preserve, Mihailides ***tried to hold my hand and touch my thigh*** which made me very uncomfortable.

> 85. Every time I was on the Preserve property, Mihailides would ***attempt to kiss me*** on the mouth, hug me, and hold my hand.

> 109. On December 19, 2021, the last day I was ever at The Preserve, Mihailides ***tried to kiss me*** on the mouth.

*Id.* ¶ 135 (emphases added). Additionally, in discovery, Plaintiff produced a handwritten calendar and journal where she detailed the occurrences she later alleged in her complaint. *Id.* ¶ 136. Her

44

calendar entries are consistent with her original assertions of attempted contact and the affirmations made in her latest affidavit. They include the following:

> June 31, 2021: "Paul told multiple guest [sic] that I was his mistress. Would not stop hanging on me & ***trying to kiss*** my mouth." *Id.* ¶ 137 (emphasis added).

> August 20, 2021: ". . . During filming he ***tried to touch my butt***." *Id*. ¶ 138 (emphasis added).

> October 9, 2021: "Paul ***tried to kiss me*** 3 times." *Id.* ¶ 139 (emphasis added).

> December 19, 2021: "left Preserve & Paul ***tried to kiss me on the mouth***." *Id.* ¶ 140 (emphasis added).

In her journal, Plaintiff wrote:

> Paul picked me up from the train station which I was surprised by because I was expecting someone from the property to pick me up. When I get in the car he told me how hot I was. He ***tried to hold my hand & touch my leg*** during our drive to the Preserve.

> Everytime I was on property Paul would ***try to kiss me*** on the mouth.

*Id.* ¶ 141 (emphasis added).

### A. Plaintiff cannot make out a claim for battery based on attempted touching.

Summary judgment should enter in favor of Mr. Mihailides to the extent that Plaintiff's battery claim rests on allegations of attempted—but not consummated—contact.

It is black-letter law that a battery requires an offensive contact with or unconsented touching of another. *Proffitt v. Ricci*, 463 A.2d 514, 517 (R.I. 1983) (defining battery as "an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the

assault"). An attempt to commit a battery is not a battery. *See United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017).

Plaintiff's sworn statements establish that much, if not all, of the alleged conduct constituted only attempts or efforts to make physical contact. Actual, unconsented touching is required to sustain a claim of battery. Unfulfilled attempts at contact cannot for the basis of a claim for battery. Accordingly, at a minimum, the Court should rule that Plaintiff cannot proceed on her battery claim based on unfulfilled attempts at contact.

>    **B.     This Court cannot credit Plaintiff's deposition testimony where it is inconsistent with the documentary evidence and Plaintiff's statements under oath both before and after her deposition.**

Plaintiff's deposition testimony that Mr. Mihailides actually touched her buttocks, upper thigh and face, cannot be credited given it is directly inconsistent with Plaintiff's own sworn statements made both before and after her deposition and the documentary evidence, all of which repeatedly alleged that Mr. Mihailides only *tried to* kiss her, *attempted* to touch her buttocks and *tried* to touch her thigh.

When a witness's story itself is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it," it cannot be used to create a genuine issue of material fact on summary judgment. *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 819 (7th Cir. 2016); *In re Asbestos Prods. Liab. Litig.*, 578 F. App'x 160, 162 (3d Cir. 2014) (affirming grant of summary judgment, finding that no reasonable jury could credit the plaintiff's internally inconsistent deposition testimony and return a verdict in his favor); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554-55 (2d Cir. 2005) (where there is no corroborating evidence and plaintiff's claim is premised solely on his own testimony which is inconsistent with and contradicts plaintiff's affidavits, the court may pierce the veil of the complaint's factual allegations and dismiss the claim); *United States v.*

46

*Davis*, 809 F.2d 1509, 1513 (11th Cir. 1987) (noting that where the testimony is "so fantastic, so internally inconsistent, or so speculative that it had no probative value," the district court may grant summary judgment).  As the Second Circuit recognized in *Jeffreys*:

