UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALISON MCDANIEL, :
:
    Plaintiff/Counterclaim Defendant :
:
v. : C.A. No.: 1:23-CV-00292-WES-
: LDA
PRESERVE PROPERTY MANAGEMENT :
COMPANY, LLC, THE PRESERVE AT BOULDER :
HILLS, LLC and PAUL MIHAILIDES, :
:
    Defendants/Counterclaim Plaintiffs. :

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Defendants The Preserve at Boulder Hills, LLC ("PBH"), Preserve Property Management Company, LLC ("PPMC"), and Paul Mihailides (collectively, "Defendants") submit this Response to Plaintiff's Statement of Undisputed Facts, ECF No. 109, for purposes of Defendants' Motion for Summary Judgment, ECF No. 100.

1. The Preserve Sporting Club & Residences is a luxury resort located in Richmond, Rhode Island.

    Evidence:    **ECF Doc. No 44 ¶17.**

    Defendants' Response:    Undisputed.

2. The Preserve Sporting Club & Residences is sometimes referred to as "The Preserve at Boulder Hills."

    Evidence:    **Mihailides R. 30(b)(6) Depo. Tr. at 12:19-23.**

    Defendants' Response:    Undisputed.

3. Defendant The Preserve at Boulder Hills, LLC ("PBH") is a Rhode Island limited liability company.

    Evidence:    **Ex. A.**

    Defendants' Response:    Undisputed.

4. Currently, PBH holds title to approximately 175 acres of land at The Preserve.

   Evidence:      **Milailides R. 30(b)(6) Depo. Tr. at 36:7-17.**

   Defendants' Response:      Undisputed.

5. PBH's business telephone number, (401) 539-0300, is directed virtually to Mihailides' telephone.

   Evidence:      **Id. at 51:24-52:8.**

   Defendants' Response:      Undisputed that PBH's business telephone number is (401) 539-0300. Disputed that the evidence on which Plaintiff relies supports that PBH's business telephone number is directed virtually to Mr. Mihailides telephone. Mr. Mihailides, in his capacity as a Rule 30(b)(6) deponent, testified that PBH's business telephone number can be directed anywhere, including to his phone. Mihailides 30(b)(6) Tr. (June 11, 2024) at 51:24-52:8, ECF No. 109-4.

6. Mihailides' son-in-law, David Rodin, has served as the CFO of PBH for five years.

   Evidence:      **Id. at 52:12-16; 51:17-21.**

   Defendants' Response:      Disputed that the evidence on which Plaintiff relies supports that Mr. Rodin serves as the CFO for PBH for five years. Mr. Mihailides, in his capacity as a Rule 30(b)(6) deponent, testified that Mr. Rodin served as the CFO of PBH for *more than* five years. Mihailides 30(b)(6) Tr. (June 11, 2024) at 52:12-16. Mr. Mihailides further testified that Mr. Rodin served as the CFO for PBH through a management entity and was not, in fact, employed by PBH at any point in time. *Id.* at 51:17-21, 52:12-53:9.

7. Mihailides hired Rodin.

   **Evidence:**      **Id. at 58:19-20.**

   Defendants' Response:      Undisputed.

8. Rodin has the authority to write checks on behalf of PBH and does not need approval from anyone else.

   Evidence:      **Id. at 63:4-10.**

   Defendants' Response:      Undisputed.

9. Mihailides, John Dionne, and Robin Meisal have also had the authority to write checks on behalf of PBH.

   **Evidence:**   Id. at 63:11-21.

   Defendants' Response:   Undisputed, although Defendants note that John Deion's name is incorrectly spelled.

10. Preserve Management, LLC holds a majority interest in PBH, and its members are PPM & Co., LLC and M.T.M. Development Corporation.

    **Evidence:**   ECF No. 22.

    Defendants' Response:   Disputed that the evidence on which Plaintiff relies supports that Preserve Management, LLC holds a "majority interest" in PBH. The Corporate Disclosure Statement on which Plaintiff relies states that Preserve Management, LLC is one of five members of PBH. Second Am. Corporate Disclosure Statement ¶ 6, ECF No. 22.