> While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

426 F.3d at 554.  This is precisely such a case.

Here, Plaintiff's shifting narrative is not merely inconsistent—it is irreconcilable.  In her contemporaneous calendar notes and journal entries, Plaintiff detailed only attempted contact, not any actual touching of her buttocks or thigh or face.  SUF ¶¶ 136-41.  Then, in her first EEOC Complaint, Plaintiff failed even to allege any attempted or completed touching of her buttocks or thigh, referencing only an attempt to kiss her.  *Id.* ¶¶ 115-16.  Her Verified Complaint similarly limited its claims to attempts, not actual contact.  *Id.* ¶¶ 118-20.  Although her Amended Verified Complaint asserted actual nonconsensual touching, Plaintiff's subsequently filed Rule 16 statement and her second EEOC Complaint reverted to alleging only attempts, omitting any claim of actual physical contact.  *Id.* ¶¶ 124-30.   This pattern continued when, *over three months after her second day of deposition*, Plaintiff came forward with yet another affidavit, this time claiming only that Mr. Mihailides *tried* to kiss her, *attempted* to touch her buttocks, and *tried* to touch her thigh.  *Id.* ¶¶ 134-35.

Plaintiff's ever-shifting story is riddled with so many internally inconsistencies that a reasonable factfinder would not credit it.  Her fundamental inability to maintain a consistent, sworn

narrative about the core facts of her claim precludes any reasonable jury from believing her version of the events. The record, therefore, contains no genuine issue of material fact and summary judgment should enter in favor of Mr. Mihailides on the entirety of Plaintiff's battery claim.

### C. Dismissal of Plaintiff's battery claim is warranted to remedy a fraud on the court.

In the alternative, Plaintiff's battery claim should be dismissed to remedy her fraud on the court. The First Circuit has long recognized district courts' considerable latitude in dealing with serious abuses of the judicial process. *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). It is "elementary that a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." *Id*.

A fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id*. While fraud on the court may take "many forms," fabrication of evidence and claims is well within the type of conduct that can give rise to a finding of fraud on the court. *Id*.

Here, Plaintiff's contemporaneous calendar entries, her first EEOC Complaint, her Verified Complaint and her Rule 16 Statement detailed only attempted contact, not battery. It was not until Defendants demanded dismissal of the Verified Complaint that Plaintiff amended her complaint to plead claims exclusively against Mr. Mihailides, including a claim for battery, adding not to her factual recitation, but to her recital of the elements of a claim for battery, that there was actual contact, not just attempted contact. The allegation in her Amended Verified Complaint and her Second Amended Verified Complaint that there was actual contact is supported only by

Plaintiff's self-serving deposition testimony, which she appears to have later walked back in her affidavit in opposition to Defendants' Motion for Partial Summary Judgment, reverting to her original account of mere attempted, not actual, contact.

Such conduct constitutes precisely the fraud on the court that warrants dismissal. Where, as here, "a litigant has stooped to the level of fraud on the court," dismissal is warranted. *Id.* at 1119. A dismissal in such circumstances need not be preceded by other, less drastic sanctions. *Id.* at 1118. Dismissal serves to protect the integrity of the Court's proceedings. *Id.* at 1119. As the First Circuit recognized in *Aoude*, when a litigant is caught playing "fast and loose" with the Court, such conduct merits an extreme sanction. *Id.* at 1122. A court, "jealous of its integrity and concerned about deterrence, [is] entitled to send a message, loud and clear." *Id.* If this Court is concerned that Plaintiff's version of events changes to suit her litigation needs, it should send a message, loud and clear, that such conduct is intolerable.

For this alternative reason, Plaintiff's battery claim should be dismissed.

### D.    Plaintiff cannot recover any economic damages on Count XIII.

Plaintiff claims she suffered harm as a result of the alleged battery described in Count XIII of her Second Amended Verified Complaint; however, no such harm includes any economic damages whatsoever.

While economic damages are theoretically recoverable in tort actions for battery (typically expenses for medical treatment or therapy) the undisputed material facts establish that Plaintiff has not sought care from any medical provider or mental health professional for distress, anxiety, fear, depression, or any other condition allegedly resulting from the alleged battery. SUF ¶ 142.

In circumstances such as this, where a plaintiff confirms that she has not received any medical treatment and comes forward with no bills or receipts for medical expenses incurred, she

49

has failed to prove economic loss caused by a battery. *See Moncion v. Lyons*, 187 N.Y.S.3d 581 (N.Y. Civ. Ct. 2023).

Since Plaintiff has not incurred any financial loss relating to the alleged battery, she is barred from recovering economic damages under Count XIII of Plaintiff's Second Amended Verified Complaint.

### E.    Plaintiff cannot recover punitive damages on Count XIII.

If this Court determines that any portion of Count XIII survives summary judgment, which, based on the record, it should not, it should rule that Plaintiff is barred from recovering punitive damages on any portion that remains.