11. PPM & Co., LLC is wholly owned by the Paul P. Mihailides Revocable Trust, of which Mihailides is the Trustee.

    **Evidence:**   Id.

    Defendants' Response:   Undisputed.

12. M.T.M. Development Corporation is a Rhode Island corporation, and Mihailides serves at its President.

    **Evidence:**   Id.

    Defendants' Response:   Undisputed.

13. Defendant Preserve Property Management Company, LLC ("PPMC") is a Rhode limited liability company.

    **Evidence:**   Ex. B.

    Defendants' Response:   Undisputed.

14. McDaniel is a native of Arkansas and speaks with a Southern accent.

   **Evidence:**   **McDaniel Aff. ¶3.**

   Defendants' Response:   Undisputed but not relevant or material.

15. McDaniel graduated from the University of Arkansas where she studied political science, criminal justice, and legal studies.

   **Evidence:**   **McDaniel Aff. ¶4.**

   Defendants' Response:   Undisputed but not relevant or material.

16. McDaniel is a professional actress and model.

   **Evidence:**   **McDaniel Aff. ¶5.**

   Defendants' Response:   Undisputed that Plaintiff is a professional model. Disputed, although not relevant or material, that Plaintiff is a professional actress as she represented.

   Plaintiff claimed to have been an actress in *The Hunger Games: Catching Fire*—a boast squarely contradicted by her own testimony admitting she "didn't make the cut," and that the part for which she was hired was edited out of the final film. *Compare* Ex. 1 to Defs' Mot. Summ. J., McDaniel's Resps. to First Set of Interrogatories at 9, ECF No. 100-1, *with* Ex. 2 to Defs' Mot. Summ. J., Pl.'s Dep. (Feb. 21, 2024) at 80:7-23, ECF No. 100-2. Plaintiff further admitted in response to Defendants' Requests for Admissions that any news reports about this case stating that she is best known for her role in *The Hunger Games: Catching Fire* are inaccurate. Ex. 3 to Defs' Mot. Summ. J., Pl.'s Resps. to Reqs. for Admission No. 96, ECF No. 100-3.

   Plaintiff similarly promoted herself as an actress in *Gossip Girl*; here too, she conceded under oath that she was "not [in] the cut," and her credits exist nowhere but in her own self-promotion. Ex. 5 to Defs.' Mot. Summ. J., McDaniel Resume/Contract at 1, ECF No. 100-5; Ex. 2 to Defs' Mot. Summ. J., Pl.'s Dep. (Feb. 21, 2024) at 111:20-23. Plaintiff also touted on her website her role as a "Movie Star" in *J. Edgar Hoover*, but she confirmed at deposition that she never watched the movie, did not know its official title, could not identify who played J. Edgar Hoover, and probably would not be included in any list of the full cast and crew because she was only "a background." Ex. 5 to Defs' Mot. Summ. J., Alison McDaniel Resume/Contact; Ex. 2 to Defs' Mot. Summ. J., Pl.'s Dep. (Feb. 21, 2024) at 102:6-105:22.

17. McDaniel owns and operate as a sole proprietor [sic] known as The Ali McDaniel Agency.

    **Evidence:**   **McDaniel Aff. ¶6.**

    Defendants' Response:   Undisputed.

18. The Ali McDaniel Agency helps non-profit organizations meet their fundraising goals at charity events.

    **Evidence:**   **McDaniel Aff. ¶7.**

    Defendants' Response:   Undisputed.

19. McDaniel's main role at these charity events is to sell raffle tickets.

    **Evidence:**   **McDaniel Aff. ¶8.**

    Defendants' Response:   Undisputed that when the Ali McDaniel Agency is retained to perform fundraising at charity events, Plaintiff's role is to sell raffle tickets.

20. The Ali McDaniel Agency has never been contracted to provide any service other than for fundraising.

    **Evidence:**   **McDaniel Aff. ¶9.**

    Defendants' Response:   Disputed but not material.  *See* Statement of Undisputed Facts ¶¶ 22-29, 35-36, ECF No. 48.

21. The Ali McDaniel Agency does not provide creative or marketing services, nor has it ever advertised for anything other than fundraising.