The Rhode Island Supreme Court "consistently has looked askance at punitive damages except in egregious circumstances." *Fenwick v. Oberman*, 847 A.2d 852, 854 (R.I. 2004). "Punitive damages are appropriate only in the rare circumstances when 'a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages.'" *Id.* (quoting *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I. 1993)). A party seeking punitive damages must produce "'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amounts to criminality' that should be punished." *Bourque v. Stop & Shop Cos., Inc.*, 814 A.2d 320, 326 (R.I. 2003) (per curiam) (quoting *Mark v. Congregation Mishkon Tefiloh*, 745 A.2d 777, 779 (R.I. 2000)).

*Fenwick* confirms that not all civil battery claims justify a punitive damages instruction. 847 A.2d at 855 ("The fact that a battery may also be criminal in nature does not automatically require an instruction on punitive damages."). There, the trial justice found only that "defendant placed her hand over plaintiff's mouth during an office dispute," which fell well short of the degree of malice or recklessness required to sustain an award of punitive damages. *Id.* at 855-56.

50

Likewise, in *Picard v. Barry Pontiac-Buick, Inc*., 654 A.2d 690 (R.I. 1995), the Court rejected punitive damages because, although a battery was found, there was "no proof of malice or bad faith" on the part of the defendant. *Id.* at 696. There, the plaintiff alleged that the defendant lunged at her while she attempted to photograph him. *Id.* at 692. She testified that the defendant grabbed her around the shoulders, spun her around and then released her when someone said, "let her go." *Id.* The defendant denied touching the plaintiff, although he admitted that he attempted to touch her camera. *Id.* at 692, 694. Against that factual backdrop, the Court held that punitive damages were inappropriate because there was no evidence of malice or bad faith on the part of the defendant. *Id.* at 696.

Whether a party has presented evidence of conduct sufficient to meet this rigorous standard is a question of law. *Fenwick*, 847 A.2d at 855 (citing *Palmisano*, 624 A.2d at 318). The Court should make this determination now, where the record is devoid of any conduct that would give rise to punitive damages, to avoid unnecessary and invasive discovery into an issue that cannot, as a matter of law, reach a jury.[11]

No matter how Plaintiff's battery allegations are parsed, it is undisputed that Plaintiff suffered no physical injury as a result of any of the conduct alleged to constitute a battery. SUF ¶ 143. Even if Plaintiff's testimony about Mr. Mihailides touching her buttocks on a single occasion or touching her thigh or face is credited in full for summary judgment purposes, such conduct comes nowhere near the criminality that Rhode Island law demands for punitive damages.

These events were so unremarkable that Plaintiff failed to mention them anywhere meaningful: she did not record them in her calendar or journal (although she recorded attempted

---

[11]    Plaintiff has already expressed her interest in engaging in discovery on punitive damages.

contact), omitted them entirely from her initial EEOC complaint, neglected to allege them in her Verified Complaint, and made no reference to them in the affidavit recently submitted in opposition to Defendants' motion for partial summary judgment. The repeated absence of such claims from these accounts underscores their insignificance and further undermines her attempt to elevate it now.

The record is devoid of any evidence that could, under any reasonable interpretation, support a finding of malicious, wanton, or criminal conduct required for the imposition of punitive damages. Summary judgment should be entered in Defendant's favor on this issue, as a matter of law, to preclude Plaintiff from pursuing punitive damages on Count XIII.

## **CONCLUSION**

For the foregoing reasons, this Court should grant summary judgment in favor of PPMC on Count VI, in favor of PBH and PPMC on Counts VI-VII, in favor of PBH, PPMC and Mr. Mihailides on Count VIII-IX and in favor of Mr. Mihailides on Count XIII of Plaintiff Alison McDaniel's Second Amended Verified Complaint.

DEFENDANT/COUNTERCLAIM PLAINTIFFS
THE PRESERVE AT BOULDER HILLS, LLC
AND PAUL MIHAILIDES AND DEFENDANT
PRESERVE PROPERTY MANAGEMENT
COMPANY, LLC,
By their Attorneys:


/s/ Nicole J. Benjamin
John A. Tarantino (#2586)
jtarantino@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607
November 5, 2025


## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, I electronically served and filed *via the Electronic Court Filing (CM/ECF) system* a true copy of the within pleading on all counsel of record and it is available for viewing and downloading from the ECF system.

/s/ Nicole Benjamin