    **Evidence:**   **McDaniel Aff. ¶10.**

    Defendants' Response:   Disputed but not material.  *See* Statement of Undisputed Facts ¶¶ 22-29, 35-36, ECF No. 48.

22. McDaniel never represented to Mihailides that she had formal training or prior experience in marketing.

    **Evidence:**   **McDaniel Aff. ¶11.**

    Defendants' Response:    Undisputed.

23. In February 2019, Mihailides met McDaniel in New York City at a Ducks Unlimited fundraising event.

    **Evidence:**    **Mihailides Depo. Tr. at 39:1-8.**

    Defendants' Response:    Undisputed.

24. Mihailides went to the Ducks Unlimited fundraiser to raise awareness for the *Famars* gun brand that he owns.

    **Evidence:**    **Mihailides Depo. Tr. at 39:21-40:2.**

    Defendants' Response:    Undisputed.

25. McDaniel attended the event to sell raffle tickets as part of her fundraising work.

    **Evidence:**    ***Id.* at 41:15-23.**

    Defendants' Response:    Undisputed.

26. At the time, Mihailides believed McDaniel was a spokesperson for the Ronald McDonald House and a promotional model who worked the crowd to generate ticket sales.

    **Evidence:**    **Mihailides Depo. Tr. at 43:2-16.**

    Defendants' Response:    Undisputed.

27. Mihailides did not investigate McDaniel's background or attempt to learn details about her agency, training, skills or business qualifications.

    **Evidence:**    ***Id.* at 49:25-50:1.**

    Defendants' Response:    Disputed that the evidence on which Plaintiff relies supports that Mr. Mihailides did not investigate Plaintiff's background or attempt to learn details about her agency, training, skills or business qualifications. The testimony on which Plaintiff relies states that Mr. Mihailides did not perform an investigation to "find out what was behind the Alison McDaniel Agency." Mihailides Dep. (June 21, 2024) at 49:25-50:1, ECF No. 109-5.

28. In mid-2019, McDaniel was retained to provide promotion modeling services for The Preserve, and was paid $2,000 for her services.

    **Evidence:**   **Ex. C.**

    Defendants' Response:   Disputed that Plaintiff was retained to provide promotional modeling services for The Preserve. In mid-2019, Plaintiff was retained by The Preserve at Boulder Hills, LLC to provide promotional modeling services and was paid $2,000 for her services. Plaintiff confirmed that this was undisputed in her Statement of Disputed Facts ¶ 16, ECF No. 64. She cannot now change course and claim that she was engaged by The Preserve, as opposed to The Preserve at Boulder Hills, LLC.

29. On November 24, 2019, Mihailides sent McDaniel an email outlining potential business opportunities at The Preserve after McDaniel inquired about working together in a mutually beneficial manner.

    **Evidence:**   **Ex. D; Mihailides Depo. Tr. at 66:6-19.**

    Defendants' Response:   Undisputed.

30. In late 2019, McDaniel met with Mihailides at The Preserve to discuss potential ongoing working relationship.

    **Evidence:**   **Id. at 51:11-22; 152:14-153-6.**

    Defendants' Response:   Undisputed.

31. During that meeting, the parties discussed the general marketing needs of The Preserve, including expanding its brand awareness, promoting a golf tournament and other events, and promotional appearances by McDaniel.

    **Evidence:**   **Id. at 53:15-55:25.**

    Defendants' Response:   Undisputed.

32. McDaniel testified that Mihailides agreed to pay her $6,000 per month in connection with this work that he called a "salary."

    **Evidence:**   **McDaniel Aff. ¶12.**

    Defendants' Response:   Disputed. Mihailides Dep. (June 21, 2024) at 152:8-11.

7

33. McDaniel requested that taxes be withheld from her pay, but Mihailides declined because of the paperwork involved.

    **Evidence:**  **McDaniel Depo. Tr. Vol. I at 189:21-190:1.**

    Defendants' Response:   Disputed but not relevant.  *See* Mihailides Dep. (June 21, 2024) at 175:19-176:3.

34. McDaniel was issued a check in the amount of $6,000 dated December 8, 2019.

    **Evidence:**  **Ex. C.**

    Defendants' Response:   Undisputed.

35. McDaniel was issued IRS Forms 1099 for tax years 2020 and 2021.

    **Evidence:**  **Ex. E.**

    Defendants' Response:   Undisputed.

36. The parties did not reduce their understanding to a written agreement and did not identify a fixed list of tasks McDaniel would perform.  Instead, the discussion contemplated that McDaniel would act as the spokesperson for The Preserve and would assist with a variety of needs there on an as-needed basis, depending on what Mihailides required at a given time.

    **Evidence:**  **McDaniel Aff. ¶13.**

    Defendants' Response:   Undisputed as to PBH.  Disputed that Plaintiff had had any agreement, written, oral or implied with PPMC.  *See* Pl.'s Statement of Disputed Facts ¶ 36. ECF No. 110.  Further disputed that any discussion that Plaintiff would assist with a variety of needs on an as-needed basis gave rise to any contract, oral or implied.

37. From December 2019 to February 17, 2021, McDaniel performed a wide range of services at The Preserve at Mihailides' direction.  Her work evolved based on his needs and included, among other things:

    - Acting as a spokesperson;
    - Appearing in commercials;
    - Creating and appearing in videos for social media;
    - Providing her image for print, social media, advertisements, and magazines;
    - Acting as the social media manager;

8

- Appearing at special events;
- Appearing in videos for the Sporting Shoppe located on The Preserve property;
- Developing marketing campaigns and ideas;
- Shooting photography and videography;
- Editing social media videos, brochures, and ad campaigns;
- Creating 3rd Hobbit House Concept;
- Collaborating with other brands and individuals;
- Working as an editor for *OEL Magazine* and managing its *Instagram* account;
- Staffing and working trade shows representing The Preserve in NC, TX and PA;
- Creating fall décor for the Hobbit House;
- Hiring other professionals, including actors and videographers;
- Decorating the Hobbit House;
- Waiting tables on Mother's Day 2021;
- Assisting with cleaning and stocking rooms at the Hilltop Lodge; and
- Attempting to develop a women's clothing line for The Preserve.

**Evidence:**     **Ex. F at 1-2.**

Defendants' Response:     Disputed that Plaintiff performed the work at Mr. Mihailides' direction or under his control, as she worked when she chose to work, not when he or others directed her to. The Court has already made that determination. *See* Mem. & Order at 10-12, ECF No. 67; *see also* Defs.' Statement of Undisputed Facts ¶¶ 398-417, ECF No. 48.

38. In April and May 2020, McDaniel worked remotely because The Preserve was closed due to the COVID-19 pandemic.

    **Evidence:**     **McDaniel Depo. Tr. Vol. II at 315:25-316:4.**

    Defendants' Response:     Disputed that McDaniel was working remotely during the COVID-19 pandemic. Plaintiff testified that she applied for and received unemployment benefits during that period. McDaniel Dep. (Feb. 21, 2024) at 34:17-38:5, ECF No. 109-2.

39. During the course of the relationship, Defendants issued eighteen separate checks to McDaniel totaling $71,534, reflecting payment for services rendered and reimbursement of out-of-pocket expenses.

    **Evidence:**     **Ex. C.**

    Defendants' Response:     Undisputed.

40. On February 17, 2022, McDaniel sent an email to Mihailides entitled "Ending Relationship with Preserve".

    **Evidence:**   **Ex. H.**

    Defendants' Response:   Undisputed that on February 17, 2022, McDaniel sent an email to Mihailides entitled "Ending Relationship with Preserve." Disputed that Exhibit H is a true and correct copy of that email. *See* Ex. 65 to Defs.' Statement of Undisputed Facts, ECF No. 50-15, for a true and correct copy of the February 17, 2022 email.

41. In the email, McDaniel stated she was ending the relationship due to Mihailides' continued sexual harassment.

    **Evidence:**   **Id.**

    Defendants' Response:   Undisputed that on February 17, 2022, McDaniel sent an email to Mihailides entitled "Ending Relationship with Preserve," claiming she was ending her relationship due to alleged sexual harassment. Disputed that Exhibit H is a true and correct copy of that email. *See* Ex. 65 to Defs.' Statement of Undisputed Facts, ECF No. 50-15, for a true and correct copy of the February 17, 2022 email.

42. McDaniel blind copied several people on the email including Mihailides' daughter, Nicole Mihailides, as well as four employees of Ocean House Management, the company managing The Preserve at the time.

    **Evidence:**   **Id.**

    Defendants' Response:   Undisputed that on February 17, 2022, McDaniel sent an email to Mihailides entitled "Ending Relationship with Preserve." Disputed that Exhibit H is a true and correct copy of that email. *See* Ex. 65 to Defs.' Statement of Undisputed Facts, ECF No. 50-15, for a true and correct copy of the February 17, 2022 email.

43. On January 17, 2022, Mihailides sent McDaniel a letter demanding that she return certain property that he contends belonged to Defendants and was not returned at the conclusion of her relationship with The Preserve.

    **Evidence:**   **Ex I.**

    Defendants' Response:   Undisputed.

44. In or about early 2022, shortly after McDaniel's separation, Defendants retained a private investigator, Paul Pelletier ("Pelletier"), to investigate McDaniel's conduct during her time providing services to The Preserve.

    **Evidence:**     **Ex. J.**

    Defendants' Response:    Undisputed that the Preserve hired a private investigator. Disputed that private investigator was Paul Pelletier. *See* Ex. J.

45. On September 30, 2022, McDaniel filed her first Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and sexual harassment arising from her relationship with Defendants.

    **Evidence:**     **Ex. K.**

    Defendants' Response:    Undisputed.

46. On April 13, 2023, the EEOC issued McDaniel a Notice of Right to Sue.

    **Evidence:**     **Ex. L.**

    Defendants' Response:    Defendants dispute Plaintiff's characterization of Ex. L. Exhibit L is titled "Dismissal and Notice of Rights." *See* Ex. L. It states, *inter alia,* "The EEOC is closing this charge because you were not in an employment relationship with the Respondent." *Id.* The notice also provides notice of Plaintiff's right to sue. *Id.*

47. On May 3, 2023 – after Defendants were aware of McDaniel's administrative charge – Defendants, through counsel, sent McDaniel a letter accusing her of multiple crimes, including extortion, computer trespass, computer theft, cyberstalking, and forgery.

    **Evidence:**     **Ex. M.**

    Defendants' Response:    Undisputed.

48. After Defendants filed counterclaims against McDaniel in this litigation, McDaniel filed a second administrative charge with RICHR on November 8, 2023, alleging retaliation based on Defendants' litigation conduct and threats of criminal prosecution.

    **Evidence:**     **Ex. N.**

    Defendants' Response:    Undisputed.

49. On December 4, 2023 – 655 days after McDaniel's separation – Defendants filed a criminal complaint against McDaniel in Dallas, Texas, where she resides.

    **Evidence:** **Ex. O.**

    Defendants' Response:   Disputed that the evidence on which Plaintiff relies supports that Defendants filed a "criminal complaint" against Plaintiff. The evidence on which Plaintiff relies shows that the Preserve filed an incident report with the Dallas Police Department, not Mr. Mihailides. *See* Ex. O.

50. On March 14, 2024, McDaniel amended her November 8, 2023 administrative charge to include an additional count of retaliation based on the filing of the December 4, 2023 criminal complaint.

    **Evidence:** **Ex. P.**

    Defendants' Response:   Undisputed.

 

DEFENDANT/COUNTERCLAIM PLAINTIFFS
THE PRESERVE AT BOULDER HILLS, LLC
AND PAUL MIHAILIDES AND DEFENDANT
PRESERVE PROPERTY MANAGEMENT
COMPANY, LLC,
By their Attorneys:

/s/ Nicole J. Benjamin
John A. Tarantino (#2586)
jtarantino@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607
December 23, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, I electronically served and filed *via the Electronic Court Filing (CM/ECF) system* a true copy of the within pleading on all counsel of record and it is available for viewing and downloading from the ECF system.

/s/ Nicole Benjamin

4906-2303-0403, v. 1